UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
CARTER SECURITIES, LLC,                           :
                                                  :
                              Plaintiff,          :
                                                  :            07 Civ. 10671
          -against-                               :
                                                  :
MARKETING WORLDWIDE CORPORATION,                  :
                                                  :
                              Defendant.          :
-------------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

Defendant Marketing Worldwide Corporation ("MWC") respectfully submits the within memorandum of law in support of its motion for an order, pursuant to F.R.C.P. 12(b)(6), dismissing the three causes of action in the complaint (Exhibit A)[*] of plaintiff Carter Securities, LLC ("Carter") on the ground they fail to state a claim upon which relief can be granted.

The complaint should be dismissed because all of Carter's claims are refuted by the contents of the relevant documents; as set forth, infra, Carter is using its pleading as a vehicle to obtain relief for which it never bargained.  Carter, in its first two causes of action, seeks additional fees for the services it performed in connection with a placement of "Units" comprised of MWC's preferred stock and warrants to purchase MWC's common stock.  However, under the terms of the written agreement between Carter and MWC, Carter has been paid all of the fees to which it is entitled and is not entitled to any

---

[*] The referenced exhibits are attached to the accompanying notice of motion.  This action was removed to this Court on November 29, 2007.

additional fees.  As a result, these two claims by Carter amount to little more than an

effort to rewrite that written agreement.  In addition, Carter, in its third cause of action,

alleges that, as part of its compensation, it received a warrant to purchase MWC's

common stock and MWC is now required to reduce the exercise price under that warrant.

However, under the terms of that warrant, no such reduction is required.  Accordingly,

the complaint should be dismissed in all respects.

**THE COMPLAINT**

**The Agreement Between
MWC And Carter**

On or about December 21, 2006, MWC, pursuant to a written agreement (the

"Agreement," Exhibit B), hired Carter as its placement agent in connection with the sale

of "Units" to be comprised of warrants to purchase MWC's common stock and either

equity securities, equity-linked securities or debt instruments (Complaint ¶3).  Paragraph

1 of the Agreement described the services to be performed by Carter.

> 1.      Services to be Rendered.  During the Term, [MWC] hereby
> retains CARTER to serve as its exclusive placement agent for a
> reasonable-efforts private placement (the "Placement") of units
> (the "Units"), to be comprised of (i) equity securities, equity-
> linked securities or debt instruments of [MWC] and (ii) warrants to
> purchase Common Stock of [MWC], expected to provide proceeds
> of up to $2.5-5 million approximating the terms of the attached
> term sheets in appendix a & B.  CARTER agrees that it will use its
> reasonable efforts to find purchasers of the Units (the "Investors"),
> and any such Investors shall qualify themselves as "accredited
> investors" as defined in Rule 501(a) under the Securities Act of
> 1933 (the "Act"), but CARTER disclaims any agreement,
> expressed or implied, in this Agreement or otherwise, that it will
> be successful in placing the Units…

The Agreement provided for the following term:

> 4.      Term and Termination.  The engagement of CARTER shall

72619                                              2

> begin as of the date hereof and continue until the earlier of (i) the date on which [MWC] has accepted subscriptions for all Units or (ii) 45 days from January 1, 2007 (the "Term), unless the Term is extended by mutual agreement of CARTER and [MWC]…

Paragraph 5 of the Agreement set forth the two separate and distinct circumstances in which Carter would be entitled to compensation. First, Carter was entitled to specified fees if there was a sale of the Units to Investors in a private placement.

> In consideration for serving as the Placement Agent for the Placement, [MWC] agrees to (i) pay CARTER on the date hereof a non-refundable retainer equal to $5,000, (ii) pay CARTER on the Closing Date of the Placement, and on the date of any subsequent closing of such Placement, a cash placement fee ("Placement Agent Cash Fee") of seven (7%) percent of the gross proceeds of the sale of the Units subscribed for by Investors in the Placement, and (iii) issue to CARTER (or its designees) warrants (the "Placement Agent Warrants") to purchase a dollar value of shares of Common Stock of [MWC] equal to seven (7%) percent of the total gross proceeds from Investors in the Placement

Second, this paragraph set forth a "finder's fee" provision -- Carter was entitled to additional fees if a *potential* purchaser of the Units, introduced to MWC by Carter, subsequently made an investment in MWC.

> If any *potential Investor* solicited by CARTER and first introduced to [MWC] by CARTER during the Term makes an investment in [MWC] within twelve (12) months of (i) termination or expiration of the Term or (ii) consummation of the Placement, CARTER shall be entitled to fees and warrants as outlined in paragraph 5 herein…(emphasis supplied)

The Agreement provided, in paragraph 13, that it was governed by New York law.

**The Sale Of The Units**

Pursuant to a Series A Convertible Preferred Stock Purchase Agreement dated as of April 23, 2007 (the "Purchase Agreement", Exhibit C), Vision Opportunity Master Fund, Ltd. ("Vision"), purchased the Units – it purchased $3.5 million of Units, comprised of MWC's convertible preferred stock and Series A, B, C, D, E, F and J warrants to purchase MWC's common stock (Complaint ¶11).

Each of these warrants afforded Vision the option to purchase specified amounts of MWC's common stock at a specified price during a specified period of time.  The Series J warrant (Exhibit D) afforded Vision the option to purchase up to 5 million shares of MWC's common stock at a price of $.70 per share by June 23, 2008.

In connection with the closing of the sale of the Units to Vision, MWC paid the fees stipulated in the Agreement -- it paid Carter $242,500, representing 7% of the gross proceeds of the sale of the Units to Vision, less some expenses, and issued to Carter a Series G warrant (the "Carter Warrant", Exhibit E) which granted Carter an option to purchase 490,000 shares of MWC's common stock at a price of $.65 per share (Complaint ¶13).

**Vision's Exercise Of
<u>The Series J Warrant</u>**

On or about September 27, 2007, MWC and Vision agreed to reduce the exercise price under the Series J warrant from $.70 per share to $.50 per share and to reduce the exercise price under the Series F warrant from $1.20 per share to $.01 per share (Complaint ¶14).

On or about September 27, 2007, Vision partially exercised the Series J warrant and purchased four million shares of common stock in MWC at a total

price of $2 million (Complaint ¶15).

## THE CAUSES OF ACTION

Carter, in its complaint, contends that Vision's exercise of its Series J warrant triggers the "finder's fee" provision in the Agreement and therefore requires MWC to pay additional fees to Carter.  Carter also contends that the reduction in the exercise price of Vision's Series F warrant entitles Carter to a reduction in the exercise price under the Carter Warrant.

In its first cause of action (Complaint ¶¶ 17-20), Carter alleges that Vision's exercise of the Series J warrant constituted an "additional investment of $2 million in [MWC]" and therefore MWC became obligated, under the Agreement, to pay Carter $140,000 in cash and to issue to Carter warrants to purchase four million shares of MWC's common stock at a price of $.65 per share.  Carter alleges that MWC has breached the Agreement by failing to pay that amount and failing to deliver those warrants to Carter.

In its second cause of action (Complaint ¶¶ 21-24), Carter contends that MWC's failure to pay the additional fees to Carter represents an anticipatory breach of MWC's obligation to pay additional fees to Carter in the event Vision exercises the remaining portion of the Series J warrant.

In its third cause of action (Complaint ¶¶ 25-31), Carter alleges that under the Carter Warrant, the exercise price was required to be adjusted downward in the event the exercise price of any of the warrants issued to Vision was lowered. Carter alleges that on or about September 27, 2007, the exercise price of the Series F warrant issued to Vision was adjusted downward to $.01 per share.

72619

Carter alleges that as a result of this adjustment, the exercise price of the Carter Warrant was required to be adjusted downward to $.33 per share.  Carter alleges that MWC has breached the Carter Warrant by refusing to reduce the exercise price to $.33 per share.

## ARGUMENT

### THE COMPLAINT MUST BE DISMISSED, AS UNDER THE TERMS OF THE PERTINENT DOCUMENTS, CARTER IS NOT ENTITLED TO ANY ADDITIONAL FEES OR TO AN ADJUSTMENT IN THE EXERCISE PRICE IN ITS WARRANT

In evaluating a motion to dismiss a complaint pursuant to F.R.C.P. 12(b)(6), it is appropriate to consider not only the plaintiff's allegations but also the documents that are integral to or explicitly referenced in the complaint. Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002), Matusovsky v. Merrill Lynch, 186 F.Supp.2d 397, 400 (S.D.N.Y. 2002).  When those documents contradict the plaintiff's allegations, those allegations are insufficient to defeat a motion to dismiss.  2 Broadway LLC v. Credit Suisse First Boston Mortgage Capital LLC, 2001 WL 410074, *9 (S.D.N.Y. 2001) (where the plaintiff's allegations were contradicted by the contents of the parties' written agreements, those allegations could not survive the defendant's Rule 12(b)(6) motion).

These principles, applied at bar, compel the dismissal of the complaint, as all of Carter's claims for relief are refuted by the terms of the pertinent documents -- the Agreement, the Purchase Agreement and the Carter Warrant.  Carter's first two causes of action rest upon its allegation that it is entitled to be paid additional fees because Vision, the purchaser of the Units, has exercised one of the warrants it acquired in that purchase.  However, as set forth below, under the terms of the

Agreement, Carter is not entitled to additional fees under these circumstances; the Agreement does not require MWC to pay additional fees to Carter if a purchaser of the Units exercises a warrant it acquired as part of the Units. As described, infra, Carter, in its complaint, had to resort to rewriting the Agreement in order to establish a claim to these additional fees. Furthermore, Carter, in its third cause of action, alleges that it is entitled to an adjustment in the exercise price under the Carter Warrant, which it received as part of its placement agent compensation. However, under the terms of that warrant, Carter is only entitled to a reduction in the exercise price under specified circumstances and Carter has not alleged those circumstances.

### A. The First And Second Causes Of Action Must Be Dismissed, As Carter, Under The Terms Of The Agreement, Is Not Entitled To Any Additional Fees

Carter's first and second causes of action must be dismissed because Carter is not entitled to any additional fees under the Agreement. Both of these claims are based upon the allegation that Carter is entitled to additional fees under the Agreement because Vision, the purchaser of the Units, has exercised one of the warrants it acquired. However, Carter's claims are expressly refuted by the terms of the Agreement. Under the Agreement, Carter is not entitled to any additional fees if a purchaser of the Units exercises one of the warrants it acquired as part of the Units. The Agreement explicitly sets forth the only two circumstances under which Carter is entitled to fees and neither circumstance embraces the exercise of a warrant included in the Units by a purchaser of the Units. As a result, these two causes of action must be dismissed.

The Agreement identified, in paragraph 5, the two separate and distinct circumstances under which Carter would be entitled to fees.  First, Carter was entitled to specified fees if there was a sale of the Units to Investors in a private placement.

> In consideration for serving as the Placement Agent for the Placement, [MWC] agrees to (i) pay CARTER on the date hereof a non-refundable retainer equal to $5,000, (ii) pay CARTER on the Closing Date of the Placement, and on the date of any subsequent closing of such Placement, a cash placement fee ("Placement Agent Cash Fee) of seven (7%) percent of the gross proceeds of the sale of the Units subscribed for by Investors in the Placement, and (iii) issue to CARTER (or its designees) warrants (the "Placement Agent Warrants") to purchase a dollar value of shares of Common Stock of [MWC] equal to seven (7%) percent of the total gross proceeds from Investors in the Placement.

There is no dispute that Carter has been paid the fees set forth in this provision.  Carter has admitted that there was a closing of the placement and that it received the Placement Agent Cash Fee and the Placement Agent Warrants.  Pursuant to the Purchase Agreement, on or about April 23, 2007, Vision purchased the Units and became the "Investors in the Placement" referenced in the Agreement -- it purchased $3.5 million of Units, comprised of MWC's convertible preferred stock and Series A, B, C, D, E, F and J warrants to purchase MWC's common stock.  As required by the Agreement, in connection with the closing of the sale of the Units to Visions, MWC paid Carter $242,500 representing 7% of the gross proceeds of the sale of the Units to Vision, less some expenses, and issued the Carter Warrant to Carter (Complaint ¶¶ 11-13).

This provision in the Agreement does not entitle Carter to the payment of any additional compensation if a purchaser of the Units exercises one of the warrants it acquired.  The Agreement expressly contemplated, in paragraph 1, that the Units would include warrants to purchase MWC's common stock, but Carter's placement agent fees

were not measured by or triggered by the exercise of these warrants. Instead, Carter's fees were triggered by the closing of the sale of the Units and were measured solely by the gross proceeds of the sale of the Units. Carter admits that it has been paid all of the fees that were measured by the gross proceeds of the sale of the Units (Complaint ¶13).

Second, the Agreement set forth a "finder's fee" provision -- Carter was entitled to additional cash fees and warrants if a party which was introduced to MWC by Carter, but did not purchase any Units, made a subsequent investment in MWC within a specified time period.

> If any *potential Investor* solicited by CARTER and first introduced to [MWC] by CARTER during the Term makes an investment in [MWC] within twelve (12) months of (i) termination or expiration of the Term or (ii) consummation of the Placement, CARTER shall be entitled to fees and warrants as outlined in paragraph 5 herein… (emphasis supplied)

Carter, in its complaint, contends that Vision's exercise of the Series J Warrant entitled it to additional fees and warrants under this "finder's fee" provision. Carter alleges that

> [a]s a result of [Vision's] additional investment of $2 million in [MWC] on or about September 27, 2007, [MWC] became obligated to pay Carter, under the terms of the Agreement, $140,000 in cash and to issue to Carter warrants to purchase four million shares of [MWC] common stock at $.65 per share. (Complaint ¶18).

The language of the Agreement expressly refutes Carter's allegations. Under the terms of the Agreement, Carter was only entitled to this "finder's fee" if an investment was made by a "*potential* Investor", a *potential* purchaser of the Units. However, here Vision was not a "*potential* Investor"; instead, Vision was an *actual* Investor, an actual purchaser of the Units. Carter, in its pleading, implicitly recognized this critical

distinction by trying to rewrite the Agreement -- it alleged that it was entitled to additional fees if there was a subsequent investment by "any potential *or actual* investor solicited by Carter and first introduced to [MWC] by Carter…" (Complaint ¶5) (emphasis supplied). However, as set forth above, this is not what is set forth in the Agreement. Instead, under the Agreement, Carter was only entitled to this "finder's fee" if there was a subsequent investment by a *potential* Investor; it was not entitled to any additional fee if an actual Investor, a purchaser of the Units, exercised one of the warrants it acquired.

Under New York law, a contract should not be interpreted to render any of its provisions meaningless or superfluous. Two Guys from Harrison-N.Y., Inc. v. S.F.R. Realty Associates, 63 N.Y.2d 396, 403, 482 N.Y.S.2d 465, 468 (1984). That is precisely the interpretation urged by Carter -- the reference to a "potential" Investor should, according to Carter, be ignored. However, such a construction is contrary to settled law and must be rejected.

In addition, the familiar maxim of "inclusio unius est exclusio alterius" is applicable here. This doctrine means that the expression in a contract of one or more things in a class implies the exclusion of all things not expressed. Two Guys, supra, 63 N.Y.2d at 404, 482 N.Y.S.2d at 468. In this case, the express provision in the Agreement that an investment by a *potential* Investor would trigger Carter's right to additional fees means that any additional investment by an *actual* Investor, such as an exercise of a warrant included in the Units, would not trigger any right to additional fees. Moreover, any doubt has to be resolved against Carter, the drafter of the Agreement. Two Guys, supra, 63 N.Y.2d at 403, 482 N.Y.S.2d at 468.

### C. The Third Cause Of Action Must Be Dismissed, As MWC Is Not Required To Adjust The Exercise Price Under The Warrant Issued To Carter

The third cause of action must be dismissed because MWC did not breach the Carter Warrant by declining to adjust the exercise price under that warrant. As set forth below, under the terms of that warrant and under the facts alleged by Carter, MWC was not required to reduce the exercise price of that warrant.

Section 4(d) of the Carter Warrant sets forth the only circumstances in which MWC was required to adjust the exercise price.

> In the event the Company, shall, at any during the Term, issue or sell any Additional Shares of Common Stock or Common Stock Equivalents…at a price per share less than the Warrant Price, or without consideration, the Warrant Price then in effect upon each such issuance shall be adjusted to that price (rounded to the nearest cent) determined by multiplying the Warrant Price by a fraction: (1) the numerator of which shall be equal to the *sum* of (A) the number of shares of Common Stock outstanding immediately prior to the issuance of such Additional Shares of Common Stock *plus* (B) the number of shares of Common Stock (rounded to the nearest whole share) which the aggregate consideration for the total number of such Additional Shares of Common Stock so issued would purchase at a price per share equal to the then Warrant Price; and (2) the denominator of which shall be equal to the number of shares of Common Stock outstanding immediately after the issuance of such Additional Shares of Common Stock.  No adjustment of the number of shares of Common Stock shall be made upon the issuance of any Additional Shares of Common Stock which are issued pursuant to the exercise of any warrants or other subscription or purchase rights or pursuant to the exercise of any conversion or exchange rights in any Common Stock Equivalents if any such adjustment shall previously have been made upon the issuance of such warrants or other rights or upon the issuance of such Common Stock Equivalents (or upon the issuance of any warrant or other rights therefore).

The "Term" is defined as the period between April 23, 2007 and April 23, 2011, "Additional Shares of Common Stock" are defined as any of MWC's stock issued after April 23, 2007 and "Common Stock Equivalent" is defined as "any Convertible Security or warrant option or other right to subscribe for or purchase any Additional Shares of Common Stock or any Convertible Security."  Thus, under the terms of the Carter Warrant, MWC was only required to adjust the warrant price if, after April 23, 2007, it issued or sold any additional shares of stock or warrants at a price per share less than the exercise price set forth in the Carter Warrant (which was $.65 per share).

However, Carter, in its third cause of action, *does not* allege that MWC, after April 23, 2007, issued or sold or issued any additional shares of stock or warrants at a price per share less than $.65 per share.  All it alleges is that MWC, on or about September 27, 2007, reduced the exercise price of a warrant it had issued on April 23, 2007 from $1.20 per share to $.01 per share; Carter does not allege that this warrant has been exercised.  The Carter Warrant *does not* provide that its exercise price will be reduced merely if the exercise price under a previously issued warrant is reduced; instead, Carter is only entitled to a reduction in the exercise price if MWC issues or sells any additional stock or warrants at a price per share less than $.65 per share.  Carter could have bargained for a provision in its warrant that the exercise price would be reduced if there was a reduction in the exercise price under a previously issued warrant but it did not do so; instead, it only bargained for a provision that the exercise price will be reduced if the exercise price under a previously issued warrant is reduced *and* shares are actually issued pursuant to that warrant.  Again, Carter cannot use its complaint as a vehicle for obtaining relief for which it did not bargain.

72619

12

## **CONCLUSION**

Therefore, for all the reasons set forth above, it is respectfully requested that

defendant's motion to dismiss the complaint be granted in all respects.


Dated: New York, New York
        December 10, 2007



                            FERBER CHAN ESSNER & COLLER, LLP

                            By: /s/  Robert M. Kaplan                        
                                Robert M. Kaplan (RK1428)
                            Attorneys for Defendant
                            530 Fifth Avenue
                            New York, New York 10036-5101
                            (212) 944-2200