**EXHIBIT G**
**to the**
**SERIES A CONVERTIBLE PREFERRED STOCK PURCHASE AGREEMENT FOR**
**MARKETING WORLDWIDE CORPORATION**

**FORM OF IRREVOCABLE TRANSFER AGENT INSTRUCTIONS**

[NAME AND ADDRESS OF TRANSFER AGENT]
Attn: _____

Re: **Marketing Worldwide Corporation**

Ladies and Gentlemen:

Reference is made to that certain Series A Convertible Preferred Stock Purchase Agreement (the "**Purchase Agreement**"), dated as of April 23, 2007, by and among Marketing Worldwide Corporation, a Delaware corporation (the "**Company**"), and the purchasers named therein (collectively, the "**Purchasers**") pursuant to which the Company is issuing to the Purchasers shares of its Series A Convertible Preferred Stock, par value $0.001 per share, (the "**Preferred Shares**") and warrants (the "**Warrants**") to purchase shares of the Company's common stock, par value $0.001 per share (the "**Common Stock**"). This letter shall serve as our irrevocable authorization and direction to you provided that you are the transfer agent of the Company at such time) to issue shares of Common Stock upon conversion of the Preferred Shares (the "**Conversion Shares**") and exercise of the Warrants (the "**Warrant Shares**") to or upon the order of a Purchaser from time to time upon (i) surrender to you of a properly completed and duly executed Conversion Notice or Exercise Notice, as the case may be, in the form attached hereto as Exhibit I and Exhibit II, respectively, (ii) in the case of the conversion of Preferred Shares, a copy of the certificates (with the original certificates delivered to the Company) representing Preferred Shares being converted or, in the case of Warrants being exercised, a copy of the Warrants (with the original Warrants delivered to the Company) being exercised (or, in each case, an indemnification undertaking with respect to such share certificates or the warrants in the case of their loss, theft or destruction), and (iii) delivery of a treasury order or other appropriate order duly executed by a duly authorized officer of the Company. So long as you have previously received (x) written confirmation from counsel to the Company that a registration statement covering resales of the Conversion Shares or Warrant Shares, as applicable, has been declared effective by the Securities and Exchange Commission (the "**SEC**") under the Securities Act of 1933, as amended (the "**1933 Act**"), and no subsequent notice by the Company or its counsel of the suspension or termination of its effectiveness and (y) a copy of such registration statement, and if the Purchaser represents in writing that the Conversion Shares or the Warrant Shares, as the case may be, were sold pursuant to the Registration Statement, then certificates representing the Conversion Shares and the Warrant Shares, as the case may be, shall not bear any legend restricting transfer of the Conversion Shares and the Warrant Shares, as the case may be, thereby and should not be subject to any stop-transfer restriction. Provided, however, that if you have not previously received those items and representations listed above, then the certificates for the Conversion Shares and the Warrant Shares shall bear the following legend:

"THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE SECURITIES ACT"), OR ANY STATE SECURITIES LAWS AND MAY NOT BE SOLD, TRANSFERRED OR OTHERWISE DISPOSED OF UNLESS REGISTERED UNDER THE SECURITIES ACT OR APPLICABLE STATE SECURITIES LAWS, OR MARKETING WORLDWIDE CORPORATION SHALL HAVE RECEIVED AN OPINION OF ITS COUNSEL THAT REGISTRATION OF SUCH SECURITIES

xiii

UNDER THE SECURITIES ACT AND UNDER THE PROVISIONS OF APPLICABLE STATE SECURITIES LAWS IS NOT REQUIRED."

and, provided further, that the Company may from time to time notify you to place stop-transfer restrictions on the certificates for the Conversion Shares and the Warrant Shares in the event a registration statement covering the Conversion Shares and the Warrant Shares is subject to amendment for events then current.

A form of written confirmation from counsel to the Company that a registration statement covering resales of the Conversion Shares and the Warrant Shares has been declared effective by the SEC under the 1933 Act is attached hereto as Exhibit III.

Please be advised that the Purchasers are relying upon this letter as an inducement to enter into the Purchase Agreement and, accordingly, each Purchaser is a third party beneficiary to these instructions.

Please execute this letter in the space indicated to acknowledge your agreement to act in accordance with these instructions. Should you have any questions concerning this matter, please contact me at _____.

Very truly yours,

**MARKETING WORLDWIDE CORPORATION**

By: _____
     Name:
     Title:

ACKNOWLEDGED AND AGREED:

**[TRANSFER AGENT]**

By: _____
     Name:
     Title:
     Date:

**EXHIBIT I**
**CONVERSION NOTICE**
**MARKETING WORLDWIDE CORPORATION**

Reference is made to the Certificate of Designation of the Relative Rights and Preferences of the Series A Convertible Preferred Stock of Marketing Worldwide Corporation (the "**Certificate of Designation**"). In accordance with and pursuant to the Certificate of Designation, the undersigned hereby elects to convert the number of shares of Series A Convertible Preferred Stock, par value $0.001 per share (the "**Preferred Shares**"), of Marketing Worldwide Corporation a Delaware corporation (the "**Company**"), indicated below into shares of Common Stock, par value $0.001 per share (the "**Common Stock**"), of the Company, by tendering the stock certificate(s) representing the share(s) of Preferred Shares specified below as of the date specified below.

Date of Conversion: _____

Number of Preferred Shares to be converted: _____

Stock certificate no(s). of Preferred Shares to be converted: _____

The Common Stock have been sold pursuant to the Registration Statement (as defined in the Registration Rights Agreement): YES ☐  NO ☐

Please confirm the following information:

Conversion Price: _____

Number of shares of Common Stock to be issued: _____

Number of shares of Common Stock beneficially owned or deemed beneficially owned by the Holder on the Date of Conversion: _____

Please issue the Common Stock into which the Preferred Shares are being converted and, if applicable, any check drawn on an account of the Company in the following name and to the following address:

Issue to: _____

_____

Facsimile No.: _____

Authorization: _____

By: _____

Title: _____

Dated: _____

**EXHIBIT II**
**FORM OF EXERCISE NOTICE**
**MARKETING WORLDWIDE CORPORATION**

The undersigned_____, pursuant to the provisions of the within Warrant, hereby elects to purchase _____ shares of Common Stock of Marketing Worldwide Corporation covered by the within Warrant.

Dated: _____    Signature: _____

Address: _____

_____

_____

Number of shares of Common Stock beneficially owned or deemed beneficially owned by the Holder on the date of Exercise: _____

## ASSIGNMENT

FOR VALUE RECEIVED, _____ hereby sells, assigns and transfers unto _____ the within Warrant and all rights evidenced thereby and does irrevocably constitute and appoint _____, attorney, to transfer the said Warrant on the books of the within named corporation.

Dated: _____    Signature: _____

Address: _____

_____

_____

## PARTIAL ASSIGNMENT

FOR VALUE RECEIVED, _____ hereby sells, assigns and transfers unto _____ the right to purchase _____ shares of Warrant Stock evidenced by the within Warrant together with all rights therein, and does irrevocably constitute and appoint _____, attorney, to transfer that part of the said Warrant on the books of the within named corporation.

Dated: _____    Signature: _____

Address: _____

_____

_____

## FOR USE BY THE ISSUER ONLY:

This Warrant No. W-_____ canceled (or transferred or exchanged) this _____ day of _____, _____, shares of Common Stock issued therefor in the name of _____, Warrant No. W-_____ issued for _____ shares of Common Stock in the name of _____.

**EXHIBIT III**
**FORM OF NOTICE OF EFFECTIVENESS**
**OF REGISTRATION STATEMENT**

[NAME AND ADDRESS OF TRANSFER AGENT]
Attn: _____

Re: **Marketing Worldwide Corporation**

Ladies and Gentlemen:

We are counsel to Marketing Worldwide Corporation, a Delaware corporation (the "**Company**"), and have represented the Company in connection with that certain Series A Convertible Preferred Stock Purchase Agreement (the "**Purchase Agreement**"), dated as of April 23, 2007, by and among the Company and the purchasers named therein (collectively, the "**Purchasers**") pursuant to which the Company issued to the Purchasers shares of its Series A Convertible Preferred Stock, par value $0.001 per share, (the "**Preferred Shares**") and warrants (the "**Warrants**") to purchase shares of the Company's common stock, par value $0.001 per share (the "**Common Stock**"). Pursuant to the Purchase Agreement, the Company has also entered into a Registration Rights Agreement with the Purchasers (the "**Registration Rights Agreement**"), dated as of April 23, 2007, pursuant to which the Company agreed, among other things, to register the Registrable Securities (as defined in the Registration Rights Agreement), including the shares of Common Stock issuable upon conversion of the Preferred Shares and exercise of the Warrants, under the Securities Act of 1933, as amended (the "**1933 Act**"). In connection with the Company's obligations under the Registration Rights Agreement, on _____, 2007, the Company filed a Registration Statement on Form SB-2 (File No. 333-_____) (the "**Registration Statement**") with the Securities and Exchange Commission (the "SEC") relating to the resale of the Registrable Securities which names each of the present Purchasers as a selling stockholder thereunder.

In connection with the foregoing, we advise you that a member of the SEC's staff has advised us by telephone that the SEC has entered an order declaring the Registration Statement effective under the 1933 Act at [ENTER TIME OF EFFECTIVENESS] on [ENTER DATE OF EFFECTIVENESS] and we have no knowledge, after telephonic inquiry of a member of the SEC's staff, that any stop order suspending its effectiveness has been issued or that any proceedings for that purpose are pending before, or threatened by, the SEC and accordingly, the Registrable Securities are available for resale under the 1933 Act pursuant to the Registration Statement.

Very truly yours,

[COMPANY COUNSEL]

By:_____

cc: [LIST NAMES OF PURCHASERS]

xvii

**EXHIBIT H**
to the
**SERIES A CONVERTIBLE PREFERRED STOCK PURCHASE AGREEMENT FOR
MARKETING WORLDWIDE CORPORATION**

**FORM OF OPINION OF COUNSEL**

1. The Company is a corporation duly incorporated, validly existing and in good standing under the laws of the State of Delaware and has the requisite corporate power to own, lease and operate its properties and assets, and to carry on its business as presently conducted. The Company is duly qualified as a foreign corporation to do business and is in good standing in every jurisdiction in which the nature of the business conducted or property owned by it makes such qualification necessary.

2. The Company has the requisite corporate power and authority to enter into and perform its obligations under the Transaction Documents and to issue the Preferred Stock, the Warrants and the Common Stock issuable upon conversion of the Preferred Stock and exercise of the Warrants. The execution, delivery and performance of each of the Transaction Documents by the Company and the consummation by it of the transactions contemplated thereby have been duly and validly authorized by all necessary corporate action and no further consent or authorization of the Company or its Board of Directors or stockholders is required. Each of the Transaction Documents have been duly executed and delivered, and the Preferred Stock and the Warrants have been duly executed, issued and delivered by the Company and each of the Transaction Documents constitutes a legal, valid and binding obligation of the Company enforceable against the Company in accordance with its respective terms. The Common Stock issuable upon conversion of the Preferred Stock and exercise of the Warrants are not subject to any preemptive rights under the Certificate of Incorporation or the Bylaws.

3. The Preferred Stock and the Warrants have been duly authorized and, when delivered against payment in full as provided in the Purchase Agreement, will be validly issued, fully paid and nonassessable. The shares of Common Stock issuable upon conversion of the Preferred Stock, have been duly authorized and reserved for issuance, and, when delivered upon conversion or against payment in full as provided in the Certificate of Designation will be validly issued, fully paid and nonassessable.

4. The execution, delivery and performance of and compliance with the terms of the Transaction Documents and the issuance of the Preferred Stock, the Warrants and the Common Stock issuable upon conversion of the Preferred Stock and exercise of the Warrants do not (i) violate any provision of the Certificate of Incorporation or Bylaws, (ii) conflict with, or constitute a default (or an event which with notice or lapse of time or both would become a default) under, or give to others any rights of termination, amendment, acceleration or cancellation of, any material agreement, mortgage, deed of trust, indenture, note, bond, license, lease agreement, instrument or obligation to which the Company is a party, (iii) create or impose a lien, charge or encumbrance on any property of the Company under any agreement or any commitment to which the Company is a party or by which the Company is bound or by which any of its respective properties or assets are bound, or (iv) result in a violation of any federal, state, local or foreign statute, rule, regulation, order, judgment, injunction or decree (including Federal and state securities laws and regulations) applicable to the Company or by which any property or asset of the Company is bound or affected, except, in all cases other than violations pursuant to clauses (i) and (iv) above, for such conflicts, default, terminations, amendments, acceleration, cancellations and violations as would not, individually or in the aggregate, have a Material Adverse Effect.

5. No consent, approval or authorization of or designation, declaration or filing with any governmental authority on the part of the Company is required under Federal, state or local law, rule or regulation in connection with the valid execution and delivery of the Transaction Documents, or the offer,

sale or issuance of the Preferred Stock, the Warrants or the Common Stock issuable upon conversion of the Preferred Stock and exercise of the Warrants other than the Certificate of Designation and the Registration Statement.

6. To our knowledge, there is no action, suit, claim, investigation or proceeding pending or threatened against the Company which questions the validity of this Agreement or the transactions contemplated hereby or any action taken or to be taken pursuant hereto or thereto. To our knowledge, there is no action, suit, claim, investigation or proceeding pending, or to our knowledge, threatened, against or involving the Company or any of its properties or assets and which, if adversely determined, is reasonably likely to result in a Material Adverse Effect. There are no outstanding orders, judgments, injunctions, awards or decrees of any court, arbitrator or governmental or regulatory body against the Company or any officers or directors of the Company in their capacities as such.

7. Based upon the representations of the Purchaser, the offer, issuance and sale of the Preferred Stock and the Warrants and the offer, issuance and sale of the shares of Common Stock issuable upon conversion of the Preferred Stock and exercise of the Warrants pursuant to the Purchase Agreement, the Certificate of Designation and the Warrants, as applicable, are exempt from the registration requirements of the Securities Act.

8. The Company is not, and as a result of and immediately upon Closing will not be, an "investment company" or a company "controlled" by an "investment company," within the meaning of the Investment Company Act of 1940, as amended.

Very truly yours,

**[COMPANY COUNSEL]**

By:_____

# SERIES A CONVERTIBLE PREFERRED STOCK PURCHASE AGREEMENT
## SCHEDULES

### Schedule 2.1 (a)

None

**Schedule 2.1 (c)**

As of April 19, 2007, there are 11,363,080 shares of common stock are issued and outstanding. (12,758,080 fully diluted)

There are outstanding warrants and options to purchase up to 1,395,000 shares of common stock at exercise prices ranging between $.50 and 1.25 per share.

## Schedule 2.1 (g)

Marketing Worldwide, LLC, a Michigan Limited Liability Company (100% owned)

**Schedule 2.1 (i)**

None

**Schedule 2.1 (l)**

Form 10-KSB for year-ended September 30, 2006 and Form 10-QSB for the quarter ending
December 31, 2007, as filed with the SEC and available via EDGAR

**Schedule 2.1 (m)**

None

**Schedule 2.1 (s)**

None

**Schedule 2.1 (t)**

None

**Schedule 2.1 (u)**

None

**Schedule 2.1 (v)**

None

**Schedule 2.1 (z)**

None

xxx

**Schedule 2.1 (aa)**

Subsequent to September 30, 2006, the corporation issued the following securities:
Consulting for Strategic Growth   39,900 shares in October 2006
Richard O. Weed   55,000 shares in October 2006 on the exercise of stock options
Consulting for Strategic Growth   39,900 shares in January 2007

**Schedule 2.1 (gg)**

Continental Stock Transfer & Trust Company
Felix Orihuela
17 Battery Place
8th Floor
New York, NY  10004
(212) 845-3215
(212) 509-5150

Schedule 3.11

| ESTIMATED USE OF PROCEEDS | |
|---|---|
| Sales & Marketing | $400,000 |
| New Product Inventory | $400,000 |
| Loan Repayment | $300,000 |
| General Working Capital | $650,000 |
| New Product Development | $600,000 |
| New Tooling | $600,000 |
| Working Capital (painting facility) | $250,000 |
| Capital Assets | $300,000 |
| TOTAL | $3,500,000 |