exercise of such warrants or other rights. The consideration for any Additional Shares of Common Stock issuable pursuant to the terms of any Common Stock Equivalents shall be the consideration received by the Issuer for issuing warrants or other rights to subscribe for or purchase such Common Stock Equivalents, plus the consideration paid or payable to the Issuer in respect of the subscription for or purchase of such Common Stock Equivalents, plus the additional consideration, if any, payable to the Issuer upon the exercise of the right of conversion or exchange in such Common Stock Equivalents. In the event of any consolidation or merger of the Issuer in which the Issuer is not the surviving Person or in which the previously outstanding shares of Common Stock of the Issuer shall be changed into or exchanged for the stock or other securities of another Person, or in the event of any sale of all or substantially all of the assets of the Issuer for stock or other securities of any Person, the Issuer shall be deemed to have issued a number of shares of its Common Stock for stock or securities or other property of the other Person computed on the basis of the actual exchange ratio on which the transaction was predicated, and for a consideration equal to the fair market value on the date of such transaction of all such stock or securities or other property of the other Person. In the event any consideration received by the Issuer for any securities consists of property other than cash, the fair market value thereof at the time of issuance or as otherwise applicable shall be as determined in good faith by the Board. In the event Common Stock is issued with other shares or securities or other assets of the Issuer for consideration which covers both, the consideration computed as provided in this **Section 4(e)(i)** shall be allocated among such securities and assets as determined in good faith by the Board.

    (ii)    When Adjustments to Be Made. The adjustments required by this **Section 4** shall be made whenever and as often as any specified event requiring an adjustment shall occur, except that any adjustment of the number of shares of Common Stock for which this Warrant is exercisable that would otherwise be required may be postponed (except in the case of a subdivision or combination of shares of the Common Stock, as provided for in **Section 4(b)**) up to, but not beyond the date of exercise if such adjustment either by itself or with other adjustments not previously made adds or subtracts less than one percent (1%) of the shares of Common Stock for which this Warrant is exercisable immediately prior to the making of such adjustment. Any adjustment representing a change of less than such minimum amount (except as aforesaid) which is postponed shall be carried forward and made (x) as soon as such adjustment, together with other adjustments required by this **Section 4** and not previously made, would result in a minimum adjustment, or (y) on the date of exercise. For the purpose of any adjustment, any specified event shall be deemed to have occurred at the close of business on the date of its occurrence.

    (iii)    Fractional Interests. In computing adjustments under this **Section 4**, fractional interests in Common Stock shall be taken into account to the nearest one one-hundredth (1/100th) of a share.

    (iv)    When Adjustment Not Required. If the Issuer shall take a record of the holders of its Common Stock for the purpose of entitling them to receive a dividend or distribution or subscription or purchase rights and shall, thereafter and before the

-11-

distribution to stockholders thereof, legally abandon its plan to pay or deliver such dividend, distribution, subscription or purchase rights, then thereafter no adjustment shall be required by reason of the taking of such record and any such adjustment previously made in respect thereof shall be rescinded and annulled.

(f) <u>Form of Warrant after Adjustments</u>. The form of this Warrant need not be changed because of any adjustments in the Warrant Price or the number and kind of Securities purchasable upon the exercise of this Warrant.

(g) <u>Escrow of Warrant Stock</u>. If after any property becomes distributable pursuant to this **Section 4** by reason of the taking of any record of the holders of Common Stock, but prior to the occurrence of the event for which such record is taken, and the Holder exercises this Warrant, any shares of Common Stock issuable upon exercise by reason of such adjustment shall be deemed the last shares of Common Stock for which this Warrant is exercised (notwithstanding any other provision to the contrary herein) and such shares or other property shall be held in escrow for the Holder by the Issuer to be issued to the Holder upon and to the extent that the event actually takes place, upon payment of the current Warrant Price. Notwithstanding any other provision to the contrary herein, if the event for which such record was taken fails to occur or is rescinded, then such escrowed shares shall be cancelled by the Issuer and escrowed property returned.

5. **Notice of Adjustments**. Whenever the Warrant Price or Warrant Share Number shall be adjusted pursuant to **Section 4** hereof (for purposes of this **Section 5**, each an "**Adjustment**"), the Issuer shall cause its Chief Financial Officer to prepare and execute a certificate setting forth, in reasonable detail, the event requiring the Adjustment, the amount of the Adjustment, the method by which such Adjustment was calculated (including a description of the basis on which the Board made any determination hereunder), and the Warrant Price and Warrant Share Number after giving effect to such Adjustment, and shall cause copies of such certificate to be delivered to the Holder of this Warrant promptly after each Adjustment. Any dispute between the Issuer and the Holder of this Warrant with respect to the matters set forth in such certificate may at the option of the Holder of this Warrant be submitted to an Independent Appraiser selected by the Holder; *provided* that the Issuer shall have ten (10) days after receipt of notice from such Holder of its selection of such Independent Appraiser to object thereto, in which case such Holder shall select another such Independent Appraiser and the Issuer shall have no such right of objection. The Independent Appraiser selected by the Holder of this Warrant as provided in the preceding sentence shall be instructed to deliver a written opinion as to such matters to the Issuer and such Holder within thirty (30) days after submission to it of such dispute. Such opinion shall be final and binding on the parties hereto. The costs and expenses of the initial firm selected as Independent Appraiser shall be paid equally by the Issuer and the Holder and, in the case of an objection by the Issuer, the costs and expenses of the subsequent firm selected as Independent Appraiser shall be paid in full by the Issuer.

6. **Fractional Shares**. No fractional shares of Warrant Stock will be issued in connection with any exercise hereof, but in lieu of such fractional shares, the Issuer shall round the number of shares to be issued upon exercise up to the nearest whole number of shares.

7. **Ownership Cap and Exercise Restriction**. Notwithstanding anything to the

contrary set forth in this Warrant, at no time may a Holder of this Warrant exercise this Warrant if the number of shares of Common Stock to be issued pursuant to such exercise would exceed, when aggregated with all other shares of Common Stock owned by such Holder at such time, the number of shares of Common Stock which would result in such Holder beneficially owning (as determined in accordance with Section 13(d) of the Exchange Act and the rules thereunder) in excess of 9.99% of the then issued and outstanding shares of Common Stock; *provided, however*, that upon a holder of this Warrant providing the Issuer with sixty-one (61) days notice (pursuant to **Section 13** hereof) (the "**Waiver Notice**") that such Holder would like to waive this **Section 7** with regard to any or all shares of Common Stock issuable upon exercise of this Warrant, this **Section 7** will be of no force or effect with regard to all or a portion of the Warrant referenced in the Waiver Notice; *provided, further*, that this provision shall be of no further force or effect during the sixty-one (61) days immediately preceding the expiration of the term of this Warrant.

8. **Issuer's Redemption Option**. If (A) the Per Share Market Value of the Common Stock for any ten (10) consecutive Trading Days equals or exceeds $3.00 per share (as may be adjusted for any stock splits or combinations of the Common Stock) and (B) the trading volume of the Common Stock for each Trading Day of such ten (10) Trading Day period equals or exceeds 20,000 shares of Common Stock, the Issuer may, at any time thereafter upon ten (10) Trading Days prior written notice (the "**Issuer Redemption Notice**") to the Holder, redeem the unexercised portion of this Warrant in cash at a price equal to the number of shares of Warrant Stock with respect to the unexercised portion of this Warrant multiplied by $0.001 (the "**Issuer Redemption Price**"); *provided, that*, in connection with any redemption by the Issuer under this **Section 8**, (A) the registration statement (the "**Registration Statement**") filed by the Issuer with the Securities and Exchange Commission providing for the resale of the Warrant Stock and the shares of Common Stock issued pursuant to the Purchase Agreement is then in effect and has been effective, without lapse or suspension of any kind, for a period of sixty (60) consecutive calendar days, (B) trading in the Common Stock shall not have been suspended by the Securities and Exchange Commission or the OTC Bulletin Board (or other exchange or market on which the Common Stock is trading), (C) the Issuer is in material compliance with the terms and conditions of this Warrant and the other Transaction Documents (as defined in the Purchase Agreement) and (D) the Issuer is not in possession of any material non-public information; *provided, further*, that the Registration Statement is in effect from the date of delivery of the Issuer Redemption Notice until the date which is the later of (1) the date the Holder exercises the Warrant pursuant to the Issuer Redemption Notice and (2) the twentieth (20th) Trading Day after the Holder receives the Issuer Redemption Notice (the "**Early Termination Date**"). The rights and privileges granted pursuant to this Warrant with respect to the shares of Warrant Stock subject to the Issuer Redemption Notice (the "**Redeemed Warrant Shares**") shall expire on the Early Termination Date if this Warrant is not exercised with respect to such Redeemed Warrant Shares prior to such Early Termination Date. The Issuer's Redemption Notice shall state the date of redemption which date shall be the twenty-first (21st) Trading Day after the Issuer has delivered the Issuer's Redemption Notice (the "**Issuer's Redemption Date**"), the Issuer's Redemption Price and the number of shares to be redeemed by the Issuer. The Issuer shall not send a Issuer's Redemption Notice unless it has good and clear funds for a minimum of the amount it intends to redeem in a bank account controlled by the Issuer. The Issuer shall deliver the Issuer's Redemption Price to the Holder on the Issuer's Redemption Date. Not later than five (5) days after receipt of the Issuer Redemption Price, Holder shall return to the Issuer for cancellation the original Warrant to be redeemed. If the Issuer fails to pay the Issuer's

Redemption Price by the Issuer's Redemption Date, the redemption will be declared null and void. Notwithstanding anything in the foregoing to the contrary, if the Holder may not exercise this Warrant as a result of the restriction contained in **Section 7** hereof, the Issuer Redemption Notice shall be deemed null and void and shall not be deemed effective until the date that the Holder may exercise this Warrant in accordance with **Section 7** hereof.

      9.    **Definitions**. For the purposes of this Warrant, the following terms have the following meanings:

"**Additional Shares of Common Stock**" means all shares of Common Stock issued by the Issuer after the Original Issue Date, and all shares of Other Common, if any, issued by the Issuer after the Original Issue Date, except: (i) securities issued (other than for cash) in connection with a merger, acquisition, or consolidation that do not exceed 5% of the outstanding Common Stock of the Issuer as of the date of the Purchase Agreement (such percentage subject to adjustment in a manner consistent with the adjustments to the Warrant Price contemplated in **Section 4** hereof), (ii) securities issued pursuant to the conversion or exercise of convertible or exercisable securities issued or outstanding on or prior to the date of the Purchase Agreement or issued pursuant to the Purchase Agreement (so long as the conversion or exercise price in such securities are not amended to lower such price and/or adversely affect the Holders), (iii) the Warrant Stock, (iv) Common Stock issued or the issuance or grants of options to purchase Common Stock pursuant to the Company's stock option plans and employee stock purchase plans that either (x) exist on the date of the Purchase Agreement, or (y) do not exceed ten percent (10%) of the outstanding Common Stock of the Company as of the date of the Purchase Agreement, and (v) any warrants issued to the placement agent and its designees for the transactions contemplated by the Purchase Agreement. For the avoidance of doubt, notwithstanding clause (i) of this paragraph, in the event that the Company shall effect a merger or similar transaction permitted under **Section 3.22(b)(i)** of the Purchase Agreement, the amount of Common Stock issued in connection with such transaction that exceeds 5% of the outstanding Common Stock of the Company as of the Date of the Purchase Agreement shall nonetheless be subject to all of the provisions of **Section 4** hereof.

"**Board**" shall mean the Board of Directors of the Issuer.

"**Capital Stock**" means and includes (i) any and all shares, interests, participations or other equivalents of or interests in (however designated) corporate stock, including, without limitation, shares of preferred or preference stock, (ii) all partnership interests (whether general or limited) in any Person which is a partnership, (iii) all membership interests or limited liability company interests in any limited liability company, and (iv) all equity or ownership interests in any Person of any other type.

"**Certificate of Incorporation**" means the Certificate of Incorporation of the Issuer as in effect on the Original Issue Date, and as hereafter from time to time amended, modified, supplemented or restated in accordance with the terms hereof and thereof and pursuant to applicable law.

"**Common Stock**" means the Common Stock, $0.001 par value per share, of the

-14-

Issuer and any other Capital Stock into which such stock may hereafter be changed.

**"Common Stock Equivalent"** means any Convertible Security or warrant, option or other right to subscribe for or purchase any Additional Shares of Common Stock or any Convertible Security.

**"Convertible Securities"** means evidences of Indebtedness, shares of Capital Stock or other Securities which are or may be at any time convertible into or exchangeable for Additional Shares of Common Stock. The term **"Convertible Security"** means one of the Convertible Securities.

**"Governmental Authority"** means any governmental, regulatory or self-regulatory entity, department, body, official, authority, commission, board, agency or instrumentality, whether federal, state or local, and whether domestic or foreign.

**"Holders"** mean the Persons who shall from time to time own any Warrant. The term "Holder" means one of the Holders.

**"Independent Appraiser"** means a nationally recognized or major regional investment banking firm or firm of independent certified public accountants of recognized standing (which may be the firm that regularly examines the financial statements of the Issuer) that is regularly engaged in the business of appraising the Capital Stock or assets of corporations or other entities as going concerns, and which is not affiliated with either the Issuer or the Holder of any Warrant.

**"Issuer"** means Marketing Worldwide Corporation, a Delaware corporation, and its successors.

**"Majority Holders"** means at any time the Holders of Warrants exercisable for a majority of the shares of Warrant Stock issuable under the Warrants at the time outstanding.

**"Original Issue Date"** means April 23, 2007.

**"OTC Bulletin Board"** means the over-the-counter electronic bulletin board.

**"Other Common"** means any other Capital Stock of the Issuer of any class which shall be authorized at any time after the date of this Warrant (other than Common Stock) and which shall have the right to participate in the distribution of earnings and assets of the Issuer without limitation as to amount.

**"Outstanding Common Stock"** means, at any given time, the aggregate amount of outstanding shares of Common Stock, assuming full exercise, conversion or exchange (as applicable) of all options, warrants and other Securities which are convertible into or exercisable or exchangeable for, and any right to subscribe for, shares of Common Stock that are outstanding at such time.

"**Person**" means an individual, corporation, limited liability company, partnership, joint stock company, trust, unincorporated organization, joint venture, Governmental Authority or other entity of whatever nature.

"**Per Share Market Value**" means on any particular date (a) the last closing bid price per share of the Common Stock on such date on the OTC Bulletin Board or another registered national stock exchange on which the Common Stock is then listed, or if there is no such price on such date, then the closing bid price on such exchange or quotation system on the date nearest preceding such date, or (b) if the Common Stock is not listed then on the OTC Bulletin Board or any registered national stock exchange, the last closing bid price for a share of Common Stock in the over-the-counter market, as reported by the OTC Bulletin Board or in the National Quotation Bureau Incorporated or similar organization or agency succeeding to its functions of reporting prices) at the close of business on such date, or (c) if the Common Stock is not then reported by the OTC Bulletin Board or the National Quotation Bureau Incorporated (or similar organization or agency succeeding to its functions of reporting prices), then the "Pink Sheet" quotes for the applicable Trading Days preceding such date of determination, or (d) if the Common Stock is not then publicly traded the fair market value of a share of Common Stock as determined by an Independent Appraiser selected in good faith by the Majority Holders; *provided, however*, that the Issuer, after receipt of the determination by such Independent Appraiser, shall have the right to select an additional Independent Appraiser, in which case, the fair market value shall be equal to the average of the determinations by each such Independent Appraiser; and *provided, further* that all determinations of the Per Share Market Value shall be appropriately adjusted for any stock dividends, stock splits or other similar transactions during such period. The determination of fair market value by an Independent Appraiser shall be based upon the fair market value of the Issuer determined on a going concern basis as between a willing buyer and a willing seller and taking into account all relevant factors determinative of value, and shall be final and binding on all parties. In determining the fair market value of any shares of Common Stock, no consideration shall be given to any restrictions on transfer of the Common Stock imposed by agreement or by federal or state securities laws, or to the existence or absence of, or any limitations on, voting rights.

"**Purchase Agreement**" means the Series A Convertible Preferred Stock Purchase Agreement dated as of April 23, 2007, among the Issuer and the Purchasers.

"**Purchasers**" means the purchasers of the Series A Convertible Preferred Stock and the Warrants issued by the Issuer pursuant to the Purchase Agreement.

"**Securities**" means any debt or equity securities of the Issuer, whether now or hereafter authorized, any instrument convertible into or exchangeable for Securities or a Security, and any option, warrant or other right to purchase or acquire any Security. "Security" means one of the Securities.

"**Securities Act**" means the Securities Act of 1933, as amended, or any similar federal statute then in effect.

"**Subsidiary**" means any corporation at least 50% of whose outstanding Voting Stock shall at the time be owned directly or indirectly by the Issuer or by one or more of its Subsidiaries, or by the Issuer and one or more of its Subsidiaries.

"**Term**" has the meaning specified in **Section 1** hereof.

"**Trading Day**" means (a) a day on which the Common Stock is traded on the OTC Bulletin Board, or (b) if the Common Stock is not traded on the OTC Bulletin Board, a day on which the Common Stock is quoted in the over-the-counter market as reported by the National Quotation Bureau Incorporated (or any similar organization or agency succeeding its functions of reporting prices); *provided, however,* that in the event that the Common Stock is not listed or quoted as set forth in (a) or (b) hereof, then Trading Day shall mean any day except Saturday, Sunday and any day which shall be a legal holiday or a day on which banking institutions in the State of New York are authorized or required by law or other government action to close.

"**Voting Stock**" means, as applied to the Capital Stock of any corporation, Capital Stock of any class or classes (however designated) having ordinary voting power for the election of a majority of the members of the Board of Directors (or other governing body) of such corporation, other than Capital Stock having such power only by reason of the happening of a contingency.

"**Warrants**" means the Warrants issued and sold pursuant to the Purchase Agreement, including, without limitation, this Warrant, and any other warrants of like tenor issued in substitution or exchange for any thereof pursuant to the provisions of **Section 2(c), 2(d) or 2(e)** hereof or of any of such other Warrants.

"**Warrant Price**" initially means $0.85, as such price may be adjusted from time to time as shall result from the adjustments specified in this Warrant, including **Section 4** hereto.

"**Warrant Share Number**" means at any time the aggregate number of shares of Warrant Stock which may at such time be purchased upon exercise of this Warrant, after giving effect to all prior adjustments and increases to such number made or required to be made under the terms hereof.

"**Warrant Stock**" means Common Stock issuable upon exercise of any Warrant or Warrants or otherwise issuable pursuant to any Warrant or Warrants.

10. **Other Notices**. In case at any time:

> (A) the Issuer shall make any distributions to the holders of Common Stock; or
>
> (B) the Issuer shall authorize the granting to all holders of its Common Stock of rights to subscribe for or purchase any shares of Capital Stock of any class or other rights; or

 (C) there shall be any reclassification of the Capital Stock of the Issuer; or

 (D) there shall be any capital reorganization by the Issuer; or

 (E) there shall be any (i) consolidation or merger involving the Issuer or (ii) sale, transfer or other disposition of all or substantially all of the Issuer's property, assets or business (except a merger or other reorganization in which the Issuer shall be the surviving corporation and its shares of Capital Stock shall continue to be outstanding and unchanged and except a consolidation, merger, sale, transfer or other disposition involving a wholly-owned Subsidiary); or

 (F) there shall be a voluntary or involuntary dissolution, liquidation or winding-up of the Issuer or any partial liquidation of the Issuer or distribution to holders of Common Stock;

then, in each of such cases, the Issuer shall give written notice to the Holder of the date on which (i) the books of the Issuer shall close or a record shall be taken for such dividend, distribution or subscription rights or (ii) such reorganization, reclassification, consolidation, merger, disposition, dissolution, liquidation or winding-up, as the case may be, shall take place. Such notice also shall specify the date as of which the holders of Common Stock of record shall participate in such dividend, distribution or subscription rights, or shall be entitled to exchange their certificates for Common Stock for securities or other property deliverable upon such reorganization, reclassification, consolidation, merger, disposition, dissolution, liquidation or winding-up, as the case may be. Such notice shall be given at least twenty (20) days prior to the action in question and not less than ten (10) days prior to the record date or the date on which the Issuer's transfer books are closed in respect thereto. This Warrant entitles the Holder to receive copies of all financial and other information distributed or required to be distributed to the holders of the Common Stock.

 11. **Amendment and Waiver**. Any term, covenant, agreement or condition in this Warrant may be amended, or compliance therewith may be waived (either generally or in a particular instance and either retroactively or prospectively), by a written instrument or written instruments executed by the Issuer and the Majority Holders; *provided, however*, that no such amendment or waiver shall reduce the Warrant Share Number, increase the Warrant Price, shorten the period during which this Warrant may be exercised or modify any provision of this **Section 11** without the consent of the Holder of this Warrant. No consideration shall be offered or paid to any person to amend or consent to a waiver or modification of any provision of this Warrant unless the same consideration is also offered to all holders of the Warrants.

 12. **Governing Law; Jurisdiction**. This Warrant shall be governed by and construed in accordance with the internal laws of the State of Delaware, without giving effect to any of the conflicts of law principles which would result in the application of the substantive law of another

jurisdiction. This Warrant shall not be interpreted or construed with any presumption against the party causing this Warrant to be drafted. The Issuer and the Holder agree that venue for any dispute arising under this Warrant will lie exclusively in the state or federal courts located in New York County, New York, and the parties irrevocably waive any right to raise *forum non conveniens* or any other argument that New York is not the proper venue. The Issuer and the Holder irrevocably consent to personal jurisdiction in the state and federal courts of the state of New York. The Issuer and the Holder consent to process being served in any such suit, action or proceeding by mailing a copy thereof to such party at the address in effect for notices to it under this Warrant and agrees that such service shall constitute good and sufficient service of process and notice thereof. Nothing in this **Section 12** shall affect or limit any right to serve process in any other manner permitted by law. The Issuer and the Holder hereby agree that the prevailing party in any suit, action or proceeding arising out of or relating to this Warrant or the Purchase Agreement, shall be entitled to reimbursement for reasonable legal fees from the non-prevailing party. The parties hereby waive all rights to a trial by jury.

13.  **Notices**. Any notice, demand, request, waiver or other communication required or permitted to be given hereunder shall be in writing and shall be effective (a) upon hand delivery by telecopy or facsimile at the address or number designated below (if delivered on a business day during normal business hours where such notice is to be received), or the first business day following such delivery (if delivered other than on a business day during normal business hours where such notice is to be received) or (b) on the second business day following the date of mailing by express courier service, fully prepaid, addressed to such address, or upon actual receipt of such mailing, whichever shall first occur. The addresses for such communications shall be:

If to the Issuer:    Marketing Worldwide Corporation
                     2212 Grand Commerce Drive
                     Howell, Michigan 48855
                     Attention: James Marvin
                     Tel. No.: (517) 540-0045
                     Fax No.: (517) 540-0923

with copies (which copies
shall not constitute notice)
to:                  Weed & Co. LLP
                     4695 Mac Arthur Court, Suite 1430
                     Newport Beach, CA 92660
                     Attention: Richard O. Weed
                     Tel. No.: (949) 475-9086
                     Fax No.: (949) 475-9087

If to any Holder:    At the address of such Holder set forth on **Exhibit A** to the Purchase Agreement, with copies to:

                     Sadis & Goldberg LLP
                     551 Fifth Avenue, 21st Floor
                     New York, New York 10176
                     Attention: Steven Huttler, Esq.
                     Tel. No.: (212) 947-3793

Fax No.: (212) 947-3796

Any party hereto may from time to time change its address for notices by giving written notice of such changed address to the other party hereto.

14.  **Warrant Agent**. The Issuer may, by written notice to each Holder of this Warrant, appoint an agent having an office in New York, New York for the purpose of issuing shares of Warrant Stock on the exercise of this Warrant pursuant to **Section 2(e)** hereof, exchanging this Warrant pursuant to **Section 2(e)** hereof or replacing this Warrant pursuant to **Section 3(d)** hereof, or any of the foregoing, and thereafter any such issuance, exchange or replacement, as the case may be, shall be made at such office by such agent.

15.  **Remedies**. The Issuer stipulates that the remedies at law of the Holder of this Warrant in the event of any default or threatened default by the Issuer in the performance of or compliance with any of the terms of this Warrant are not and will not be adequate and that, to the fullest extent permitted by law, such terms may be specifically enforced by a decree for the specific performance of any agreement contained herein or by an injunction against a violation of any of the terms hereof or otherwise.

16.  **Successors and Assigns**. This Warrant and the rights evidenced hereby shall inure to the benefit of and be binding upon the successors and assigns of the Issuer, the Holder hereof and (to the extent provided herein) the Holders of Warrant Stock issued pursuant hereto, and shall be enforceable by any such Holder or Holder of Warrant Stock.

17.  **Construction**. This Warrant shall be deemed to be jointly drafted by the Company and all the Holders and shall not be construed against any person as the drafter hereof.

18.  **Headings**. The headings of the Sections of this Warrant are for convenience of reference only and shall not, for any purpose, be deemed a part of this Warrant.

19.  **Registration Rights**. The Holder of this Warrant is entitled to the benefit of certain registration rights with respect to the shares of Warrant Stock issuable upon the exercise of this Warrant pursuant to the Registration Rights Agreement and the registration rights with respect to the shares of Warrant Stock issuable upon the exercise of this Warrant by any subsequent Holder may only be assigned in accordance with the terms and provisions of the Registrations Rights Agreement and **Section 2(f)** hereof.

[*remainder of page intentionally left blank*]

IN WITNESS WHEREOF, the Issuer has executed this Series E Warrant as of the day and year first above written.

MARKETING WORLDWIDE CORPORATION

By: _____
Name: Michael Winzkowski
Title: President & CEO

-21-

EXERCISE FORM
SERIES E WARRANT

MARKETING WORLDWIDE CORPORATION

The undersigned _____, pursuant to the provisions of the within Warrant, hereby elects to purchase \_\_\_\_\_ shares of Common Stock of Marketing Worldwide Corporation covered by the within Warrant.

Dated: _____    Signature   _____

                               Address     _____
                                           _____

Number of shares of Common Stock beneficially owned or deemed beneficially owned by the Holder on the date of Exercise: _____

The undersigned is an "accredited investor" as defined in Regulation D under the Securities Act of 1933, as amended.

The undersigned intends that payment of the Warrant Price shall be made as (check one):

       Cash Exercise_____

       Cashless Exercise_____

If the Holder has elected a Cash Exercise, the Holder shall pay the sum of $_____ by certified or official bank check (or via wire transfer) to the Issuer in accordance with the terms of the Warrant.

If the Holder has elected a Cashless Exercise, a certificate shall be issued to the Holder for the number of shares equal to the whole number portion of the product of the calculation set forth below, which is _____. The Company shall pay a cash adjustment in respect of the fractional portion of the product of the calculation set forth below in an amount equal to the product of the fractional portion of such product and the Per Share Market Value on the date of exercise, which product is _____.

$$X = Y - \frac{(A)(Y)}{B}$$

Where:

The number of Ordinary Shares to be issued to the Holder _____ ("X").

The number of Ordinary Shares purchasable upon exercise of all of the Warrant or, if only a portion of the Warrant is being exercised, the portion of the Warrant being exercised _____ ("Y").

i

The Warrant Price _____ ("A").

The Per Share Market Value of one Ordinary Share _____ ("B").

## ASSIGNMENT

FOR VALUE RECEIVED, _____ hereby sells, assigns and transfers unto _____ the within Warrant and all rights evidenced thereby and does irrevocably constitute and appoint _____, attorney, to transfer the said Warrant on the books of the within named corporation.

Dated: _____     Signature     _____

                            Address      _____
                                         _____

## PARTIAL ASSIGNMENT

FOR VALUE RECEIVED, _____ hereby sells, assigns and transfers unto _____ the right to purchase _____ shares of Warrant Stock evidenced by the within Warrant together with all rights therein, and does irrevocably constitute and appoint _____, attorney, to transfer that part of the said Warrant on the books of the within named corporation.

Dated: _____     Signature     _____

                            Address      _____
                                         _____

## FOR USE BY THE ISSUER ONLY:

This Warrant No. W-___ canceled (or transferred or exchanged) this _____ day of _____, _____, shares of Common Stock issued therefor in the name of _____, Warrant No. W-_____ issued for ____ shares of Common Stock in the name of _____.

ii