United States District Court
Southern District of New York
--------------------------------------------------------x

Carter Securities, LLC,

                Plaintiff,

     v.

Marketing Worldwide Corporation,                07 CV 10671 (BSJ)

                Defendant.

--------------------------------------------------------x

        Memorandum of Law Submitted By Plaintiff Carter Securities, LLC
        <u>In Opposition To Defendant's Motion To Dismiss The Complaint</u>

 

Law Offices of Kenneth A. Zitter
Attorneys for Plaintiff,
   Carter Securities, LLC
260 Madison Avenue, 18th Floor
New York, New York 10016
212-532-8000

## Table of Contents

Table of Authorities ................................................................... ii

Preliminary Statement ................................................................ 1

Argument ............................................................................. 9

Point 1 ............................................................................... 9

    The Standard On A Motion To Dismiss ........................................ 9

Point 2 .............................................................................. 10

    The Terms of the Retention Agreement Obligate
    MWWC To Pay Additional Placement Fees To Carter ......................... 10

Point 3 .............................................................................. 14

    The Third Cause of Action
    States A Valid Claim For Relief ............................................. 14

Conclusion .......................................................................... 15

## Table of Authorities

*Fernandez v. Chertoff*, 471 F.3d 45 (2d Cir. 2006) .................................. 9

*Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229 (2d Cir. 2007) .................. 9

*Natural Resources Defense Council v. Johnson*, 461 F.3d 164 (2d Cir. 2006) ............... 9


<u>Federal Rules of Civil Procedure:</u>

12(b)(6). ................................................................ 1, 9

Preliminary Statement

This Memorandum of Law is submitted By Plaintiff Carter Securities, LLC ("Carter") in opposition to the motion brought by Defendant Marketing Worldwide Corporation ("MWWC") to dismiss the Complaint pursuant to Fed. R. Civ. P. Rule 12(b)(6). MWWC claims that the documentary evidence contradicts Carter's claims as a matter of law and, therefore, the Complaint must be dismissed. As hereafter set forth, MWWC's argument is incorrect. The Complaint states valid claims for relief and should not be dismissed.

Facts

Carter is a broker-dealer (¶1).[1] On or about December 21, 2006, MWWC and Carter entered into a written retention agreement (the "Retention Agreement") whereby MWWC retained Carter to act as MWWC's exclusive placement agent for a private placement of units of its securities (¶3, Exhibit to the Moving Memorandum). The Retention Agreement provided that the placement was expected to provide proceeds to MWWC of up to $2.5-5 million on terms approximating those of the pro-forma term sheet (the "Pro-Forma Term Sheet") annexed to the Retention Agreement.[2] That term sheet provided for each unit of MWWC's securities to be

---

[1] The "¶" symbol followed by a number refers to paragraphs in the Complaint. Exhibits refer to Exhibits attached either to the moving memorandum of law or to the Zitter affirmation, as indicated. The fact section also sets forth reasonable inferences drawn from the underlying Complaint and the underlying transaction documents.

[2] A term sheet is a document which contains the terms of the deal between the parties to be incorporated in the formal contract to be thereafter prepared and executed.

comprised of one share of common stock and a ½ warrant[3] and further provided for each unit to be priced at $0.70 per unit. The warrants were anticipated to have an exercise price of $1 per share.

The Retention Agreement provided that if Carter was successful in placing the MWWC securities, Cater would receive a placement fee equal to 7% of the gross proceeds of their sale plus warrants to purchase a dollar value of stock equal to 7% of the total gross proceeds which MWWC received from the investors in the placement (¶4). The Retention Agreement also provided that if any potential or actual investor in MWWC made an investment within twelve months after February 15, 2007 or the consummation of the placement, then Carter would be entitled to additional fees and warrants to be calculated in accordance with the terms of the Retention Agreement (¶5).

As a result of Carter's introductions and efforts, on or about January 30, 2007, MWWC in fact signed an actual term sheet (the "January Term Sheet") with Vision Opportunity Master Fund, Ltd. ("VOMF") in which VOMF and MWWC agreed upon the terms of VOMF's investment in MWWC (Exhibit A to the Zitter Affirmation). Pursuant to the January Term Sheet, MWWC agreed to issue $3.5 million of its Series A Convertible Preferred Stock (the "Convertible Preferred Stock") to VOMF, which was convertible into shares of MWWC common stock at a conversion price of $0.65 per share (¶7). Pursuant to the January Term Sheet

---

[3] i.e., one warrant to purchase one half share of common stock for each share of common stock purchased.

2

MWWC agreed that VOMF would also receive Class A, B, and C Warrants, exercisable for five years after closing on the purchase of the Convertible Preferred Stock. Those warrants would enable VOMF to obtain, in total, an additional 150% (50% for each of the three classes of warrants) of the common shares which MWWC could obtain upon conversion of the Convertible Preferred Stock. The exercise prices of the Class A, B and C Warrants were $0.65, $0.85 and $1.20 respectively. The January Term Sheet provided that, under certain circumstances, the Class A, B and C Warrants could be exercised on a cashless basis, which meant that VOMF could exercise those options without making any additional investment in MWWC.[4] The January Term Sheet made no provision for the issuance of any warrants other than the Class A, B and C Warrants (Exhibit A to the Zitter Affirmation). The issuance of warrants in connection with a purchase of Convertible Preferred Stock is a common term of such transactions and is intended as an additional inducement for the investor to make the agreed upon investment (¶7).

The January Term Sheet also provided VOMF with an Additional Investment Option. In the January Term Sheet the parties agreed as follows:

---

[4]The January Term Sheet provided: "Cashless Exercise: Commencing one year after the Closing, the Warrants will be exercisable on a cashless basis, unless a registration statement covering the securities is in effect." The identical provision is contained in the March Term Sheet, as hereafter set forth. As a practical matter, therefore, VOMF would never have to invest any more of its own funds to reap the benefits of the warrants. If there was no registration statement in effect, the warrants themselves provided for cashless exercise. If a registration statement were in effect, then VOMF could sell the underlying common stock on the open market and pay the warrant exercise price from the funds it received upon sale of the underlying stock.

3

> "Additional Investment Option: VOMF shall have the exclusive right, but not the obligation, to make an additional investment up to a maximum of 100% of its initial investment for a period of fourteen (14) months after the Closing on the same terms."

Thus the January Term Sheet entered into between MWWC and VOMF differed from the Pro-Forma Term Sheet appended to the Retention Agreement between MWWC and Carter, in the following respects (among others): MWWC agreed to issue convertible preferred stock, instead of common stock, MWWC agreed to issue warrants covering 150% of the shares issued, as opposed to 50%, and the exercise prices of the Class A, B and C Warrants were $0.65, $0.85 and $1.20 respectively rather than $1.

On or about March 11, 2006, VOMF and MWWC executed an amended term sheet (the "March Term Sheet") (Exhibit B to the Zitter Affirmation). The amount of Convertible Preferred Stock to be issued, the obligation to issue only Class A, B and C Warrants, the cashless exercise provision for those warrants and the provision granting VOMF the Additional Investment Option, however, remained unchanged from the January Term Sheet, except that the exercise prices of the Class A, B and C Warrants were changed to $0.90, $1.25 and $1.60 respectively. The conversion price for the Convertible Preferred was reduced from $0.65 to $0.50 per share.

On or about April 23, 2007, MWWC and VOMF entered into the Series A Convertible Preferred Stock Purchase Agreement (the "Stock Purchase Agreement").[5] In that agreement,

---

[5] MWWC annexes only an unsigned version of the Stock Purchase Agreement to its motion papers. Its motion to dismiss should be denied if only because it has not produced for the Court the actual document executed by the parties which forms the basis of its argument that the

4

MWWC agreed to issue 3.5 million shares of its Convertible Preferred Stock to VOMF for $3.5 million. The Convertible Preferred Stock, by its terms, could be converted by VOMF into 7 million shares of common stock at a conversion price of $0.50 per share. MWWC also agreed to issue Class A, B and C Warrants (as provided in the January and March Terms Sheets), each of which could be exercised for an additional 3.5 million shares of common stock. Thus VOMF could exercise the Class A, B and C Warrants to receive an additional 10.5 million shares of common stock, 150% of the common stock which VOMF would receive upon conversion of the Convertible Preferred Stock (consistent with the provisions of the January and March Term Sheets which provided for 150% warrant coverage).

Additionally, rather than leave the terms of the Additional Investment Option agreed upon in the January and March Term Sheets subject to future negotiation, the parties agreed in the Securities Purchase Agreement that VOMF would have the option, for fourteen months after closing, to make a future additional investment in MWWC of up to $3.5 million. VOMF and MWWC agreed that VOMF's Additional Investment Option should take the form of a Series J Warrant (¶10). Pursuant to the terms of that warrant, VOMF, at it option for the next fourteen months, could acquire up to 5 million shares of MWWC stock at $0.70 per share, a total investment of up to $3.5 million (¶11). The Securities Purchase Agreement contains no other provision granting VOMF an additional investment option, other than the Series J Warrant.[6]

---

Stock Purchase Agreement precludes Carter's claims. In any event, Carter has produced the actual Stock Purchase Agreement executed by the parties as Exhibit C to the Zitter Affirmation.

[6]The Securities Purchase Agreement in Section 3.22 does give VOMF a right of first refusal with respect to subsequent financings, as therein provided. The Securities Purchase

The Series J Warrant was not set forth in the Pro-Forma Term Sheet, the January Term Sheet or the March Term Sheet because it was not intended (as the Class A, B and C Warrants were intended) as an additional inducement for VOMF to make the agreed upon initial $3.5 million investment. The Series J Warrant contained no cashless exercise provision, as the Class A, B and C Warrants did, because the only way that VOMF could exercise the Series J Warrant was by making an actual additional cash investment of its own funds in MWWC (Series J Warrant annexed as an Exhibit to the Moving Memorandum).

To provide the same inducement to VOMF to make the additional investment by exercising the Series J Warrant, as MWWC had provided to VOMF to make its initial investment, MWWC agreed to issue to VOMF Class D, E and F Warrants (¶12). Those warrants, by their terms, could be exercised only if VOMF had exercised the Series J Warrant (¶12). Those warrants provided for VOMF to acquire up to an additional 7.5 million shares of MWWC common stock, 150% of the amount of common stock VOMF could acquire if it made an additional investment in MWWC by exercising the Series J Warrant in full (i.e., the identical warrant coverage which VOMF had obtained for its initial investment) (Zitter Affirmation, Exhibit D).

The parties structured the Additional Investment Option as a Series J Warrant, rather than as a simple optional contractual undertaking because, among other reasons, such structure

---

Agreement, however, provides VOMF with no option to make an additional investment in MWWC, except as set forth in the series J Warrant.

6

allowed MWWC to pre-register the shares to be issued pursuant to that warrant, thereby enabling VOMF to receive freely trading registered shares immediately, if it decided to make an additional investment in MWWC by exercising the Series J Warrant (¶10).

In connection with the closing on or about April 23, 2007, and in accordance with the terms of the Retention Agreement, MWWC paid Carter $242,500, representing 7% of the gross proceeds of the sale of the Convertible Preferred Stock subscribed for by VOMF, less some expenses, and issued to Carter warrants to purchase 490,000 shares of MWWC common stock at a price of $.65 per share (the "Series G Warrant") (¶13). The terms of the Series G Warrant (annexed as an Exhibit to the Moving Memorandum, §4(d) thereof) provide that in the event MWWC issues or sells any additional shares of common stock or common stock equivalents at a price per share less than the exercise price of the Series G Warrant, then the exercise price of the Series G Warrant would be accordingly adjusted downward.

On or about September 27, 2007, VOMF and MWWC entered into an agreement amending the Series F Warrant to reduce the exercise price from $1.20 to $.01 and amended the Series J Warrant to reduce its exercise price from $.70 to $.50 (¶14).

On or about September 27, 2007, after the Series F and J Warrants were so amended, VOMF exercised the Series J Warrant, in part, to purchase four million shares of common stock, thereby making an additional investment of $2 million in MWWC. That partial exercise of the

7

Series J Warrant left one million shares still available for VOMF to acquire pursuant to that warrant (¶15).

VOMF's additional $2 million investment in MWWC triggered MWWC's obligation to pay Carter an additional commission under the Retention Agreement. Pursuant to the terms of the Retention Agreement, MWWC is obligated to pay Carter an additional $140,000 representing 7% of the additional $2 million investment by VOMF and additional warrants to purchase 280,000 shares of MWWC common stock at $.65 per share, representing 7% of the shares purchased by VOMF with its additional investment (¶16).

The Complaint alleges three Causes of Action.[7] The First Cause of Action seeks damages of $140,000, representing Carter's entitlement to a placement fee of 7% of the cash portion of VOMF's additional investment, plus an order directing MWWC to issue additional warrants to Carter to purchase 280,000 shares of common stock at an exercise price of $0.50 per share and otherwise in accordance with the agreement of the parties. The Second Cause of Action seeks an order directing MWWC to pay to Carter such additional placement fees as may be due under the agreements between the parties upon exercise by VOMF of all or any part of the remaining Series J Warrant. The Third Cause of Action seeks an order directing MWWC to adjust downward the exercise price of the Series G Warrant to $0.33 per share.

---

[7]The claims are styled "Causes of Action" rather than "Claims for Relief" because the Complaint was initially filed in, and then removed from, New York State Supreme Court, where claims are properly styled as "Causes of Action."

Argument

Point 1

The Standard On A Motion To Dismiss

MWWC moves to dismiss under Rule 12(b)(6) asserting that the Complaint fails to state a claim upon which relief can be granted. The standard which the Court must apply in determining such motion is well known and had been stated repeatedly by many courts. As set forth in *Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007):

> In considering a motion to dismiss for failure to state a claim upon which relief can be granted, the court is to accept as true all facts alleged in the complaint. *Id.* The court is to draw all reasonable inferences in favor of the plaintiff.

See also: *Fernandez v. Chertoff*, 471 F.3d 45, 51 (2d Cir. 2006) ("We review an order of dismissal under Federal Rule of Civil Procedure 12(b)(6) de novo, construing the complaint in favor of the plaintiff and dismissing the complaint only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"); *Natural Resources Defense Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) ("[T]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff.").

9

Accepting all allegations of the Complaint as true, and drawing all reasonable inferences in favor of Carter, the Court, we respectfully submit, must conclude that the Complaint states valid claims for relief.

Point 2

The Terms of the Retention Agreement Obligate
MWWC To Pay Additional Placement Fees To Carter

MWWC argues that because it paid placement fees in the amount of 7% of VOMF's initial investment of $3.5 million, it has no further obligation for placement fees to Carter resulting from any additional investment made by VOMF when it exercised the Series J Warrant. MWWC argues that it is not responsible for any further placement fees for two reasons: i) The Retention Agreement contemplates, according to MWWC, that the units to be sold by MWWC would include warrants and Carter's placement fees were not measured or triggered by the exercise of those warrants (DM p. 9). The exercise of the Series J Warrant, therefore, according to MWWC, did not trigger any obligation for additional placement fees; and ii) any obligation for additional placement fees extended only, according to MWWC, to investments made by potential investors solicited by Carter. Because VOMF had in fact made an actual investment, any additional investments by VOMF in MWWC would not obligate MWWC to pay additional placement fees (DM p. 9).

MWWC's arguments are incorrect. Although the Retention Agreement contemplated that Carter would find a purchaser for $2.5-$5 million of "units" of MWWC's securities, which units

were to be comprised of equity securities and warrants to purchase MWWC common stock, the warrants contemplated by the Retention Agreement were the Class A, B and C Warrants set forth in both the January and March Term Sheets signed by MWWC and VOMF. Those warrants enabled VOMF to obtain additional shares of MWWC without any additional investment by VOMF of its own funds. Such warrants are commonly issued in private placement transactions and are intended as an additional inducement for the investor to make the investment.

Carter has alleged that the Series J Warrant was simply the form utilized by MWWC and VOMF to provide VOMF with an option to make an additional investment of up to $3.5 million, the same amount as its initial investment, in MWWC (¶10). Rather than simply enter into a contractual undertaking in that regard, Carter alleges that VOMF and MWWC structured the potential additional investment in the form of the Series J Warrant because such structuring allowed MWWC to register the shares underlying that warrant so that MWWC would have freely trading shares available to deliver in the event VOMF in fact made an additional investment (¶10).

As noted above, the Court on a motion to dismiss is required to accept the allegations of the Complaint as true and resolve all reasonable inferences in favor of Carter. Carter has alleged that the Series J Warrant was not the warrants contemplated by Retention Agreement to be included in the "units" for which Carter was retained to find a purchaser. Carter alleges the differences between the warrants which were to be included in the "units" and the Series J Warrant which was simply the form chosen by VOMF and MWWC to structure VOMF's

11

additional investment option which would trigger MWWC's obligation to pay Carter additional placement fees. Carter alleges the reason VOMF and MWWC agreed to that form of the additional investment option - MWWC was thereby enabled to register the shares underlying the Series J Warrant so that upon exercise MWWC could immediately deliver freely trading shares to VOMF. Thus Carter's allegations are supported by facts and the reasonable inferences therefrom, which the Court must accept as true on this motion. Thus the Series J Warrant was not included in the "units" referred to in the Retention Agreement and the initial placement fee paid by MWWC did not cover the additional proceeds MWWC would receive upon the exercise of that warrant.

Second, the fair reading of the Retention Agreement obligates MWWC to pay additional placement fees on any additional investment made within twelve months by any potential or actual investor. The Retention Agreement states:

> "If any potential Investor solicited by CARTER and first introduced to the Company during the Term makes an investment in the Company within twelve (12) months of (i) termination or expiration of the Term or (ii) consummation of the Placement, CARTER shall be entitled to fees and warrants as outlined in paragraph 5 herein."

If, as MWWC incorrectly argues, the obligation to pay additional placement fees for additional investments made within twelve months terminated upon any actual investment by the potential investor, then there would be no point in providing that the twelve month period during which additional fees would be payable begins to run upon the "consummation of the

Placement." That phrase clearly contemplates that a potential investor has already made and consummated an investment in MWWC, yet remains liable for additional fees for additional investments made within the ensuing twelve month period. Put another way, although a potential investor may have made an actual investment in MWWC, he still remains a potential investor with respect to potential additional investments in the twelve months following the consummation of his actual investment.

Even if the Court does not accept those reasonable interpretations of the Retention Agreement, the Court should not accept, as a matter of law, MWWC's argument that VOMF's actual investment in MWWC cancelled its prior status as a potential investor in MWWC for purposes of liability for additional placement fees for additional investments within the time period. As an undisputed potential investor in MWWC prior to the investment, nothing in the Retention Agreement cancels that status upon an actual investment for purposes of liability for additional placement fees for additional investments within the time period. Such a reading would lead to the unreasonable result that would allow MWWC to receive unlimited additional funds from VOMF within the first year while paying the agreed upon 7% placement fee only for the first portion of the investment. Any such reading of the Retention Agreement would allow MWWC to escape paying Carter fairly for its essential role in bringing about MWWC's receipt of the additional funds.

The Series J Warrant was not part of the units which formed the basis of the calculation of Carter's initial placement fee but, rather, constituted an additional investment in MWWC by

13

VOMF upon its partial exercise of that warrant. The Retention Agreement provides for additional placement fees to be paid upon VOMF making an additional investment. MWWC has refused to pay the additional placement fees, although they are due and owing. The first two Causes of Action state valid claims.

Point 3

The Third Cause of Action
<u>States A Valid Claim For Relief</u>

MWWC argues that the Third Cause of Action must be dismissed because the Series G Warrant, according to MWWC, does not provide for a downward adjustment of the warrant exercise price under the circumstances alleged. That argument is incorrect.

Section 4(d) of the Series G Warrant provides for an adjustment of the exercise price "in the event that the Company . . . shall . . . issue or sell any Additional Shares of Common Stock or Common Stock Equivalents . . . at a price per share less than the Warrant Price, or without consideration . . ." When the exercise price of the Series F Warrants was adjusted downward from $0.70 to $0.01, it effectively resulted in the issuance of a new common stock equivalent, i.e. a new right by the Series F warrant holder to purchase shares at a $0.01 per share, which it received in exchange for relinquishing its rights to purchase shares at $0.70 per share. Such issuance of a new common stock equivalent, under the terms of the Series G Warrant, triggers MWWC's obligation under Section 4(d) to lower the exercise price of that warrant.

The purpose of a provision requiring a downward modification of a warrant exercise price, as section 4(d) of the Series G Warrant provides, is to prevent the warrant holder from suffering dilution of its warrant rights by virtue of the company issuing shares at a lower price than the warrant holder can obtain shares under the terms of the warrant. The agreement between VOMF and MWWC to lower the exercise price of the Series F Warrant in fact had a dilutive effect on Carter's rights under the Series G Warrant because VOMF could, and in fact did, acquire shares at $0.01 per share, rather than the $0.65 it would cost Carter to obtain the same shares pursuant to the Series G Warrant. If, as MWWC argues, the downward modification of the Series F Warrant exercise price was not in fact an issuance of an additional common stock equivalent, then MWWC and, indeed, all companies, could evade the terms of anti-dilution provisions contained in their warrants by simply issuing new warrants at a higher exercise price (thereby not triggering the anti-dilution provisions of the existing warrants because of the high exercise price) and thereafter simply amending the exercise price downward. Such a reading of section 4(d), as MWWC proposes, makes no sense in fact or in law.

The Third Cause of Action, therefore, states a valid claim for relief and should not be dismissed.

## Conclusion

For the foregoing reasons, MWWC's motion to dismiss the Complaint should in all respects be denied.

Respectfully submitted,

Law Offices of Kenneth A. Zitter

By_____
Kenneth A. Zitter
Attorneys for Plaintiff
Carter Securities, LLC
260 Madison Avenue, 18th Floor
New York, NY 10016
212-532-8000
KAZ-3195