UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
CARTER SECURITIES, LLC,                              :
                                                     :
                    Plaintiff,    :
                                                     :       07 Civ. 10671 (BSJ)
   -against-                                        :
                                                     :
MARKETING WORLDWIDE CORPORATION,                     :
                                                     :
                    Defendant.    :
------------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT…………………….......................................1

ARGUMENT……………………………………………………………………..3

I.

THE FIRST AND SECOND CAUSES OF ACTION MUST BE DISMISSED, AS CARTER, UNDER THE TERMS OF THE AGREEMENT, IS NOT ENTITLED TO ANY ADDITIONAL FEES………………………………………..3

A. Carter's Contention That The Series J Warrant Was Not The Kind Of Warrant Contemplated By The Agreement Is Refuted By All Of The Applicable Documents……………………………..4

B. The Language Of The Finder's Fee Provision Bars Carter's Claim……………………………..........7

II.

THE THIRD CAUSE OF ACTION MUST BE DISMISSED, AS MWC IS NOT REQUIRED TO REDUCE THE EXERCISE PRICE UNDER THE WARRANT ISSUED TO CARTER……………………….....................8

CONCLUSION……………………………………………………………………10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
CARTER SECURITIES, LLC,                          :
                                                 :
                    Plaintiff,                   :
                                                 :   07 Civ. 10671 (BSJ)
    -against-                                    :
                                                 :
MARKETING WORLDWIDE CORPORATION,                 :
                                                 :
                    Defendant.                   :
------------------------------------------------------------------x

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

Defendant Marketing Worldwide Corporation ("MWC") respectfully submits the within reply memorandum of law (i) in further support of its motion for an order, pursuant to F.R.C.P. 12(b)(6), dismissing the three causes of action in the complaint of plaintiff Carter Securities, LLC ("Carter") on the ground they fail to state a claim upon which relief can be granted and (ii) in reply to Carter's opposing memorandum of law ("Carter Memo").

## PRELIMINARY STATEMENT

As previously shown by MWC, all of Carter's claims should be dismissed because they are all refuted by the contents of the relevant documents. Carter's causes of action are based exclusively upon the Agreement [1] and the Carter Warrant but the texts of those documents do not authorize the relief that Carter now seeks. The Agreement sets forth the fees to which Carter was entitled for the services it performed in connection with

_____
[1] The identified terms have the same meaning as in MWC's moving memorandum of law ("Moving Memo").

the placement of the Units (the "Placement") and Carter has been paid all of those fees. The Agreement does not entitle Carter to any additional fees when a purchaser of the Units exercises one of the warrants included in those Units, whether during the "tail" period or not. In addition, the Agreement does not require MWC to reduce the exercise price in the Carter Warrant merely because it reduces the exercise price in another warrant.

Carter's arguments do not warrant a contrary result. Carter, relying on Kassner v. 2nd Avenue Delicatessen Inc., 496 F.3d 229 (2d Cir. 2007), Fernandez v. Chertoff, 471 F.3d 45 (2d Cir. 2006) and Natural Resources Defense Council v. Johnson, 461 F.3d 164 (2d Cir. 2006), argues that all of its allegations should be accepted as true for the purposes of this motion. However, none of the plaintiffs in those cases based their claims upon written agreements. As previously shown by MWC, where, as here, a plaintiff's allegations are contradicted by the agreements upon which it relies, those allegations will not be deemed to be true for the purposes of a motion to dismiss (Moving Memo at 6). In this case, Carter's principal allegations are refuted by the agreements upon which it relies.

Carter claims that Vision's exercise of the Series J warrant entitles it to additional fees because that warrant could only be exercised by a cash payment but the Agreement contemplated that the warrants included in the Units would only be cashless warrants. However, as shown, infra, Carter's contention is refuted by the text of all of the pertinent documents; the Agreement expressly contemplated that the warrants included in the Units would be exercisable by a cash payment and all of the warrants acquired by Vision were exercisable by a cash payment. Moreover, the Agreement expressly provides

73217                                    2

that the finder's fee provision is only triggered by an investment by a *potential* purchaser of the Units; since Vision was an *actual* purchaser of the Units, its exercise of a warrant does not trigger Carter's right to a finder's fee. Finally, Carter's argument that it is entitled to a reduction in the exercise price under the Carter Warrant amounts to little more than an invitation to rewrite the parties' agreement.

## ARGUMENT

### I.

### THE FIRST AND SECOND CAUSES OF ACTION MUST BE DISMISSED, AS CARTER, UNDER THE TERMS OF THE AGREEMENT, IS NOT ENTITLED TO ANY ADDITIONAL FEES

MWC previously demonstrated that Carter's first and second causes of action must be dismissed because Carter is not entitled to any additional fees under the Agreement. The Agreement identified, in paragraph 5, two separate and distinct circumstances under which Carter would be entitled to fees: Carter was entitled to a specified fee if there was a sale of the Units to Investors in a private placement (the "Placement Fee"); and Carter was entitled to additional cash fees and warrants if a party which was introduced to MWC by Carter, but did not purchase any Units, made an investment in MWC within twelve months of the consummation of the Placement (the "Finder's Fee"). Carter, in its first and second causes of actions, claims that it is entitled to additional fees because Vision, the purchaser of the Units, made a cash payment to MWC to exercise one of the warrants contained in the Units. Nowhere does the Agreement authorize the payment of additional fees to Carter if a purchaser of the Units exercises any

of the warrants contained in the Units; instead, under the Agreement, with regard to an actual purchaser of the Units, Carter's compensation was limited to the Placement Fee.

Carter has made two arguments. First, it claims that Vision's exercise of the Series J warrant entitles it to additional fees because the Series J warrant was not the kind of warrant that the Agreement contemplated would be included in the Units. Second, Carter claims that any exercise, by a purchaser of the Units, of a warrant by a cash payment entitles it to a Finder's Fee. As set forth below, both of these arguments are unsupportable.

### A. Carter's Contention That The Series J Warrant Was Not The Kind Of Warrant Contemplated By The Agreement Is <u>Refuted By All Of The Applicable Documents</u>

Carter concedes that under the Agreement its compensation for the placement of the Units was limited to the Placement Fee (Carter Memo at 10-11) and does not deny that the Agreement does not provide for any additional fees in the event a purchaser of the Units exercised a warrant contained in the Units. Nevertheless, Carter contends that Vision's exercise of the Series J warrant entitles it to compensation beyond the Placement Fee because the Series J warrant was "different" from the kind of warrants which the Agreement contemplated would be included in the Units; according to Carter, this "difference" was that the Series J warrant could only be exercised by a cash payment but the Agreement contemplated that the warrants included in the Units would not require a cash payment in order to be exercised. However, as described below, the "difference"

73217                                                     4

now conjured up by Carter is entirely fictitious.

According to Carter, "the Series J Warrant was not the warrants [sic] contemplated by [the] Agreement to be included in the 'units' for which Carter was retained to find a purchaser" (Carter Memo at 11). Instead,

> "[T]he warrants contemplated by the ... Agreement were the Class A, B and C Warrants set forth in both the January and March Term Sheets signed by [MWC] and [Vision]. Those warrants enabled [Vision] to obtain additional shares of [MWC] without any additional investment by [Vision] of its own funds" (Carter Memo at 11).

Carter's argument must be rejected because it is contradicted by every applicable document. The texts of the Agreement and the Series A, B and C warrants make unambiguously clear that (i) Carter and MWC contemplated that the warrants included in the Units would be exercisable upon a cash payment to MWC and (ii) prior to the expiration of Carter's right to a Finder's Fee, *all* of the warrants acquired by Vision can only be exercised in *one* way – by a cash payment. Thus, the "difference" alleged by Carter between the Series J warrant and the Series A, B and C warrants is entirely fictitious.

First, not only does the Agreement not say that the warrants to be included in the Units will be only cashless warrants, but also, it makes clear that Carter and MWC contemplated that the warrants to be included in the Units would, like the Series J warrant, be exercisable upon a cash payment. The Agreement expressly states that the terms of the Placement would approximate the terms of the pro

73217                                          5

forma term sheets which were attached to it[2]. *Both* of those term sheets stated that the warrants to be included in the Units would have an exercise price of $1.00 per share. *Neither* of these term sheets provided for a cashless exercise of the warrants. Thus, the Series J warrant was entirely consistent with Carter's and MWC's understanding that the warrants contained in the Units would be exercisable upon a cash payment.

Second, an examination of the texts of the A, B and C warrants (which were not annexed to Carter's opposing papers but are annexed to MWC's reply declaration) further eviscerates the illusory distinction which Carter has attempted to draw between the Series J warrant and the Series A, B and C warrants. Under the Agreement, any right by Carter's right to a Finder's Fee, under any circumstances, expired twelve months after the Placement; since the Placement was consummated on April 23, 2007, Carter's right to any Finder's Fee expires on April 23, 2008. If Carter is entitled to a Finder's Fee based upon the cash exercise of a warrant included in the Units, that cash exercise must take place prior to April 23, 2008. However, prior to April 23, 2008, *all* of the warrants acquired by Vision can *only* be exercised by a cash payment. Like the Series J warrant, the Series A, B and C warrants *all* provide that prior to April 23, 2008, they can *only* be exercised by a cash payment[3]. Thus, prior to the expiration of

---

[2] The contents of any term sheets between MWC and Vision, prepared months after the Agreement was entered into, have no bearing on the intent of MWC and Carter at the time they entered into the Agreement. Moreover, those term sheets (Carter's exhibits A and B) expressly state that they are not binding agreements.

[3] Even after April 23, 2008, there can only be a cashless exercise of the Series A, B and C warrants if the per share market value of one share of MWC's common stock is greater than the exercise price and there is no registration statement in effect for the stock covered by the warrant.

Carter's right to a Finder's Fee, there is absolutely *no difference* in the way the Series A, B, C and J warrants can be exercised; they all can only be exercised by a cash payment.

### B. The Language Of The Finder's Fee Provision Bars Carter's Claim

In the alternative, Carter abandons its effort to draw a distinction between the Series J warrant and the other warrants acquired by Vision and argues that *any* exercise, by a purchaser of the Units, of a warrant by a cash payment triggered the Finder's Fee provision of the Agreement. According to Carter, a "fair reading of the [Agreement] obligates [MWC] to pay additional placement fees on any additional investment made within twelve months by any potential or actual investor" (Carter Memo at 12). However, as previously shown by MWC, Carter's argument is refuted by the plain terms of the Agreement and settled rules of contract construction (Moving Memo at 9-11).

Under New York law, in interpreting a contract, the words and phrases in the document are to be afforded their plain meaning. LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 206 (2d Cir. 2005). A contract should not be interpreted to render any of its provisions meaningless or superfluous, Two Guys from Harrison-N.Y., Inc. v. S.F.R. Realty Associates, 63 N.Y.2d 396, 403, 482 N.Y.S.2d 465, 468 (1984), and the expression in a contract of one or more things in a class implies the exclusion of all things not expressed. Id., 63 N.Y.2d at 404, 482 N.Y.S.2d at 468. Under the Agreement, the Finder's Fee provision was only triggered by an investment by a "*potential* Investor"; since "Investors"

was defined in the Agreement as "purchasers of the Units," a "potential Investor" was a *potential* purchaser of the Units. The Finder's Fee provision was not triggered by an investment by an actual Investor, an *actual* purchaser of the Units. Here Vision was not a "*potential* Investor"; instead, Vision was an *actual* Investor, an actual purchaser of the Units, and therefore its exercise of the J warrant did not trigger the Finder's Fee provision.

Carter continues to argue that Finder's Fee provision should be deemed to be triggered by an investment by a potential *or* an actual Investor (Carter Memo at 2, 12). However, Carter's argument ignores the dispositive fact that the Finder's Fee provision refers *only* to an investment by a "potential Investor." In essence, Carter is asking this Court to ignore the settled principles of contractual interpretation set forth above and to rewrite the Agreement to erase the distinction between an actual Investor and a potential Investor. However, under New York law, a court is prohibited from adding or excising terms and thereby making a new contract for the parties. <u>Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co.</u>, 1 N.Y.3d 470, 475, 775 N.Y.S.2d 765, 768 (2004). Accordingly, this Court must hold Carter to the bargain that it struck and conclude that it is not entitled to a Finder's Fee based upon Vision's exercise of the Series J Warrant.

## II.

### THE THIRD CAUSE OF ACTION MUST BE DISMISSED, AS MWC IS NOT REQUIRED TO REDUCE THE EXERCISE PRICE UNDER THE WARRANT ISSUED TO CARTER

As previously shown, MWC did not breach the Carter Warrant by declining to reduce the exercise price under that warrant because, under the terms

of that warrant and under the facts alleged by Carter, MWC was not required to reduce the exercise price under that warrant. As a result, the third cause of action must be dismissed. The opposing argument now offered by Carter only confirms that MWC was not required to reduce the exercise price under the Carter Warrant.

It is undisputed that under the terms of the Carter Warrant, MWC was only required to adjust the warrant price if, after April 23, 2007, it issued or sold any additional shares of stock or warrants (or other stock equivalents) at a price per share less than the exercise price set forth in the Carter Warrant (which was $.65 per share). It is undisputed that Carter has not alleged that MWC has issued or sold any such shares of stock or warrants (or other stock equivalents). It is undisputed that all Carter alleges is that MWC has reduced the exercise price under the previously issued Series F warrant. It is undisputed that the text of the Carter Warrant does not require a reduction in the exercise price if MWC merely reduces the exercise price under another warrant. Nevertheless, Carter argues that the Carter Warrant should be interpreted to include such a provision (Carter Memo at 14). However, once again, this Court is prohibited from adding a term to the parties' contract for which the parties did not bargain.

Moreover, the justification that Carter now offers for rewriting the text of the Carter Warrant does not withstand scrutiny. According to Carter, the language of the Carter Warrant should be interpreted to require MWC to reduce the exercise price under the Carter Warrant if it reduces the exercise price under any other warrant. Carter's contends that this interpretation is necessary to prevent the dilution of its rights. According to Carter, the Carter Warrant was intended to prevent "the dilution of [Carter's] warrant rights by virtue of [MWC] issuing shares at a lower price than [Carter]

can obtain shares under the terms of the [Carter W]arrant" (Carter Memo at 15). However, as Carter admits, its rights will *only* be diluted if MWC *actually* issues or sells shares at a lower price; Carter does not claim that its rights will be diluted if MWC merely reduces the exercise price in another warrant. Here, the complaint does *not* allege that MWC has issued or sold shares at a lower price. All Carter alleges is that MWC has lowered the exercise price under the Series F warrant; it does not allege that any of the shares represented by that warrant have actually been issued or sold[4]. In the absence of the actual issuance or sale of shares at a lower price, there is no risk of dilution of Carter's rights and no right to a reduction in the exercise price under the Carter Warrant.

## CONCLUSION

Therefore, for all the reasons set forth above and in the moving papers, it is respectfully requested that MWC's motion to dismiss the complaint be granted in all respects.

Dated: New York, New York
       February 6, 2008

---

[4] The Carter Memo alleges that Vision "did…acquire shares at $0.01 per share" (Carter Memo at 15) but there is no such allegation in the complaint. A plaintiff cannot amend its complaint through a legal memorandum, Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998), Goplen v. 51Job, Inc., 453 F.Supp.2d 759, 764 n. 4 (S.D.N.Y. 2006), and therefore this assertion in the Carter Memo must be disregarded.

FERBER CHAN ESSNER & COLLER, LLP

By: /s/ Robert M. Kaplan
    Robert M. Kaplan (RK1428)
Attorneys for Defendant
530 Fifth Avenue
New York, New York 10036-5101
(212) 944-2200