UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
CARTER SECURITIES, LLC,                 :
                                :
             Plaintiff,        :
                                :        07 Civ. 10671 (BSJ)
     -against-                :
                                :
MARKETING WORLDWIDE CORPORATION,  :
                                :
            Defendant.      :
-------------------------------------------------------------------x

**REPLY DECLARATION IN FURTHER SUPPORT OF DEFENDANT'S
MOTION TO DISMISS THE COMPLAINT**

       ROBERT M. KAPLAN, under penalty of perjury, declares as follows:

       1.     I am an attorney at law, admitted to practice before this Court and a member of Ferber Chan Essner & Coller, LLP, attorneys for defendant.  I have personal knowledge of the facts set forth below.

       2.     I submit this reply declaration in further support of defendant's motion to dismiss the complaint and to set forth copies of certain documents referenced in the complaint and plaintiff's opposition to defendant's motion.

       3.     Attached as Exhibit A is a copy of the Series A warrant issued pursuant to the stock purchase agreement dated as of April 23, 2007 between defendant and Vision Opportunity Master Fund, Ltd. ("Vision").

       4.     Attached as Exhibit B is a copy of the Series B warrant issued pursuant to the stock purchase agreement dated as of April 23, 2007 between defendant and Vision.

73232

5.    Attached as Exhibit C is a copy of the Series C warrant issued pursuant to the stock purchase agreement dated as of April 23, 2007 between defendant and Vision.

6.    Therefore, for all the reasons set forth in defendant's moving and reply papers, it is respectfully requested that defendant's motion be granted in all respects and that the complaint be dismissed.

Dated:  New York, New York
        February 6, 2008

                                        /s/Robert M. Kaplan__
                                        ROBERT M. KAPLAN

```
<DOCUMENT>
<TYPE>EX-4.5
<SEQUENCE>3
<FILENAME>mww_8k-ex0405.txt
<DESCRIPTION>SERIES A COMMON STOCK PURCHASE WARRANT
<TEXT>
<PAGE>
```

Exhibit 4.5


THIS WARRANT AND THE SHARES OF COMMON STOCK ISSUABLE UPON EXERCISE HEREOF HAVE
NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE
"SECURITIES ACT") OR ANY STATE SECURITIES LAWS AND MAY NOT BE SOLD, TRANSFERRED
OR OTHERWISE DISPOSED OF UNLESS REGISTERED UNDER THE SECURITIES ACT AND UNDER
APPLICABLE STATE SECURITIES LAWS OR THE ISSUER SHALL HAVE RECEIVED AN OPINION OF
COUNSEL REASONABLY SATISFACTORY TO THE ISSUER THAT REGISTRATION OF SUCH
SECURITIES UNDER THE SECURITIES ACT AND UNDER THE PROVISIONS OF APPLICABLE STATE
SECURITIES LAWS IS NOT REQUIRED.

SERIES A WARRANT TO PURCHASE

SHARES OF COMMON STOCK

OF

MARKETING WORLDWIDE CORPORATION

Expires April 23, 2012

No.: W-A-07-01                                    Number of Shares: 3,500,000
Date of Issuance: April 23, 2007


        FOR VALUE RECEIVED, the undersigned, Marketing Worldwide Corporation, a
Delaware corporation (together with its successors and assigns, the "ISSUER"),
hereby certifies that Vision Opportunity Master Fund, Ltd. or its registered
assigns is entitled to subscribe for and purchase, during the Term (as
hereinafter defined), up to 3,500,000 shares (subject to adjustment as
hereinafter provided) of the duly authorized, validly issued, fully paid and
non-assessable Common Stock of the Issuer, at an exercise price per share equal
to the Warrant Price then in effect, subject, however, to the provisions and
upon the terms and conditions hereinafter set forth. Capitalized terms used in
this Warrant and not otherwise defined herein shall have the respective meanings
specified in SECTION 9 hereof.

        1.    TERM. The term of this Warrant shall commence on April 23, 2007 and
shall expire at 6:00 p.m., Eastern Time, on April 23, 2012 (such period being
the "TERM").

        2.    METHOD OF EXERCISE; PAYMENT; ISSUANCE OF NEW WARRANT; TRANSFER AND
EXCHANGE.

        (a)    TIME OF EXERCISE. The purchase rights represented by this Warrant
may be exercised in whole or in part during the Term.

        (b)    METHOD OF EXERCISE. The Holder hereof may exercise this Warrant, in
whole or in part, by the surrender of this Warrant (with the exercise form
attached hereto duly executed) at the principal office of the Issuer, and by the
payment to the Issuer of an amount of consideration therefor equal to the

Warrant Price in effect on the date of such exercise multiplied by the number of shares of Warrant Stock with respect to which this Warrant is then being exercised, payable at such Holder's election (i) by certified or official bank check or by wire transfer to an account designated by the Issuer, (ii) by "cashless exercise" in accordance with the provisions of SUBSECTION (C) of this SECTION 2, but only when a registration statement under the Securities Act providing for the resale of the Warrant Stock is not then in effect, or (iii) by a combination of the foregoing methods of payment selected by the Holder of this Warrant.

<div align="center">1</div>

<PAGE>

(c)    CASHLESS EXERCISE. Notwithstanding any provisions herein to the contrary and commencing one (1) year following the Original Issue Date if (i) the Per Share Market Value of one share of Common Stock is greater than the Warrant Price (at the date of calculation as set forth below) and (ii) a registration statement under the Securities Act providing for the resale of the Warrant Stock is not then in effect by the date such registration statement is required to be effective pursuant to the Registration Rights Agreement (as defined in the Purchase Agreement) or not effective at any time during the Effectiveness Period (as defined in the Registration Rights Agreement) in accordance with the terms of the Registration Rights Agreement, unless the registration statement is not effective as a result of the Issuer exercising its rights under SECTION 3(N) of the Registration Rights Agreement, in lieu of exercising this Warrant by payment of cash, the Holder may exercise this Warrant by a cashless exercise and shall receive the number of shares of Common Stock equal to an amount (as determined below) by surrender of this Warrant at the principal office of the Issuer together with the properly endorsed Notice of Exercise in which event the Issuer shall issue to the Holder a number of shares of Common Stock computed using the following formula:

$$X = Y - \frac{(A)(Y)}{B}$$

Where    X =    the number of shares of Common Stock to be issued to the Holder.

Y =    the number of shares of Common Stock purchasable upon exercise of all of the Warrant or, if only a portion of the Warrant is being exercised, the portion of the Warrant being exercised.

A =    the Warrant Price.

B =    the Per Share Market Value of one share of Common Stock.

(d)    ISSUANCE OF STOCK CERTIFICATES. In the event of any exercise of this Warrant in accordance with and subject to the terms and conditions hereof, certificates for the shares of Warrant Stock so purchased shall be dated the date of such exercise and delivered to the Holder hereof within a reasonable time, not exceeding three (3) Trading Days after such exercise (the "DELIVERY DATE") or, at the request of the Holder (provided that a registration statement under the Securities Act providing for the resale of the Warrant Stock is then in effect), issued and delivered to the Depository Trust Company ("DTC") account on the Holder's behalf via the Deposit Withdrawal Agent Commission System ("DWAC") within a reasonable time, not exceeding three (3) Trading Days after such exercise, and the Holder hereof shall be deemed for all purposes to be the holder of the shares of Warrant Stock so purchased as of the date of such exercise. Notwithstanding the foregoing to the contrary, the Issuer or its

transfer agent shall only be obligated to issue and deliver the shares to the DTC on a holder's behalf via DWAC if such exercise is in connection with a sale and the Issuer and its transfer agent are participating in DTC through the DWAC system. The Holder shall deliver this original Warrant, or an indemnification undertaking with respect to such Warrant in the case of its loss, theft or destruction, at such time that this Warrant is fully exercised. With respect to partial exercises of this Warrant, the Issuer shall keep written records for the Holder of the number of shares of Warrant Stock exercised as of each date of exercise.

<div align="center">2</div>

<PAGE>

(e)   COMPENSATION FOR BUY-IN ON FAILURE TO TIMELY DELIVER CERTIFICATES UPON EXERCISE. In addition to any other rights available to the Holder, if the Issuer fails to cause its transfer agent to transmit to the Holder a certificate or certificates representing the Warrant Stock pursuant to an exercise on or before the Delivery Date, and if after such date the Holder is required by its broker to purchase (in an open market transaction or otherwise) shares of Common Stock to deliver in satisfaction of a sale by the Holder of the Warrant Stock which the Holder anticipated receiving upon such exercise (a "Buy-In"), then the Issuer shall (1) pay in cash to the Holder the amount by which (x) the Holder's total purchase price (including brokerage commissions, if any) for the shares of Common Stock so purchased exceeds (y) the amount obtained by multiplying (A) the number of shares of Warrant Stock that the Issuer was required to deliver to the Holder in connection with the exercise at issue TIMES (B) the price at which the sell order giving rise to such purchase obligation was executed, and (2) at the option of the Holder, either reinstate the portion of the Warrant and equivalent number of shares of Warrant Stock for which such exercise was not honored or deliver to the Holder the number of shares of Common Stock that would have been issued had the Issuer timely complied with its exercise and delivery obligations hereunder. For example, if the Holder purchases Common Stock having a total purchase price of $11,000 to cover a Buy-In with respect to an attempted exercise of shares of Common Stock with an aggregate sale price giving rise to such purchase obligation of $10,000, under clause (1) of the immediately preceding sentence the Issuer shall be required to pay the Holder $1,000. The Holder shall provide the Issuer written notice indicating the amounts payable to the Holder in respect of the Buy-In, together with applicable confirmations and other evidence reasonably requested by the Issuer. Nothing herein shall limit a Holder's right to pursue any other remedies available to it hereunder, at law or in equity including, without limitation, a decree of specific performance and/or injunctive relief with respect to the Issuer's failure to timely deliver certificates representing shares of Common Stock upon exercise of this Warrant as required pursuant to the terms hereof.

(f)   TRANSFERABILITY OF WARRANT. Subject to SECTION 2(H) hereof, this Warrant may be transferred by a Holder, in whole or in part, without the consent of the Issuer. If transferred pursuant to this paragraph, this Warrant may be transferred on the books of the Issuer by the Holder hereof in person or by duly authorized attorney, upon surrender of this Warrant at the principal office of the Issuer, properly endorsed (by the Holder executing an assignment in the form attached hereto) and upon payment of any necessary transfer tax or other governmental charge imposed upon such transfer. This Warrant is exchangeable at the principal office of the Issuer for Warrants to purchase the same aggregate number of shares of Warrant Stock, each new Warrant to represent the right to purchase such number of shares of Warrant Stock as the Holder hereof shall designate at the time of such exchange. All Warrants issued on transfers or exchanges shall be dated the Original Issue Date and shall be identical with this Warrant except as to the number of shares of Warrant Stock issuable pursuant thereto.

(g)    CONTINUING RIGHTS OF HOLDER. The Issuer will, at the time of or at any time after each exercise of this Warrant, upon the request of the Holder hereof, acknowledge in writing the extent, if any, of its continuing obligation to afford to such Holder all rights to which such Holder shall continue to be entitled after such exercise in accordance with the terms of this Warrant; PROVIDED that if any such Holder shall fail to make any such request, the failure shall not affect the continuing obligation of the Issuer to afford such rights to such Holder.

<div align="center">3</div>

<PAGE>

(h)    COMPLIANCE WITH SECURITIES LAWS.

(i)    The Holder of this Warrant, by acceptance hereof, acknowledges that this Warrant and the shares of Warrant Stock to be issued upon exercise hereof are being acquired solely for the Holder's own account and not as a nominee for any other party, and for investment, and that the Holder will not offer, sell or otherwise dispose of this Warrant or any shares of Warrant Stock to be issued upon exercise hereof except pursuant to an effective registration statement, or an exemption from registration, under the Securities Act and any applicable state securities laws.

(ii)    Except as provided in paragraph (iii) below, this Warrant and all certificates representing shares of Warrant Stock issued upon exercise hereof shall be stamped or imprinted with a legend in substantially the following form:

THIS WARRANT AND THE SHARES OF COMMON STOCK ISSUABLE UPON EXERCISE HEREOF HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT") OR ANY STATE SECURITIES LAWS AND MAY NOT BE SOLD, TRANSFERRED OR OTHERWISE DISPOSED OF UNLESS REGISTERED UNDER THE SECURITIES ACT AND UNDER APPLICABLE STATE SECURITIES LAWS OR THE ISSUER SHALL HAVE RECEIVED AN OPINION OF COUNSEL REASONABLY SATISFACTORY TO THE ISSUER THAT REGISTRATION OF SUCH SECURITIES UNDER THE SECURITIES ACT AND UNDER THE PROVISIONS OF APPLICABLE STATE SECURITIES LAWS IS NOT REQUIRED.

(iii) The Issuer agrees to reissue this Warrant or certificates representing any of the Warrant Stock, without the legend set forth above if at such time, prior to making any transfer of any such securities, the Holder shall give written notice to the Issuer describing the manner and terms of such transfer. Such proposed transfer will not be effected until: (a) either (i) the Issuer has received an opinion of counsel reasonably satisfactory to the Issuer, to the effect that the registration of such securities under the Securities Act is not required in connection with such proposed transfer, (ii) a registration statement under the Securities Act covering such proposed disposition has been filed by the Issuer with the Securities and Exchange Commission and has become effective under the Securities Act, (iii) the Issuer has received other evidence reasonably satisfactory to the Issuer that such registration and qualification under the Securities Act and state securities laws are not required, or (iv) the Holder provides the Issuer with reasonable assurances that such security can be sold pursuant to Rule 144 under the Securities Act; and (b) either (i) the Issuer has received an opinion of counsel reasonably satisfactory to the Issuer, to the effect that registration or qualification under the securities or "blue sky" laws of any state is not required in connection

with such proposed disposition, or (ii) compliance with applicable state
securities or "blue sky" laws has been effected or a valid exemption
exists with respect thereto. The Issuer will respond to any such notice
from a holder within three (3) Trading Days. In the case of any proposed
transfer under this SECTION 2(H), the Issuer will use reasonable efforts
to comply with any such applicable state securities or "blue sky" laws,
but shall in no event be required, (x) to qualify to do business in any
state where it is not then qualified, (y) to take any action that would
subject it to tax or to the general service of process in any state where
it is not then subject, or (z) to comply with state securities or "blue
sky" laws of any state for which registration by coordination is

<div align="center">4</div>

&lt;PAGE&gt;

unavailable to the Issuer. The restrictions on transfer contained in this
SECTION 2(H) shall be in addition to, and not by way of limitation of, any
other restrictions on transfer contained in any other section of this
Warrant. Whenever a certificate representing the Warrant Stock is required
to be issued to a Holder without a legend, in lieu of delivering
physical certificates representing the Warrant Stock, the Issuer shall
cause its transfer agent to electronically transmit the Warrant Stock to
the Holder by crediting the account of the Holder's Prime Broker with DTC
through its DWAC system (to the extent not inconsistent with any
provisions of this Warrant or the Purchase Agreement).

    (i)    ACCREDITED INVESTOR STATUS. In no event may the Holder exercise this
Warrant in whole or in part unless the Holder is an "accredited investor" as
defined in Regulation D under the Securities Act.

    3.    STOCK FULLY PAID; RESERVATION AND LISTING OF SHARES; COVENANTS.

    (a)    STOCK FULLY PAID. The Issuer represents, warrants, covenants and
agrees that all shares of Warrant Stock which may be issued upon the exercise of
this Warrant or otherwise hereunder will, when issued in accordance with the
terms of this Warrant, be duly authorized, validly issued, fully paid and
non-assessable and free from all taxes, liens and charges. The Issuer further
covenants and agrees that during the period within which this Warrant may be
exercised, the Issuer will at all times have authorized and reserved for the
purpose of the issuance upon exercise of this Warrant a number of authorized but
unissued shares of Common Stock equal to at least one hundred percent (100%) of
the number of shares of Common Stock issuable upon exercise of this Warrant
without regard to any limitations on exercise.

    (b)    RESERVATION. If any shares of Common Stock required to be reserved
for issuance upon exercise of this Warrant or as otherwise provided hereunder
require registration or qualification with any Governmental Authority under any
federal or state law before such shares may be so issued, the Issuer will in
good faith use its best efforts as expeditiously as possible at its expense to
cause such shares to be duly registered or qualified. If the Issuer shall list
any shares of Common Stock on any securities exchange or market it will, at its
expense, list thereon, and maintain and increase when necessary such listing,
of, all shares of Warrant Stock from time to time issued upon exercise of this
Warrant or as otherwise provided hereunder (PROVIDED that such Warrant Stock has
been registered pursuant to a registration statement under the Securities Act
then in effect), and, to the extent permissible under the applicable securities
exchange rules, all unissued shares of Warrant Stock which are at any time
issuable hereunder, so long as any shares of Common Stock shall be so listed.
The Issuer will also so list on each securities exchange or market, and will
maintain such listing of, any other securities which the Holder of this Warrant

shall be entitled to receive upon the exercise of this Warrant if at the time
any securities of the same class shall be listed on such securities exchange or
market by the Issuer.

(c)    COVENANTS. The Issuer shall not by any action including, without
limitation, amending the Certificate of Incorporation or the by-laws of the
Issuer, or through any reorganization, transfer of assets, consolidation,
merger, dissolution, issue or sale of securities or any other action, avoid or
seek to avoid the observance or performance of any of the terms of this Warrant,
but will at all times in good faith assist in the carrying out of all such terms
and in the taking of all such actions as may be necessary or appropriate to
protect the rights of the Holder hereof against dilution (to the extent
specifically provided herein) or impairment. Without limiting the generality of
the foregoing, the Issuer will (i) not permit the par value, if any, of its
Common Stock to exceed the then effective Warrant Price, (ii) not amend or
modify any provision of the Certificate of Incorporation or by-laws of the

<center>5</center>

<PAGE>

Issuer in any manner that would adversely affect the rights of the Holders of
the Warrants, (iii) take all such action as may be reasonably necessary in order
that the Issuer may validly and legally issue fully paid and nonassessable
shares of Common Stock, free and clear of any liens, claims, encumbrances and
restrictions (other than as provided herein) upon the exercise of this Warrant,
and (iv) use its best efforts to obtain all such authorizations, exemptions or
consents from any public regulatory body having jurisdiction thereof as may be
reasonably necessary to enable the Issuer to perform its obligations under this
Warrant.

(d)    LOSS, THEFT, DESTRUCTION, MUTILATION OF WARRANTS. Upon receipt of
evidence satisfactory to the Issuer of the ownership of and the loss, theft,
destruction or mutilation of any Warrant and, in the case of any such loss,
theft or destruction, upon receipt of indemnity or security satisfactory to the
Issuer or, in the case of any such mutilation, upon surrender and cancellation
of such Warrant, the Issuer will make and deliver, in lieu of such lost, stolen,
destroyed or mutilated Warrant, a new Warrant of like tenor and representing the
right to purchase the same number of shares of Common Stock.

(e)    PAYMENT OF TAXES. The Issuer will pay any documentary stamp taxes
attributable to the initial issuance of the Warrant Stock issuable upon exercise
of this Warrant; PROVIDED, HOWEVER, that the Issuer shall not be required to pay
any tax or taxes which may be payable in respect of any transfer involved in the
issuance or delivery of any certificates representing Warrant Stock in a name
other than that of the Holder in respect to which such shares are issued.

4.    ADJUSTMENT OF WARRANT PRICE AND NUMBER OF SHARES ISSUABLE UPON
EXERCISE. The Warrant Price and the number of shares of Warrant Stock that may
be purchased upon exercise of this Warrant shall be subject to adjustment from
time to time as set forth in this SECTION 4. The Issuer shall give the Holder
notice of any event described below which requires an adjustment pursuant to
this SECTION 4 in accordance with the notice provisions set forth in SECTION 5.

(a)    RECAPITALIZATION, REORGANIZATION, RECLASSIFICATION, CONSOLIDATION,
MERGER OR SALE.

(i)    In case the Issuer after the Original Issue Date shall do any
of the following (each, a "TRIGGERING EVENT"): (a) consolidate or merge
with or into any other Person and the Issuer shall not be the continuing
or surviving Person of such consolidation or merger, or (b) permit any

other Person to consolidate with or merge into the Issuer and the Issuer shall be the continuing or surviving Person but, in connection with such consolidation or merger, any Capital Stock of the Issuer shall be changed into or exchanged for Securities of any other Person or cash or any other property, or (c) transfer all or substantially all of its properties or assets to any other Person, or (d) effect a capital reorganization or reclassification of its Capital Stock, then, and in the case of each such Triggering Event, proper provision shall be made to the Warrant Price and the number of shares of Warrant Stock that may be purchased upon exercise of this Warrant so that, upon the basis and the terms and in the manner provided in this Warrant, the Holder of this Warrant shall be entitled upon the exercise hereof at any time after the consummation of such Triggering Event, to the extent this Warrant is not exercised prior to such Triggering Event, to receive at the Warrant Price as adjusted to take into account the consummation of such Triggering Event, in lieu of the Common Stock issuable upon such exercise of this Warrant prior to such Triggering Event, the Securities, cash and property to which such Holder would have been entitled upon the consummation of such Triggering Event if such Holder had exercised the rights represented by this Warrant

6

<PAGE>

immediately prior thereto (including the right of a shareholder to elect the type of consideration it will receive upon a Triggering Event), subject to adjustments (subsequent to such corporate action) as nearly equivalent as possible to the adjustments provided for elsewhere in this SECTION 4, and the Warrant Price shall be adjusted to equal the product of (A) the closing price of the common stock of the continuing or surviving Person as a result of such Triggering Event as of the date immediately preceding the date of the consummation of such Triggering Event multiplied by (B) the quotient of (i) the Warrant Price divided by (ii) the Per Share Market Value of the Common Stock as of the date immediately preceding the Original Issue Date; PROVIDED, HOWEVER, the Holder at its option may elect to receive an amount in cash equal to the value of this Warrant calculated in accordance with the Black-Scholes formula. Immediately upon the occurrence of a Triggering Event, the Issuer shall notify the Holder in writing of such Triggering Event and provide the calculations in determining the number of shares of Warrant Stock issuable upon exercise of the new warrant and the adjusted Warrant Price. Upon the Holder's request, the continuing or surviving Person as a result of such Triggering Event shall issue to the Holder a new warrant of like tenor evidencing the right to purchase the adjusted number of shares of Warrant Stock and the adjusted Warrant Price pursuant to the terms and provisions of this SECTION 4(A)(I). Notwithstanding the foregoing to the contrary, this SECTION 4(A)(I) shall only apply if the surviving entity pursuant to any such Triggering Event has a class of equity securities registered pursuant to the Securities Exchange Act of 1934, as amended, and its common stock is listed or quoted on a national securities exchange, national automated quotation system or the OTC Bulletin Board. In the event that the surviving entity pursuant to any such Triggering Event is not a public company (or similar Person) that is registered pursuant to the Securities Exchange Act of 1934, as amended, or its common stock is not listed or quoted on a national securities exchange, national automated quotation system or the OTC Bulletin Board, then the Holder shall have the right to demand that the Issuer pay to the Holder an amount in cash equal to the value of this Warrant calculated in accordance with the Black-Scholes formula.

        (ii)    In the event that the Holder has elected not to exercise this

Warrant prior to the consummation of a Triggering Event and has also
elected not to receive an amount in cash equal to the value of this
Warrant calculated in accordance with the Black-Scholes formula pursuant
to the provisions of SECTION 4(A)(I) above, so long as the surviving
entity pursuant to any Triggering Event is a company that has a class of
equity securities registered pursuant to the Securities Exchange Act of
1934, as amended, and its common stock is listed or quoted on a national
securities exchange, national automated quotation system or the OTC
Bulletin Board, the surviving entity and/or each Person (other than the
Issuer) which may be required to deliver any Securities, cash or property
upon the exercise of this Warrant as provided herein shall assume, by
written instrument delivered to, and reasonably satisfactory to, the
Holder of this Warrant, (A) the obligations of the Issuer under this
Warrant (and if the Issuer shall survive the consummation of such
Triggering Event, such assumption shall be in addition to, and shall not
release the Issuer from, any continuing obligations of the Issuer under
this Warrant) and (B) the obligation to deliver to such Holder such
Securities, cash or property as, in accordance with the foregoing
provisions of this SUBSECTION (A), such Holder shall be entitled to
receive, and the surviving entity and/or each such Person shall have
similarly delivered to such Holder an opinion of counsel for the surviving
entity and/or each such Person, which counsel shall be reasonably
satisfactory to such Holder, or in the alternative, a written
acknowledgement executed by the President or Chief Financial Officer of
the Issuer, stating that this Warrant shall thereafter continue in full
force and effect and the terms hereof (including, without limitation, all
of the provisions of this SUBSECTION (A)) shall be applicable to the
Securities, cash or property which the surviving entity and/or each such
Person may be required to deliver upon any exercise of this Warrant or the
exercise of any rights pursuant hereto.

7

<PAGE>

(b)   STOCK DIVIDENDS, SUBDIVISIONS AND COMBINATIONS. If at any time the
Issuer shall:

     (i)   make or issue or set a record date for the holders of the
Common Stock for the purpose of entitling them to receive a dividend
payable in, or other distribution of, shares of Common Stock,

     (ii)  subdivide its outstanding shares of Common Stock into a larger
number of shares of Common Stock, or

     (iii) combine its outstanding shares of Common Stock into a smaller
number of shares of Common Stock,

then (1) the number of shares of Common Stock for which this Warrant is
exercisable immediately after the occurrence of any such event shall be adjusted
to equal the number of shares of Common Stock which a record holder of the same
number of shares of Common Stock for which this Warrant is exercisable
immediately prior to the occurrence of such event would own or be entitled to
receive after the happening of such event, and (2) the Warrant Price then in
effect shall be adjusted to equal (A) the Warrant Price then in effect
multiplied by the number of shares of Common Stock for which this Warrant is
exercisable immediately prior to the adjustment divided by (B) the number of
shares of Common Stock for which this Warrant is exercisable immediately after
such adjustment.

     (c)   CERTAIN OTHER DISTRIBUTIONS. If at any time the Issuer shall make or

issue or set a record date for the holders of the Common Stock for the purpose of entitling them to receive any dividend or other distribution of:

(i)    cash (other than a cash dividend payable out of earnings or earned surplus legally available for the payment of dividends under the laws of the jurisdiction of incorporation of the Issuer),

(ii)   any evidences of its indebtedness, any shares of stock of any class or any other securities or property of any nature whatsoever (other than cash, Common Stock Equivalents or Additional Shares of Common Stock), or

(iii)  any warrants or other rights to subscribe for or purchase any evidences of its indebtedness, any shares of stock of any class or any other securities or property of any nature whatsoever (other than cash, Common Stock Equivalents or Additional Shares of Common Stock), then (1) the number of shares of Common Stock for which this Warrant is exercisable shall be adjusted to equal the product of the number of shares of Common Stock for which this Warrant is exercisable immediately prior to such adjustment multiplied by a fraction (A) the numerator of which shall be the Per Share Market Value of Common Stock at the date of taking such record and (B) the denominator of which shall be such Per Share Market Value minus the amount allocable to one share of Common Stock of any such cash so distributable and of the fair value (as determined in good faith by the Board of Directors of the Issuer and supported by an opinion from

8

<PAGE>

an investment banking firm mutually agreed upon by the Issuer and the Holder) of any and all such evidences of indebtedness, shares of stock, other securities or property or warrants or other subscription or purchase rights so distributable, and (2) the Warrant Price then in effect shall be adjusted to equal (A) the Warrant Price then in effect multiplied by the number of shares of Common Stock for which this Warrant is exercisable immediately prior to the adjustment divided by (B) the number of shares of Common Stock for which this Warrant is exercisable immediately after such adjustment. A reclassification of the Common Stock (other than a change in par value, or from par value to no par value or from no par value to par value) into shares of Common Stock and shares of any other class of stock shall be deemed a distribution by the Issuer to the holders of its Common Stock of such shares of such other class of stock within the meaning of this SECTION 4(C) and, if the outstanding shares of Common Stock shall be changed into a larger or smaller number of shares of Common Stock as a part of such reclassification, such change shall be deemed a subdivision or combination, as the case may be, of the outstanding shares of Common Stock within the meaning of SECTION 4(B).

(d)    ISSUANCE OF ADDITIONAL SHARES OF COMMON STOCK. In the event the Issuer shall at any time within two (2) years following the Original Issuance Date (the "FULL RATCHET PERIOD") issue any Additional Shares of Common Stock (otherwise than as provided in the foregoing SUBSECTIONS (B) through (c) of this SECTION 4), at a price per share less than the Warrant Price then in effect or without consideration, then the Warrant Price upon each such issuance shall be adjusted to the price equal to the consideration per share paid for such Additional Shares of Common Stock.

(e)    ISSUANCE OF COMMON STOCK EQUIVALENTS. In the event the Issuer shall at any time within the Full Ratchet Period take a record of the holders of its Common Stock for the purpose of entitling them to receive a distribution of, or

shall in any manner (whether directly or by assumption in a merger in which the Issuer is the surviving Person) issue or sell, any Common Stock Equivalents, whether or not the rights to exchange or convert thereunder are immediately exercisable, and the price per share for which Common Stock is issuable upon such conversion or exchange shall be less than the Warrant Price in effect immediately prior to the time of such issue or sale, or if, after any such issuance of Common Stock Equivalents, the price per share for which Additional Shares of Common Stock may be issuable thereafter is amended or adjusted, and such price as so amended shall be less than the Warrant Price in effect at the time of such amendment or adjustment, then the Warrant Price then in effect shall be adjusted as provided in SECTION 4(D). No further adjustments of the number of shares of Common Stock for which this Warrant is exercisable and the Warrant Price then in effect shall be made upon the actual issue of such Common Stock upon conversion or exchange of such Common Stock Equivalents.

(f)    SUBSEQUENT COMMON STOCK AND COMMON STOCK EQUIVALENTS ISSUES. In the event the Company, shall, at any time after the Full Ratchet Period, issue or sell any Additional Shares of Common Stock or Common Stock Equivalents (otherwise than as provided in the foregoing SUBSECTIONS (A) THROUGH (E) OF THIS SECTION 4), at a price per share less than the Warrant Price, or without consideration, the Warrant Price then in effect upon each such issuance shall be adjusted to that price (rounded to the nearest cent) determined by multiplying the Warrant Price by a fraction: (1) the numerator of which shall be equal to the SUM of (A) the number of shares of Common Stock outstanding immediately prior to the issuance of such Additional Shares of Common Stock PLUS (B) the number of shares of Common Stock (rounded to the nearest whole share) which the aggregate consideration for the total number of such Additional Shares of Common Stock so issued would purchase at a price per share equal to the then Warrant Price; and (2) the denominator of which shall be equal to the number of shares of Common Stock outstanding immediately after the issuance of such Additional

9

<PAGE>

Shares of Common Stock. No adjustment of the number of shares of Common Stock shall be made upon the issuance of any Additional Shares of Common Stock which are issued pursuant to the exercise of any warrants or other subscription or purchase rights or pursuant to the exercise of any conversion or exchange rights in any Common Stock Equivalents if any such adjustment shall previously have been made upon the issuance of such warrants or other rights or upon the issuance of such Common Stock Equivalents (or upon the issuance of any warrant or other rights therefore).

(g)    OTHER PROVISIONS APPLICABLE TO ADJUSTMENTS UNDER THIS SECTION. The following provisions shall be applicable to the making of adjustments of the number of shares of Common Stock for which this Warrant is exercisable and the Warrant Price then in effect provided for in this SECTION 4:

(i)    COMPUTATION OF CONSIDERATION. To the extent that any Additional Shares of Common Stock or any Common Stock Equivalents (or any warrants or other rights therefor) shall be issued for cash consideration, the consideration received by the Issuer therefor shall be the amount of the cash received by the Issuer therefor, or, if such Additional Shares of Common Stock or Common Stock Equivalents are offered by the Issuer for subscription, the subscription price, or, if such Additional Shares of Common Stock or Common Stock Equivalents are sold to underwriters or dealers for public offering without a subscription offering, the initial public offering price (in any such case subtracting any amounts paid or receivable for accrued interest or accrued dividends and without taking into account any compensation, discounts or expenses paid or incurred by

the Issuer for and in the underwriting of, or otherwise in connection
with, the issuance thereof). In connection with any merger or
consolidation in which the Issuer is the surviving Person (other than any
consolidation or merger in which the previously outstanding shares of
Common Stock of the Issuer shall be changed to or exchanged for the stock
or other securities of another Person), the amount of consideration
therefore shall be, deemed to be the fair value, as determined reasonably
and in good faith by the Board, of such portion of the assets and business
of the nonsurviving Person as the Board may determine to be attributable
to such shares of Common Stock or Common Stock Equivalents, as the case
may be. The consideration for any Additional Shares of Common Stock
issuable pursuant to any warrants or other rights to subscribe for or
purchase the same shall be the consideration received by the Issuer for
issuing such warrants or other rights plus the additional consideration
payable to the Issuer upon exercise of such warrants or other rights. The
consideration for any Additional Shares of Common Stock issuable pursuant
to the terms of any Common Stock Equivalents shall be the consideration
received by the Issuer for issuing warrants or other rights to subscribe
for or purchase such Common Stock Equivalents, plus the consideration paid
or payable to the Issuer in respect of the subscription for or purchase of
such Common Stock Equivalents, plus the additional consideration, if any,
payable to the Issuer upon the exercise of the right of conversion or
exchange in such Common Stock Equivalents. In the event of any
consolidation or merger of the Issuer in which the Issuer is not the
surviving Person or in which the previously outstanding shares of Common
Stock of the Issuer shall be changed into or exchanged for the stock or
other securities of another Person, or in the event of any sale of all or
substantially all of the assets of the Issuer for stock or other
securities of any Person, the Issuer shall be deemed to have issued a
number of shares of its Common Stock for stock or securities or other
property of the other Person computed on the basis of the actual exchange
ratio on which the transaction was predicated, and for a consideration
equal to the fair market value on the date of such transaction of all such
stock or securities or other property of the other Person. In the event

                                      10

<PAGE>

any consideration received by the Issuer for any securities consists of
property other than cash, the fair market value thereof at the time of
issuance or as otherwise applicable shall be as determined in good faith
by the Board. In the event Common Stock is issued with other shares or
securities or other assets of the Issuer for consideration which covers
both, the consideration computed as provided in this SECTION 4(G)(I) shall
be allocated among such securities and assets as determined in good faith
by the Board.

        (ii)  WHEN ADJUSTMENTS TO BE MADE. The adjustments required by this
SECTION 4 shall be made whenever and as often as any specified event
requiring an adjustment shall occur, except that any adjustment of the
number of shares of Common Stock for which this Warrant is exercisable
that would otherwise be required may be postponed (except in the case of a
subdivision or combination of shares of the Common Stock, as provided for
in SECTION 4(B)) up to, but not beyond the date of exercise if such
adjustment either by itself or with other adjustments not previously made
adds or subtracts less than one percent (1%) of the shares of Common Stock
for which this Warrant is exercisable immediately prior to the making of
such adjustment. Any adjustment representing a change of less than such
minimum amount (except as aforesaid) which is postponed shall be carried
forward and made (x) as soon as such adjustment, together with other

adjustments required by this SECTION 4 and not previously made, would result in a minimum adjustment, or (y) on the date of exercise. For the purpose of any adjustment, any specified event shall be deemed to have occurred at the close of business on the date of its occurrence.

(iii) FRACTIONAL INTERESTS. In computing adjustments under this SECTION 4, fractional interests in Common Stock shall be taken into account to the nearest one one-hundredth (1/100th) of a share.

(iv) WHEN ADJUSTMENT NOT REQUIRED. If the Issuer shall take a record of the holders of its Common Stock for the purpose of entitling them to receive a dividend or distribution or subscription or purchase rights and shall, thereafter and before the distribution to stockholders thereof, legally abandon its plan to pay or deliver such dividend, distribution, subscription or purchase rights, then thereafter no adjustment shall be required by reason of the taking of such record and any such adjustment previously made in respect thereof shall be rescinded and annulled.

(h)    FORM OF WARRANT AFTER ADJUSTMENTS. The form of this Warrant need not be changed because of any adjustments in the Warrant Price or the number and kind of Securities purchasable upon the exercise of this Warrant.

(i)    ESCROW OF WARRANT STOCK. If after any property becomes distributable pursuant to this SECTION 4 by reason of the taking of any record of the holders of Common Stock, but prior to the occurrence of the event for which such record is taken, and the Holder exercises this Warrant, any shares of Common Stock issuable upon exercise by reason of such adjustment shall be deemed the last shares of Common Stock for which this Warrant is exercised (notwithstanding any other provision to the contrary herein) and such shares or other property shall be held in escrow for the Holder by the Issuer to be issued to the Holder upon and to the extent that the event actually takes place, upon payment of the current Warrant Price. Notwithstanding any other provision to the contrary herein, if the event for which such record was taken fails to occur or is rescinded, then such escrowed shares shall be cancelled by the Issuer and escrowed property returned.

11

<PAGE>

5.    NOTICE OF ADJUSTMENTS. Whenever the Warrant Price or Warrant Share Number shall be adjusted pursuant to SECTION 4 hereof (for purposes of this SECTION 5, each an "ADJUSTMENT"), the Issuer shall cause its Chief Financial Officer to prepare and execute a certificate setting forth, in reasonable detail, the event requiring the Adjustment, the amount of the Adjustment, the method by which such Adjustment was calculated (including a description of the basis on which the Board made any determination hereunder), and the Warrant Price and Warrant Share Number after giving effect to such Adjustment, and shall cause copies of such certificate to be delivered to the Holder of this Warrant promptly after each Adjustment. Any dispute between the Issuer and the Holder of this Warrant with respect to the matters set forth in such certificate may at the option of the Holder of this Warrant be submitted to an Independent Appraiser selected by the Holder; PROVIDED that the Issuer shall have ten (10) days after receipt of notice from such Holder of its selection of such Independent Appraiser to object thereto, in which case such Holder shall select another such Independent Appraiser and the Issuer shall have no such right of objection. The Independent Appraiser selected by the Holder of this Warrant as provided in the preceding sentence shall be instructed to deliver a written opinion as to such matters to the Issuer and such Holder within thirty (30) days after submission to it of such dispute. Such opinion shall be final and binding

on the parties hereto. The costs and expenses of the initial firm selected as Independent Appraiser shall be paid equally by the Issuer and the Holder and, in the case of an objection by the Issuer, the costs and expenses of the subsequent firm selected as Independent Appraiser shall be paid in full by the Issuer.

6.    FRACTIONAL SHARES. No fractional shares of Warrant Stock will be issued in connection with any exercise hereof, but in lieu of such fractional shares, the Issuer shall round the number of shares to be issued upon exercise up to the nearest whole number of shares.

7.    OWNERSHIP CAP AND EXERCISE RESTRICTION. Notwithstanding anything to the contrary set forth in this Warrant, at no time may a Holder of this Warrant exercise this Warrant if the number of shares of Common Stock to be issued pursuant to such exercise would exceed, when aggregated with all other shares of Common Stock owned by such Holder at such time, the number of shares of Common Stock which would result in such Holder beneficially owning (as determined in accordance with Section 13(d) of the Exchange Act and the rules thereunder) in excess of 9.99% of the then issued and outstanding shares of Common Stock; PROVIDED, HOWEVER, that upon a holder of this Warrant providing the Issuer with sixty-one (61) days notice (pursuant to SECTION 13 hereof) (the "WAIVER NOTICE") that such Holder would like to waive this SECTION 7 with regard to any or all shares of Common Stock issuable upon exercise of this Warrant, this SECTION 7 will be of no force or effect with regard to all or a portion of the Warrant referenced in the Waiver Notice; PROVIDED, FURTHER, that this provision shall be of no further force or effect during the sixty-one (61) days immediately preceding the expiration of the term of this Warrant.

8.    ISSUER'S REDEMPTION OPTION. If (A) the Per Share Market Value of the Common Stock for any ten (10) consecutive Trading Days equals or exceeds $2.50 per share (as may be adjusted for any stock splits or combinations of the Common Stock) and (B) the trading volume of the Common Stock for each Trading Day of such ten (10) Trading Day period equals or exceeds 20,000 shares of Common Stock, the Issuer may, at any time thereafter upon ten (10) Trading Days prior written notice (the "ISSUER REDEMPTION NOTICE") to the Holder, redeem the unexercised portion of this Warrant in cash at a price equal to the number of shares of Warrant Stock with respect to the unexercised portion of this Warrant multiplied by $0.001 (the "ISSUER REDEMPTION PRICE"); PROVIDED, THAT, in connection with any redemption by the Issuer under this SECTION 8, (A) the registration statement (the "REGISTRATION STATEMENT") filed by the Issuer with the Securities and Exchange Commission providing for the resale of the Warrant Stock and the shares of Common Stock issued pursuant to the Purchase Agreement

12

<PAGE>

is then in effect and has been effective, without lapse or suspension of any kind, for a period of sixty (60) consecutive calendar days, (B) trading in the Common Stock shall not have been suspended by the Securities and Exchange Commission or the OTC Bulletin Board (or other exchange or market on which the Common Stock is trading), (C) the Issuer is in material compliance with the terms and conditions of this Warrant and the other Transaction Documents (as defined in the Purchase Agreement) and (D) the Issuer is not in possession of any material non-public information; PROVIDED, FURTHER, that the Registration Statement is in effect from the date of delivery of the Issuer Redemption Notice until the date which is the later of (1) the date the Holder exercises the Warrant pursuant to the Issuer Redemption Notice and (2) the twentieth (20th) Trading Day after the Holder receives the Issuer Redemption Notice (the "EARLY TERMINATION DATE"). The rights and privileges granted pursuant to this Warrant with respect to the shares of Warrant Stock subject to the Issuer Redemption Notice (the "REDEEMED WARRANT SHARES") shall expire on the Early Termination

Date if this Warrant is not exercised with respect to such Redeemed Warrant
Shares prior to such Early Termination Date. The Issuer's Redemption Notice
shall state the date of redemption which date shall be the twenty-first (21st)
Trading Day after the Issuer has delivered the Issuer's Redemption Notice (the
"ISSUER'S REDEMPTION Date"), the Issuer's Redemption Price and the number of
shares to be redeemed by the Issuer. The Issuer shall not send a Issuer's
Redemption Notice unless it has good and clear funds for a minimum of the amount
it intends to redeem in a bank account controlled by the Issuer. The Issuer
shall deliver the Issuer's Redemption Price to the Holder on the Issuer's
Redemption Date. Not later than five (5) days after receipt of the Issuer
Redemption Price, Holder shall return to the Issuer for cancellation the
original Warrant to be redeemed. If the Issuer fails to pay the Issuer's
Redemption Price by the Issuer's Redemption Date, the redemption will be
declared null and void. Notwithstanding anything in the foregoing to the
contrary, if the Holder may not exercise this Warrant as a result of the
restriction contained in SECTION 7 hereof, the Issuer Redemption Notice shall be
deemed null and void and shall not be deemed effective until the date that the
Holder may exercise this Warrant in accordance with SECTION 7 hereof.

     9.     DEFINITIONS. For the purposes of this Warrant, the following terms
have the following meanings:

          "ADDITIONAL SHARES OF COMMON STOCK" means all shares of Common Stock
     issued by the Issuer after the Original Issue Date, and all shares of
     Other Common, if any, issued by the Issuer after the Original Issue Date,
     except: (i) securities issued (other than for cash) in connection with a
     merger, acquisition, or consolidation that do not exceed 5% of the
     outstanding Common Stock of the Issuer as of the date of the Purchase
     Agreement (such percentage subject to adjustment in a manner consistent
     with the adjustments to the Warrant Price contemplated in SECTION 4
     hereof), (ii) securities issued pursuant to the conversion or exercise of
     convertible or exercisable securities issued or outstanding on or prior to
     the date of the Purchase Agreement or issued pursuant to the Purchase
     Agreement (so long as the conversion or exercise price in such securities
     are not amended to lower such price and/or adversely affect the Holders),
     (iii) the Warrant Stock, (iv) Common Stock issued or the issuance or
     grants of options to purchase Common Stock pursuant to the Company's stock
     option plans and employee stock purchase plans that either (x) exist on
     the date of the Purchase Agreement, or (y) do not exceed ten percent (10%)
     of the outstanding Common Stock of the Company as of the date of the
     Purchase Agreement, and (v) any warrants issued to the placement agent and
     its designees for the transactions contemplated by the Purchase Agreement.
     For the avoidance of doubt, notwithstanding clause (i) of this paragraph,
     in the event that the Company shall effect a merger or similar transaction
     permitted under SECTION 3.22(B)(I) of the Purchase Agreement, the amount
     of Common Stock issued in connection with such transaction that exceeds 5%
     of the outstanding Common Stock of the Company as of the Date of the
     Purchase Agreement shall nonetheless be subject to all of the provisions
     of SECTION 4 hereof.

                                   13

<PAGE>

          "BOARD" shall mean the Board of Directors of the Issuer.

          "CAPITAL STOCK" means and includes (i) any and all shares,
     interests, participations or other equivalents of or interests in (however
     designated) corporate stock, including, without limitation, shares of
     preferred or preference stock, (ii) all partnership interests (whether
     general or limited) in any Person which is a partnership, (iii) all

membership interests or limited liability company interests in any limited liability company, and (iv) all equity or ownership interests in any Person of any other type.

"CERTIFICATE OF INCORPORATION" means the Certificate of Incorporation of the Issuer as in effect on the Original Issue Date, and as hereafter from time to time amended, modified, supplemented or restated in accordance with the terms hereof and thereof and pursuant to applicable law.

"COMMON STOCK" means the Common Stock, $0.001 par value per share, of the Issuer and any other Capital Stock into which such stock may hereafter be changed.

"COMMON STOCK EQUIVALENT" means any Convertible Security or warrant, option or other right to subscribe for or purchase any Additional Shares of Common Stock or any Convertible Security.

"CONVERTIBLE SECURITIES" means evidences of Indebtedness, shares of Capital Stock or other Securities which are or may be at any time convertible into or exchangeable for Additional Shares of Common Stock. The term "CONVERTIBLE SECURITY" means one of the Convertible Securities.

"GOVERNMENTAL AUTHORITY" means any governmental, regulatory or self-regulatory entity, department, body, official, authority, commission, board, agency or instrumentality, whether federal, state or local, and whether domestic or foreign.

"HOLDERS" mean the Persons who shall from time to time own any Warrant. The term "Holder" means one of the Holders.

"INDEPENDENT APPRAISER" means a nationally recognized or major regional investment banking firm or firm of independent certified public accountants of recognized standing (which may be the firm that regularly examines the financial statements of the Issuer) that is regularly engaged in the business of appraising the Capital Stock or assets of corporations or other entities as going concerns, and which is not affiliated with either the Issuer or the Holder of any Warrant.

"ISSUER" means Marketing Worldwide Corporation, a Delaware corporation, and its successors.

"MAJORITY HOLDERS" means at any time the Holders of Warrants exercisable for a majority of the shares of Warrant Stock issuable under the Warrants at the time outstanding.

"ORIGINAL ISSUE DATE" means April 23, 2007.

14

<PAGE>

"OTC BULLETIN BOARD" means the over-the-counter electronic bulletin board.

"OTHER COMMON" means any other Capital Stock of the Issuer of any class which shall be authorized at any time after the date of this Warrant (other than Common Stock) and which shall have the right to participate in the distribution of earnings and assets of the Issuer without limitation as to amount.

"OUTSTANDING COMMON STOCK" means, at any given time, the aggregate amount of outstanding shares of Common Stock, assuming full exercise, conversion or exchange (as applicable) of all options, warrants and other Securities which are convertible into or exercisable or exchangeable for, and any right to subscribe for, shares of Common Stock that are outstanding at such time.

"PERSON" means an individual, corporation, limited liability company, partnership, joint stock company, trust, unincorporated organization, joint venture, Governmental Authority or other entity of whatever nature.

"PER SHARE MARKET VALUE" means on any particular date (a) the last closing bid price per share of the Common Stock on such date on the OTC Bulletin Board or another registered national stock exchange on which the Common Stock is then listed, or if there is no such price on such date, then the closing bid price on such exchange or quotation system on the date nearest preceding such date, or (b) if the Common Stock is not listed then on the OTC Bulletin Board or any registered national stock exchange, the last closing bid price for a share of Common Stock in the over-the-counter market, as reported by the OTC Bulletin Board or in the National Quotation Bureau Incorporated or similar organization or agency succeeding to its functions of reporting prices) at the close of business on such date, or (c) if the Common Stock is not then reported by the OTC Bulletin Board or the National Quotation Bureau Incorporated (or similar organization or agency succeeding to its functions of reporting prices), then the "Pink Sheet" quotes for the applicable Trading Days preceding such date of determination, or (d) if the Common Stock is not then publicly traded the fair market value of a share of Common Stock as determined by an Independent Appraiser selected in good faith by the Majority Holders; PROVIDED, HOWEVER, that the Issuer, after receipt of the determination by such Independent Appraiser, shall have the right to select an additional Independent Appraiser, in which case, the fair market value shall be equal to the average of the determinations by each such Independent Appraiser; and PROVIDED, FURTHER that all determinations of the Per Share Market Value shall be appropriately adjusted for any stock dividends, stock splits or other similar transactions during such period. The determination of fair market value by an Independent Appraiser shall be based upon the fair market value of the Issuer determined on a going concern basis as between a willing buyer and a willing seller and taking into account all relevant factors determinative of value, and shall be final and binding on all parties. In determining the fair market value of any shares of Common Stock, no consideration shall be given to any restrictions on transfer of the Common Stock imposed by agreement or by federal or state securities laws, or to the existence or absence of, or any limitations on, voting rights.

"PURCHASE AGREEMENT" means the Series A Convertible Preferred Stock Purchase Agreement dated as of April 23, 2007, among the Issuer and the Purchasers.

15

<PAGE>

"PURCHASERS" means the purchasers of the Series A Convertible Preferred Stock and the Warrants issued by the Issuer pursuant to the Purchase Agreement.

"SECURITIES" means any debt or equity securities of the Issuer, whether now or hereafter authorized, any instrument convertible into or

exchangeable for Securities or a Security, and any option, warrant or other right to purchase or acquire any Security. "Security" means one of the Securities.

"SECURITIES ACT" means the Securities Act of 1933, as amended, or any similar federal statute then in effect.

"SUBSIDIARY" means any corporation at least 50% of whose outstanding Voting Stock shall at the time be owned directly or indirectly by the Issuer or by one or more of its Subsidiaries, or by the Issuer and one or more of its Subsidiaries.

"TERM" has the meaning specified in SECTION 1 hereof.

"TRADING DAY" means (a) a day on which the Common Stock is traded on the OTC Bulletin Board, or (b) if the Common Stock is not traded on the OTC Bulletin Board, a day on which the Common Stock is quoted in the over-the-counter market as reported by the National Quotation Bureau Incorporated (or any similar organization or agency succeeding its functions of reporting prices); PROVIDED, HOWEVER, that in the event that the Common Stock is not listed or quoted as set forth in (a) or (b) hereof, then Trading Day shall mean any day except Saturday, Sunday and any day which shall be a legal holiday or a day on which banking institutions in the State of New York are authorized or required by law or other government action to close.

"VOTING STOCK" means, as applied to the Capital Stock of any corporation, Capital Stock of any class or classes (however designated) having ordinary voting power for the election of a majority of the members of the Board of Directors (or other governing body) of such corporation, other than Capital Stock having such power only by reason of the happening of a contingency.

"WARRANTS" means the Warrants issued and sold pursuant to the Purchase Agreement, including, without limitation, this Warrant, and any other warrants of like tenor issued in substitution or exchange for any thereof pursuant to the provisions of SECTION 2(C), 2(D) OR 2(E) hereof or of any of such other Warrants.

"WARRANT PRICE" initially means $0.70, as such price may be adjusted from time to time as shall result from the adjustments specified in this Warrant, including SECTION 4 hereto.

"WARRANT SHARE NUMBER" means at any time the aggregate number of shares of Warrant Stock which may at such time be purchased upon exercise of this Warrant, after giving effect to all prior adjustments and increases to such number made or required to be made under the terms hereof.

"WARRANT STOCK" means Common Stock issuable upon exercise of any Warrant or Warrants or otherwise issuable pursuant to any Warrant or Warrants.

<center>16</center>

<PAGE>

10.    OTHER NOTICES. In case at any time:

                    (A)    the Issuer shall make any distributions to the
                           holders of Common Stock; or

(B)    the Issuer shall authorize the granting to all
       holders of its Common Stock of rights to subscribe
       for or purchase any shares of Capital Stock of any
       class or other rights; or

(C)    there shall be any reclassification of the Capital
       Stock of the Issuer; or

(D)    there shall be any capital reorganization by the
       Issuer; or

(E)    there shall be any (i) consolidation or merger
       involving the Issuer or (ii) sale, transfer or
       other disposition of all or substantially all of
       the Issuer's property, assets or business (except
       a merger or other reorganization in which the
       Issuer shall be the surviving corporation and its
       shares of Capital Stock shall continue to be
       outstanding and unchanged and except a
       consolidation, merger, sale, transfer or other
       disposition involving a wholly-owned Subsidiary);
       or

(F)    there shall be a voluntary or involuntary
       dissolution, liquidation or winding-up of the
       Issuer or any partial liquidation of the Issuer or
       distribution to holders of Common Stock;

then, in each of such cases, the Issuer shall give written notice to the Holder
of the date on which (i) the books of the Issuer shall close or a record shall
be taken for such dividend, distribution or subscription rights or (ii) such
reorganization, reclassification, consolidation, merger, disposition,
dissolution, liquidation or winding-up, as the case may be, shall take place.
Such notice also shall specify the date as of which the holders of Common Stock
of record shall participate in such dividend, distribution or subscription
rights, or shall be entitled to exchange their certificates for Common Stock for
securities or other property deliverable upon such reorganization,
reclassification, consolidation, merger, disposition, dissolution, liquidation
or winding-up, as the case may be. Such notice shall be given at least twenty
(20) days prior to the action in question and not less than ten (10) days prior
to the record date or the date on which the Issuer's transfer books are closed
in respect thereto. This Warrant entitles the Holder to receive copies of all
financial and other information distributed or required to be distributed to the
holders of the Common Stock.

     11.    AMENDMENT AND WAIVER. Any term, covenant, agreement or condition in
this Warrant may be amended, or compliance therewith may be waived (either
generally or in a particular instance and either retroactively or
prospectively), by a written instrument or written instruments executed by the
Issuer and the Majority Holders; PROVIDED, HOWEVER, that no such amendment or
waiver shall reduce the Warrant Share Number, increase the Warrant Price,
shorten the period during which this Warrant may be exercised or modify any
provision of this SECTION 11 without the consent of the Holder of this Warrant.
No consideration shall be offered or paid to any person to amend or consent to a
waiver or modification of any provision of this Warrant unless the same
consideration is also offered to all holders of the Warrants.

                                    17

<PAGE>

12.    GOVERNING LAW; JURISDICTION. This Warrant shall be governed by and construed in accordance with the internal laws of the State of Delaware, without giving effect to any of the conflicts of law principles which would result in the application of the substantive law of another jurisdiction. This Warrant shall not be interpreted or construed with any presumption against the party causing this Warrant to be drafted. The Issuer and the Holder agree that venue for any dispute arising under this Warrant will lie exclusively in the state or federal courts located in New York County, New York, and the parties irrevocably waive any right to raise FORUM NON CONVENIENS or any other argument that New York is not the proper venue. The Issuer and the Holder irrevocably consent to personal jurisdiction in the state and federal courts of the state of New York. The Issuer and the Holder consent to process being served in any such suit, action or proceeding by mailing a copy thereof to such party at the address in effect for notices to it under this Warrant and agrees that such service shall constitute good and sufficient service of process and notice thereof. Nothing in this SECTION 12 shall affect or limit any right to serve process in any other manner permitted by law. The Issuer and the Holder hereby agree that the prevailing party in any suit, action or proceeding arising out of or relating to this Warrant or the Purchase Agreement, shall be entitled to reimbursement for reasonable legal fees from the non-prevailing party. The parties hereby waive all rights to a trial by jury.

13.    NOTICES. Any notice, demand, request, waiver or other communication required or permitted to be given hereunder shall be in writing and shall be effective (a) upon hand delivery by telecopy or facsimile at the address or number designated below (if delivered on a business day during normal business hours where such notice is to be received), or the first business day following such delivery (if delivered other than on a business day during normal business hours where such notice is to be received) or (b) on the second business day following the date of mailing by express courier service, fully prepaid, addressed to such address, or upon actual receipt of such mailing, whichever shall first occur. The addresses for such communications shall be:

| | |
|---|---|
| If to the Issuer: | Marketing Worldwide Corporation<br>2212 Grand Commerce Drive<br>Howell, Michigan 48855<br>Attention: James Marvin<br>Tel. No.: (517) 540-0045<br>Fax No.: (517) 540-0923 |
| with copies (which copies shall not constitute notice) to: | Weed & Co. LLP<br>4695 Mac Arthur Court, Suite 1430<br>Newport Beach, CA 92660<br>Attention: Richard O. Weed<br>Tel. No.: (949) 475-9086<br>Fax No.: (949) 475-9087 |
| If to any Holder: | At the address of such Holder set forth on EXHIBIT A to the Purchase Agreement, with copies to:<br><br>Sadis & Goldberg LLP<br>551 Fifth Avenue, 21st Floor<br>New York, New York 10176<br>Attention: Steven Huttler, Esq.<br>Tel. No.: (212) 947-3793<br>Fax No.: (212) 947-3796 |

18

<PAGE>

Any party hereto may from time to time change its address for notices by giving written notice of such changed address to the other party hereto.

14.    WARRANT AGENT. The Issuer may, by written notice to each Holder of this Warrant, appoint an agent having an office in New York, New York for the purpose of issuing shares of Warrant Stock on the exercise of this Warrant pursuant to SECTION 2(E) hereof, exchanging this Warrant pursuant to SECTION 2(E) hereof or replacing this Warrant pursuant to SECTION 3(d) hereof, or any of the foregoing, and thereafter any such issuance, exchange or replacement, as the case may be, shall be made at such office by such agent.

15.    REMEDIES. The Issuer stipulates that the remedies at law of the Holder of this Warrant in the event of any default or threatened default by the Issuer in the performance of or compliance with any of the terms of this Warrant are not and will not be adequate and that, to the fullest extent permitted by law, such terms may be specifically enforced by a decree for the specific performance of any agreement contained herein or by an injunction against a violation of any of the terms hereof or otherwise.

16.    SUCCESSORS AND ASSIGNS. This Warrant and the rights evidenced hereby shall inure to the benefit of and be binding upon the successors and assigns of the Issuer, the Holder hereof and (to the extent provided herein) the Holders of Warrant Stock issued pursuant hereto, and shall be enforceable by any such Holder or Holder of Warrant Stock.

17.    CONSTRUCTION. This Warrant shall be deemed to be jointly drafted by the Company and all the Holders and shall not be construed against any person as the drafter hereof.

18.    HEADINGS. The headings of the Sections of this Warrant are for convenience of reference only and shall not, for any purpose, be deemed a part of this Warrant.

19.    REGISTRATION RIGHTS. The Holder of this Warrant is entitled to the benefit of certain registration rights with respect to the shares of Warrant Stock issuable upon the exercise of this Warrant pursuant to the Registration Rights Agreement and the registration rights with respect to the shares of Warrant Stock issuable upon the exercise of this Warrant by any subsequent Holder may only be assigned in accordance with the terms and provisions of the Registrations Rights Agreement and SECTION 2(F) hereof.

                    [REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]


                                      19

<PAGE>

IN WITNESS WHEREOF, the Issuer has executed this Series A Warrant as of the day and year first above written.

                              MARKETING WORLDWIDE CORPORATION


                              By: /s/ Michael Winzkowski
                              Name: Michael Winzkowski

Title: Chief Executive Officer


20

<PAGE>

EXERCISE FORM
SERIES A WARRANT

MARKETING WORLDWIDE CORPORATION

The undersigned _____, pursuant to the provisions of the within
Warrant, hereby elects to purchase _____ shares of Common Stock of Marketing
Worldwide Corporation covered by the within Warrant.

Dated: _____        Signature _____

                           Address   _____

                                     _____

Number of shares of Common Stock beneficially owned or deemed beneficially owned
by the Holder on the date of Exercise:   _____

The undersigned is an "accredited investor" as defined in Regulation D under the
Securities Act of 1933, as amended.

The undersigned intends that payment of the Warrant Price shall be made as
(check one):

         Cash Exercise_____

         Cashless Exercise_____

If the Holder has elected a Cash Exercise, the Holder shall pay the sum of
$_____ by certified or official bank check (or via wire transfer) to the
Issuer in accordance with the terms of the Warrant.

If the Holder has elected a Cashless Exercise, a certificate shall be issued to
the Holder for the number of shares equal to the whole number portion of the
product of the calculation set forth below, which is _____. The Company
shall pay a cash adjustment in respect of the fractional portion of the product
of the calculation set forth below in an amount equal to the product of the
fractional portion of such product and the Per Share Market Value on the date of
exercise, which product is _____.

         X = Y - (A)(Y)
             ------
               B

Where:

The number of Ordinary Shares to be issued to the Holder _____("X").

The number of Ordinary Shares purchasable upon exercise of all of the Warrant
or, if only a portion of the Warrant is being exercised, the portion of the
Warrant being exercised _____ ("Y").

```
                                    21
<PAGE>

The Warrant Price _____ ("A").

The Per Share Market Value of one Ordinary Share _____ ("B").
```

### ASSIGNMENT

```
FOR VALUE RECEIVED, _____ hereby sells, assigns and transfers unto
_____ the within Warrant and all rights evidenced thereby and does
irrevocably constitute and appoint _____, attorney, to transfer the said
Warrant on the books of the within named corporation.

Dated: _____          Signature _____

                             Address   _____
                                        _____
```

### PARTIAL ASSIGNMENT

```
FOR VALUE RECEIVED, _____ hereby sells, assigns and transfers unto
_____ the right to purchase _____ shares of Warrant Stock
evidenced by the within Warrant together with all rights therein, and does
irrevocably constitute and appoint _____, attorney, to transfer
that part of the said Warrant on the books of the within named corporation.

Dated: _____          Signature _____

                             Address   _____
                                        _____
```

### FOR USE BY THE ISSUER ONLY:

```
This Warrant No. W-___ canceled (or transferred or exchanged) this _____ day of
_____, _____, shares of Common Stock issued therefor in the name of
_____, Warrant No. W-_____ issued for ____ shares of Common Stock in
the name of _____.

                                    22
</TEXT>
</DOCUMENT>
```

```
<DOCUMENT>
<TYPE>EX-4.6
<SEQUENCE>4
<FILENAME>mww_8k-ex0406.txt
<DESCRIPTION>SERIES B COMMON STOCK PURCHASE WARRANT
<TEXT>
<PAGE>
```

Exhibit 4.6

THIS WARRANT AND THE SHARES OF COMMON STOCK ISSUABLE UPON EXERCISE HEREOF HAVE
NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE
"SECURITIES ACT") OR ANY STATE SECURITIES LAWS AND MAY NOT BE SOLD, TRANSFERRED
OR OTHERWISE DISPOSED OF UNLESS REGISTERED UNDER THE SECURITIES ACT AND UNDER
APPLICABLE STATE SECURITIES LAWS OR THE ISSUER SHALL HAVE RECEIVED AN OPINION OF
COUNSEL REASONABLY SATISFACTORY TO THE ISSUER THAT REGISTRATION OF SUCH
SECURITIES UNDER THE SECURITIES ACT AND UNDER THE PROVISIONS OF APPLICABLE STATE
SECURITIES LAWS IS NOT REQUIRED.

SERIES B WARRANT TO PURCHASE

SHARES OF COMMON STOCK

OF

MARKETING WORLDWIDE CORPORATION

Expires April 23, 2012

No.: W-B-07-01                                    Number of Shares: 3,500,000
Date of Issuance: April 23, 2007

     FOR VALUE RECEIVED, the undersigned, Marketing Worldwide Corporation, a
Delaware corporation (together with its successors and assigns, the "ISSUER"),
hereby certifies that Vision Opportunity Master Fund, Ltd. or its registered
assigns is entitled to subscribe for and purchase, during the Term (as
hereinafter defined), up to 3,500,000 shares (subject to adjustment as
hereinafter provided) of the duly authorized, validly issued, fully paid and
non-assessable Common Stock of the Issuer, at an exercise price per share equal
to the Warrant Price then in effect, subject, however, to the provisions and
upon the terms and conditions hereinafter set forth. Capitalized terms used in
this Warrant and not otherwise defined herein shall have the respective meanings
specified in SECTION 9 hereof.

     1.    TERM. The term of this Warrant shall commence on April 23, 2007 and
shall expire at 6:00 p.m., Eastern Time, on April 23, 2012 (such period being
the "TERM").

     2.    METHOD OF EXERCISE; PAYMENT; ISSUANCE OF NEW WARRANT; TRANSFER AND
EXCHANGE.

          (a)    TIME OF EXERCISE. The purchase rights represented by this
Warrant may be exercised in whole or in part during the Term.

          (b)    METHOD OF EXERCISE. The Holder hereof may exercise this
Warrant, in whole or in part, by the surrender of this Warrant (with the
exercise form attached hereto duly executed) at the principal office of the
Issuer, and by the payment to the Issuer of an amount of consideration therefor

equal to the Warrant Price in effect on the date of such exercise multiplied by
the number of shares of Warrant Stock with respect to which this Warrant is then
being exercised, payable at such Holder's election (i) by certified or official
bank check or by wire transfer to an account designated by the Issuer, (ii) by
"cashless exercise" in accordance with the provisions of SUBSECTION (C) of this
SECTION 2, but only when a registration statement under the Securities Act
providing for the resale of the Warrant Stock is not then in effect, or (iii) by
a combination of the foregoing methods of payment selected by the Holder of this
Warrant.

<div align="center">1</div>

<PAGE>

(c)    CASHLESS EXERCISE. Notwithstanding any provisions herein to
the contrary and commencing one (1) year following the Original Issue Date if
(i) the Per Share Market Value of one share of Common Stock is greater than the
Warrant Price (at the date of calculation as set forth below) and (ii) a
registration statement under the Securities Act providing for the resale of the
Warrant Stock is not then in effect by the date such registration statement is
required to be effective pursuant to the Registration Rights Agreement (as
defined in the Purchase Agreement) or not effective at any time during the
Effectiveness Period (as defined in the Registration Rights Agreement) in
accordance with the terms of the Registration Rights Agreement, unless the
registration statement is not effective as a result of the Issuer exercising its
rights under SECTION 3(N) of the Registration Rights Agreement, in lieu of
exercising this Warrant by payment of cash, the Holder may exercise this Warrant
by a cashless exercise and shall receive the number of shares of Common Stock
equal to an amount (as determined below) by surrender of this Warrant at the
principal office of the Issuer together with the properly endorsed Notice of
Exercise in which event the Issuer shall issue to the Holder a number of shares
of Common Stock computed using the following formula:

$$X = Y - \frac{(A)(Y)}{B}$$

Where    X =    the number of shares of Common Stock to be issued to the
                Holder.

         Y =    the number of shares of Common Stock purchasable upon
                exercise of all of the Warrant or, if only a portion of the
                Warrant is being exercised, the portion of the Warrant
                being exercised.

         A =    the Warrant Price.

         B =    the Per Share Market Value of one share of Common Stock.

(d)    ISSUANCE OF STOCK CERTIFICATES. In the event of any exercise
of this Warrant in accordance with and subject to the terms and conditions
hereof, certificates for the shares of Warrant Stock so purchased shall be dated
the date of such exercise and delivered to the Holder hereof within a reasonable
time, not exceeding three (3) Trading Days after such exercise (the "DELIVERY
DATE") or, at the request of the Holder (provided that a registration statement
under the Securities Act providing for the resale of the Warrant Stock is then
in effect), issued and delivered to the Depository Trust Company ("DTC") account
on the Holder's behalf via the Deposit Withdrawal Agent Commission System
("DWAC") within a reasonable time, not exceeding three (3) Trading Days after
such exercise, and the Holder hereof shall be deemed for all purposes to be the
holder of the shares of Warrant Stock so purchased as of the date of such

exercise. Notwithstanding the foregoing to the contrary, the Issuer or its
transfer agent shall only be obligated to issue and deliver the shares to the
DTC on a holder's behalf via DWAC if such exercise is in connection with a sale
and the Issuer and its transfer agent are participating in DTC through the DWAC
system. The Holder shall deliver this original Warrant, or an indemnification
undertaking with respect to such Warrant in the case of its loss, theft or
destruction, at such time that this Warrant is fully exercised. With respect to
partial exercises of this Warrant, the Issuer shall keep written records for the
Holder of the number of shares of Warrant Stock exercised as of each date of
exercise.

2

<PAGE>

         (e)    COMPENSATION FOR BUY-IN ON FAILURE TO TIMELY DELIVER
CERTIFICATES UPON EXERCISE. In addition to any other rights available to the
Holder, if the Issuer fails to cause its transfer agent to transmit to the
Holder a certificate or certificates representing the Warrant Stock pursuant to
an exercise on or before the Delivery Date, and if after such date the Holder is
required by its broker to purchase (in an open market transaction or otherwise)
shares of Common Stock to deliver in satisfaction of a sale by the Holder of the
Warrant Stock which the Holder anticipated receiving upon such exercise (a
"BUY-IN"), then the Issuer shall (1) pay in cash to the Holder the amount by
which (x) the Holder's total purchase price (including brokerage commissions, if
any) for the shares of Common Stock so purchased exceeds (y) the amount obtained
by multiplying (A) the number of shares of Warrant Stock that the Issuer was
required to deliver to the Holder in connection with the exercise at issue TIMES
(B) the price at which the sell order giving rise to such purchase obligation
was executed, and (2) at the option of the Holder, either reinstate the portion
of the Warrant and equivalent number of shares of Warrant Stock for which such
exercise was not honored or deliver to the Holder the number of shares of Common
Stock that would have been issued had the Issuer timely complied with its
exercise and delivery obligations hereunder. For example, if the Holder
purchases Common Stock having a total purchase price of $11,000 to cover a
Buy-In with respect to an attempted exercise of shares of Common Stock with an
aggregate sale price giving rise to such purchase obligation of $10,000, under
clause (1) of the immediately preceding sentence the Issuer shall be required to
pay the Holder $1,000. The Holder shall provide the Issuer written notice
indicating the amounts payable to the Holder in respect of the Buy-In, together
with applicable confirmations and other evidence reasonably requested by the
Issuer. Nothing herein shall limit a Holder's right to pursue any other remedies
available to it hereunder, at law or in equity including, without limitation, a
decree of specific performance and/or injunctive relief with respect to the
Issuer's failure to timely deliver certificates representing shares of Common
Stock upon exercise of this Warrant as required pursuant to the terms hereof.

         (f)    TRANSFERABILITY OF WARRANT. Subject to SECTION 2(H) hereof,
this Warrant may be transferred by a Holder, in whole or in part, without the
consent of the Issuer. If transferred pursuant to this paragraph, this Warrant
may be transferred on the books of the Issuer by the Holder hereof in person or
by duly authorized attorney, upon surrender of this Warrant at the principal
office of the Issuer, properly endorsed (by the Holder executing an assignment
in the form attached hereto) and upon payment of any necessary transfer tax or
other governmental charge imposed upon such transfer. This Warrant is
exchangeable at the principal office of the Issuer for Warrants to purchase the
same aggregate number of shares of Warrant Stock, each new Warrant to represent
the right to purchase such number of shares of Warrant Stock as the Holder
hereof shall designate at the time of such exchange. All Warrants issued on
transfers or exchanges shall be dated the Original Issue Date and shall be
identical with this Warrant except as to the number of shares of Warrant Stock

issuable pursuant thereto.

       (g)    CONTINUING RIGHTS OF HOLDER. The Issuer will, at the time of or at any time after each exercise of this Warrant, upon the request of the Holder hereof, acknowledge in writing the extent, if any, of its continuing obligation to afford to such Holder all rights to which such Holder shall continue to be entitled after such exercise in accordance with the terms of this Warrant; PROVIDED that if any such Holder shall fail to make any such request, the failure shall not affect the continuing obligation of the Issuer to afford such rights to such Holder.

       (h)    COMPLIANCE WITH SECURITIES LAWS.

<div align="center">3</div>

&lt;PAGE&gt;

       (i)    The Holder of this Warrant, by acceptance hereof, acknowledges that this Warrant and the shares of Warrant Stock to be issued upon exercise hereof are being acquired solely for the Holder's own account and not as a nominee for any other party, and for investment, and that the Holder will not offer, sell or otherwise dispose of this Warrant or any shares of Warrant Stock to be issued upon exercise hereof except pursuant to an effective registration statement, or an exemption from registration, under the Securities Act and any applicable state securities laws.

       (ii)   Except as provided in paragraph (iii) below, this Warrant and all certificates representing shares of Warrant Stock issued upon exercise hereof shall be stamped or imprinted with a legend in substantially the following form:

           THIS WARRANT AND THE SHARES OF COMMON STOCK ISSUABLE UPON EXERCISE HEREOF HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT") OR ANY STATE SECURITIES LAWS AND MAY NOT BE SOLD, TRANSFERRED OR OTHERWISE DISPOSED OF UNLESS REGISTERED UNDER THE SECURITIES ACT AND UNDER APPLICABLE STATE SECURITIES LAWS OR THE ISSUER SHALL HAVE RECEIVED AN OPINION OF COUNSEL REASONABLY SATISFACTORY TO THE ISSUER THAT REGISTRATION OF SUCH SECURITIES UNDER THE SECURITIES ACT AND UNDER THE PROVISIONS OF APPLICABLE STATE SECURITIES LAWS IS NOT REQUIRED.

       (iii) The Issuer agrees to reissue this Warrant or certificates representing any of the Warrant Stock, without the legend set forth above if at such time, prior to making any transfer of any such securities, the Holder shall give written notice to the Issuer describing the manner and terms of such transfer. Such proposed transfer will not be effected until: (a) either (i) the Issuer has received an opinion of counsel reasonably satisfactory to the Issuer, to the effect that the registration of such securities under the Securities Act is not required in connection with such proposed transfer, (ii) a registration statement under the Securities Act covering such proposed disposition has been filed by the Issuer with the Securities and Exchange Commission and has become effective under the Securities Act, (iii) the Issuer has received other evidence reasonably satisfactory to the Issuer that such registration and qualification under the Securities Act and state securities laws are not required, or (iv) the Holder provides the Issuer with reasonable assurances that such security can be sold pursuant to Rule 144 under the Securities Act; and (b) either (i) the Issuer has received an opinion of counsel reasonably satisfactory to the Issuer, to the effect that

registration or qualification under the securities or "blue sky" laws of
any state is not required in connection with such proposed disposition, or
(ii) compliance with applicable state securities or "blue sky" laws has
been effected or a valid exemption exists with respect thereto. The Issuer
will respond to any such notice from a holder within three (3) Trading
Days. In the case of any proposed transfer under this SECTION 2(H), the
Issuer will use reasonable efforts to comply with any such applicable
state securities or "blue sky" laws, but shall in no event be required,
(x) to qualify to do business in any state where it is not then qualified,
(y) to take any action that would subject it to tax or to the general
service of process in any state where it is not then subject, or (z) to
comply with state securities or "blue sky" laws of any state for which

                                   4

<PAGE>

registration by coordination is unavailable to the Issuer. The
restrictions on transfer contained in this SECTION 2(H) shall be in
addition to, and not by way of limitation of, any other restrictions on
transfer contained in any other section of this Warrant. Whenever a
certificate representing the Warrant Stock is required to be issued to a
the Holder without a legend, in lieu of delivering physical certificates
representing the Warrant Stock, the Issuer shall cause its transfer agent
to electronically transmit the Warrant Stock to the Holder by crediting
the account of the Holder's Prime Broker with DTC through its DWAC system
(to the extent not inconsistent with any provisions of this Warrant or the
Purchase Agreement).

        (i)    ACCREDITED INVESTOR STATUS. In no event may the Holder
exercise this Warrant in whole or in part unless the Holder is an "accredited
investor" as defined in Regulation D under the Securities Act.

    3.    STOCK FULLY PAID; RESERVATION AND LISTING OF SHARES; COVENANTS.

        (a)    STOCK FULLY PAID. The Issuer represents, warrants, covenants
and agrees that all shares of Warrant Stock which may be issued upon the
exercise of this Warrant or otherwise hereunder will, when issued in accordance
with the terms of this Warrant, be duly authorized, validly issued, fully paid
and non-assessable and free from all taxes, liens and charges. The Issuer
further covenants and agrees that during the period within which this Warrant
may be exercised, the Issuer will at all times have authorized and reserved for
the purpose of the issuance upon exercise of this Warrant a number of authorized
but unissued shares of Common Stock equal to at least one hundred percent (100%)
of the number of shares of Common Stock issuable upon exercise of this Warrant
without regard to any limitations on exercise.

        (b)    RESERVATION. If any shares of Common Stock required to be
reserved for issuance upon exercise of this Warrant or as otherwise provided
hereunder require registration or qualification with any Governmental Authority
under any federal or state law before such shares may be so issued, the Issuer
will in good faith use its best efforts as expeditiously as possible at its
expense to cause such shares to be duly registered or qualified. If the Issuer
shall list any shares of Common Stock on any securities exchange or market it
will, at its expense, list thereon, and maintain and increase when necessary
such listing, of, all shares of Warrant Stock from time to time issued upon
exercise of this Warrant or as otherwise provided hereunder (PROVIDED that such
Warrant Stock has been registered pursuant to a registration statement under the
Securities Act then in effect), and, to the extent permissible under the
applicable securities exchange rules, all unissued shares of Warrant Stock which
are at any time issuable hereunder, so long as any shares of Common Stock shall

be so listed. The Issuer will also so list on each securities exchange or market, and will maintain such listing of, any other securities which the Holder of this Warrant shall be entitled to receive upon the exercise of this Warrant if at the time any securities of the same class shall be listed on such securities exchange or market by the Issuer.

(c)    COVENANTS. The Issuer shall not by any action including, without limitation, amending the Certificate of Incorporation or the by-laws of the Issuer, or through any reorganization, transfer of assets, consolidation, merger, dissolution, issue or sale of securities or any other action, avoid or seek to avoid the observance or performance of any of the terms of this Warrant, but will at all times in good faith assist in the carrying out of all such terms and in the taking of all such actions as may be necessary or appropriate to protect the rights of the Holder hereof against dilution (to the extent specifically provided herein) or impairment. Without limiting the generality of the foregoing, the Issuer will (i) not permit the par value, if any, of its Common Stock to exceed the then effective Warrant Price, (ii) not amend or

<div align="center">5</div>

<PAGE>

modify any provision of the Certificate of Incorporation or by-laws of the Issuer in any manner that would adversely affect the rights of the Holders of the Warrants, (iii) take all such action as may be reasonably necessary in order that the Issuer may validly and legally issue fully paid and nonassessable shares of Common Stock, free and clear of any liens, claims, encumbrances and restrictions (other than as provided herein) upon the exercise of this Warrant, and (iv) use its best efforts to obtain all such authorizations, exemptions or consents from any public regulatory body having jurisdiction thereof as may be reasonably necessary to enable the Issuer to perform its obligations under this Warrant.

(d)    LOSS, THEFT, DESTRUCTION, MUTILATION OF WARRANTS. Upon receipt of evidence satisfactory to the Issuer of the ownership of and the loss, theft, destruction or mutilation of any Warrant and, in the case of any such loss, theft or destruction, upon receipt of indemnity or security satisfactory to the Issuer or, in the case of any such mutilation, upon surrender and cancellation of such Warrant, the Issuer will make and deliver, in lieu of such lost, stolen, destroyed or mutilated Warrant, a new Warrant of like tenor and representing the right to purchase the same number of shares of Common Stock.

(e)    PAYMENT OF TAXES. The Issuer will pay any documentary stamp taxes attributable to the initial issuance of the Warrant Stock issuable upon exercise of this Warrant; PROVIDED, HOWEVER, that the Issuer shall not be required to pay any tax or taxes which may be payable in respect of any transfer involved in the issuance or delivery of any certificates representing Warrant Stock in a name other than that of the Holder in respect to which such shares are issued.

4.    ADJUSTMENT OF WARRANT PRICE AND NUMBER OF SHARES ISSUABLE UPON EXERCISE. The Warrant Price and the number of shares of Warrant Stock that may be purchased upon exercise of this Warrant shall be subject to adjustment from time to time as set forth in this SECTION 4. The Issuer shall give the Holder notice of any event described below which requires an adjustment pursuant to this SECTION 4 in accordance with the notice provisions set forth in SECTION 5.

(a)    RECAPITALIZATION, REORGANIZATION, RECLASSIFICATION, CONSOLIDATION, MERGER OR SALE.

(i)    In case the Issuer after the Original Issue Date shall

do any of the following (each, a "TRIGGERING EVENT"): (a) consolidate or merge with or into any other Person and the Issuer shall not be the continuing or surviving Person of such consolidation or merger, or (b) permit any other Person to consolidate with or merge into the Issuer and the Issuer shall be the continuing or surviving Person but, in connection with such consolidation or merger, any Capital Stock of the Issuer shall be changed into or exchanged for Securities of any other Person or cash or any other property, or (c) transfer all or substantially all of its properties or assets to any other Person, or (d) effect a capital reorganization or reclassification of its Capital Stock, then, and in the case of each such Triggering Event, proper provision shall be made to the Warrant Price and the number of shares of Warrant Stock that may be purchased upon exercise of this Warrant so that, upon the basis and the terms and in the manner provided in this Warrant, the Holder of this Warrant shall be entitled upon the exercise hereof at any time after the consummation of such Triggering Event, to the extent this Warrant is not exercised prior to such Triggering Event, to receive at the Warrant Price as adjusted to take into account the consummation of such Triggering Event, in lieu of the Common Stock issuable upon such exercise of this Warrant prior to such Triggering Event, the Securities, cash and property to which such Holder would have been entitled upon the consummation of such Triggering Event if such Holder had exercised the rights represented

6

<PAGE>

by this Warrant immediately prior thereto (including the right of a shareholder to elect the type of consideration it will receive upon a Triggering Event), subject to adjustments (subsequent to such corporate action) as nearly equivalent as possible to the adjustments provided for elsewhere in this SECTION 4, and the Warrant Price shall be adjusted to equal the product of (A) the closing price of the common stock of the continuing or surviving Person as a result of such Triggering Event as of the date immediately preceding the date of the consummation of such Triggering Event multiplied by (B) the quotient of (i) the Warrant Price divided by (ii) the Per Share Market Value of the Common Stock as of the date immediately preceding the Original Issue Date; PROVIDED, HOWEVER, the Holder at its option may elect to receive an amount in cash equal to the value of this Warrant calculated in accordance with the Black-Scholes formula. Immediately upon the occurrence of a Triggering Event, the Issuer shall notify the Holder in writing of such Triggering Event and provide the calculations in determining the number of shares of Warrant Stock issuable upon exercise of the new warrant and the adjusted Warrant Price. Upon the Holder's request, the continuing or surviving Person as a result of such Triggering Event shall issue to the Holder a new warrant of like tenor evidencing the right to purchase the adjusted number of shares of Warrant Stock and the adjusted Warrant Price pursuant to the terms and provisions of this SECTION 4(A)(I). Notwithstanding the foregoing to the contrary, this SECTION 4(A)(I) shall only apply if the surviving entity pursuant to any such Triggering Event has a class of equity securities registered pursuant to the Securities Exchange Act of 1934, as amended, and its common stock is listed or quoted on a national securities exchange, national automated quotation system or the OTC Bulletin Board. In the event that the surviving entity pursuant to any such Triggering Event is not a public company (or similar Person) that is registered pursuant to the Securities Exchange Act of 1934, as amended, or its common stock is not listed or quoted on a national securities exchange, national automated quotation system or the OTC Bulletin Board, then the Holder shall have the right to demand that the Issuer pay to the Holder an amount in cash equal to the value of this Warrant calculated in accordance with

the Black-Scholes formula.

      (ii)  In the event that the Holder has elected not to exercise this Warrant prior to the consummation of a Triggering Event and has also elected not to receive an amount in cash equal to the value of this Warrant calculated in accordance with the Black-Scholes formula pursuant to the provisions of SECTION 4(A)(I) above, so long as the surviving entity pursuant to any Triggering Event is a company that has a class of equity securities registered pursuant to the Securities Exchange Act of 1934, as amended, and its common stock is listed or quoted on a national securities exchange, national automated quotation system or the OTC Bulletin Board, the surviving entity and/or each Person (other than the Issuer) which may be required to deliver any Securities, cash or property upon the exercise of this Warrant as provided herein shall assume, by written instrument delivered to, and reasonably satisfactory to, the Holder of this Warrant, (A) the obligations of the Issuer under this Warrant (and if the Issuer shall survive the consummation of such Triggering Event, such assumption shall be in addition to, and shall not release the Issuer from, any continuing obligations of the Issuer under this Warrant) and (B) the obligation to deliver to such Holder such Securities, cash or property as, in accordance with the foregoing provisions of this SUBSECTION (A), such Holder shall be entitled to receive, and the surviving entity and/or each such Person shall have similarly delivered to such Holder an opinion of counsel for the surviving entity and/or each such Person, which counsel shall be reasonably satisfactory to such Holder, or in the alternative, a written acknowledgement executed by the President or Chief Financial Officer of the Issuer, stating that this Warrant shall thereafter continue in full

<div align="center">7</div>

&lt;PAGE&gt;

force and effect and the terms hereof (including, without limitation, all of the provisions of this SUBSECTION (A)) shall be applicable to the Securities, cash or property which the surviving entity and/or each such Person may be required to deliver upon any exercise of this Warrant or the exercise of any rights pursuant hereto.

      (b)  STOCK DIVIDENDS, SUBDIVISIONS AND COMBINATIONS. If at any time the Issuer shall:

      (i)  make or issue or set a record date for the holders of the Common Stock for the purpose of entitling them to receive a dividend payable in, or other distribution of, shares of Common Stock,

      (ii)  subdivide its outstanding shares of Common Stock into a larger number of shares of Common Stock, or

      (iii) combine its outstanding shares of Common Stock into a smaller number of shares of Common Stock,

then (1) the number of shares of Common Stock for which this Warrant is exercisable immediately after the occurrence of any such event shall be adjusted to equal the number of shares of Common Stock which a record holder of the same number of shares of Common Stock for which this Warrant is exercisable immediately prior to the occurrence of such event would own or be entitled to receive after the happening of such event, and (2) the Warrant Price then in effect shall be adjusted to equal (A) the Warrant Price then in effect multiplied by the number of shares of Common Stock for which this Warrant is exercisable immediately prior to the adjustment divided by (B) the number of

shares of Common Stock for which this Warrant is exercisable immediately after such adjustment.

(c)    CERTAIN OTHER DISTRIBUTIONS. If at any time the Issuer shall make or issue or set a record date for the holders of the Common Stock for the purpose of entitling them to receive any dividend or other distribution of:

(i)    cash (other than a cash dividend payable out of earnings or earned surplus legally available for the payment of dividends under the laws of the jurisdiction of incorporation of the Issuer),

(ii)    any evidences of its indebtedness, any shares of stock of any class or any other securities or property of any nature whatsoever (other than cash, Common Stock Equivalents or Additional Shares of Common Stock), or

(iii)    any warrants or other rights to subscribe for or purchase any evidences of its indebtedness, any shares of stock of any class or any other securities or property of any nature whatsoever (other than cash, Common Stock Equivalents or Additional Shares of Common Stock), then (1) the number of shares of Common Stock for which this Warrant is exercisable shall be adjusted to equal the product of the number of shares of Common Stock for which this Warrant is exercisable immediately prior to such adjustment multiplied by a fraction (A) the numerator of which shall be the Per Share Market Value of Common Stock at the date of taking such record and (B) the denominator of which shall be such Per Share Market Value minus the amount allocable to one share of Common Stock of any such cash so distributable and of the fair value (as determined in good faith by the Board of Directors of the Issuer and supported by an opinion from

8

<PAGE>

an investment banking firm mutually agreed upon by the Issuer and the Holder) of any and all such evidences of indebtedness, shares of stock, other securities or property or warrants or other subscription or purchase rights so distributable, and (2) the Warrant Price then in effect shall be adjusted to equal (A) the Warrant Price then in effect multiplied by the number of shares of Common Stock for which this Warrant is exercisable immediately prior to the adjustment divided by (B) the number of shares of Common Stock for which this Warrant is exercisable immediately after such adjustment. A reclassification of the Common Stock (other than a change in par value, or from par value to no par value or from no par value to par value) into shares of Common Stock and shares of any other class of stock shall be deemed a distribution by the Issuer to the holders of its Common Stock of such shares of such other class of stock within the meaning of this SECTION 4(C) and, if the outstanding shares of Common Stock shall be changed into a larger or smaller number of shares of Common Stock as a part of such reclassification, such change shall be deemed a subdivision or combination, as the case may be, of the outstanding shares of Common Stock within the meaning of SECTION 4(B).

(d)    ISSUANCE OF ADDITIONAL SHARES OF COMMON STOCK. In the event the Issuer shall at any time within two (2) years following the Original Issuance Date (the "FULL RATCHET PERIOD") issue any Additional Shares of Common Stock (otherwise than as provided in the foregoing SUBSECTIONS (B) through (c) of this SECTION 4), at a price per share less than the Warrant Price then in effect or without consideration, then the Warrant Price upon each such issuance shall be adjusted to the price equal to the consideration per share paid for such Additional Shares of Common Stock.

(e)  ISSUANCE OF COMMON STOCK EQUIVALENTS. In the event the Issuer shall at any time within the Full Ratchet Period take a record of the holders of its Common Stock for the purpose of entitling them to receive a distribution of, or shall in any manner (whether directly or by assumption in a merger in which the Issuer is the surviving Person) issue or sell, any Common Stock Equivalents, whether or not the rights to exchange or convert thereunder are immediately exercisable, and the price per share for which Common Stock is issuable upon such conversion or exchange shall be less than the Warrant Price in effect immediately prior to the time of such issue or sale, or if, after any such issuance of Common Stock Equivalents, the price per share for which Additional Shares of Common Stock may be issuable thereafter is amended or adjusted, and such price as so amended shall be less than the Warrant Price in effect at the time of such amendment or adjustment, then the Warrant Price then in effect shall be adjusted as provided in SECTION 4(D). No further adjustments of the number of shares of Common Stock for which this Warrant is exercisable and the Warrant Price then in effect shall be made upon the actual issue of such Common Stock upon conversion or exchange of such Common Stock Equivalents.

(f)  SUBSEQUENT COMMON STOCK AND COMMON STOCK EQUIVALENTS ISSUES. In the event the Company, shall, at any time after the Full Ratchet Period, issue or sell any Additional Shares of Common Stock or Common Stock Equivalents (otherwise than as provided in the foregoing SUBSECTIONS (A) THROUGH (E) OF THIS SECTION 4), at a price per share less than the Warrant Price, or without consideration, the Warrant Price then in effect upon each such issuance shall be adjusted to that price (rounded to the nearest cent) determined by multiplying the Warrant Price by a fraction: (1) the numerator of which shall be equal to the SUM of (A) the number of shares of Common Stock outstanding immediately prior to the issuance of such Additional Shares of Common Stock PLUS (B) the number of shares of Common Stock (rounded to the nearest whole share) which the aggregate consideration for the total number of such Additional Shares of Common Stock so issued would purchase at a price per share equal to the then Warrant Price; and (2) the denominator of which shall be equal to the number of shares

9

<PAGE>

of Common Stock outstanding immediately after the issuance of such Additional Shares of Common Stock. No adjustment of the number of shares of Common Stock shall be made upon the issuance of any Additional Shares of Common Stock which are issued pursuant to the exercise of any warrants or other subscription or purchase rights or pursuant to the exercise of any conversion or exchange rights in any Common Stock Equivalents if any such adjustment shall previously have been made upon the issuance of such warrants or other rights or upon the issuance of such Common Stock Equivalents (or upon the issuance of any warrant or other rights therefore).

(g)  OTHER PROVISIONS APPLICABLE TO ADJUSTMENTS UNDER THIS SECTION. The following provisions shall be applicable to the making of adjustments of the number of shares of Common Stock for which this Warrant is exercisable and the Warrant Price then in effect provided for in this SECTION 4:

(i)  COMPUTATION OF CONSIDERATION. To the extent that any Additional Shares of Common Stock or any Common Stock Equivalents (or any warrants or other rights therefor) shall be issued for cash consideration, the consideration received by the Issuer therefor shall be the amount of the cash received by the Issuer therefor, or, if such Additional Shares of Common Stock or Common Stock Equivalents are offered by the Issuer for subscription, the subscription price, or, if such Additional Shares of Common Stock or Common Stock Equivalents are sold to underwriters or

dealers for public offering without a subscription offering, the initial public offering price (in any such case subtracting any amounts paid or receivable for accrued interest or accrued dividends and without taking into account any compensation, discounts or expenses paid or incurred by the Issuer for and in the underwriting of, or otherwise in connection with, the issuance thereof). In connection with any merger or consolidation in which the Issuer is the surviving Person (other than any consolidation or merger in which the previously outstanding shares of Common Stock of the Issuer shall be changed to or exchanged for the stock or other securities of another Person), the amount of consideration therefore shall be, deemed to be the fair value, as determined reasonably and in good faith by the Board, of such portion of the assets and business of the nonsurviving Person as the Board may determine to be attributable to such shares of Common Stock or Common Stock Equivalents, as the case may be. The consideration for any Additional Shares of Common Stock issuable pursuant to any warrants or other rights to subscribe for or purchase the same shall be the consideration received by the Issuer for issuing such warrants or other rights plus the additional consideration payable to the Issuer upon exercise of such warrants or other rights. The consideration for any Additional Shares of Common Stock issuable pursuant to the terms of any Common Stock Equivalents shall be the consideration received by the Issuer for issuing warrants or other rights to subscribe for or purchase such Common Stock Equivalents, plus the consideration paid or payable to the Issuer in respect of the subscription for or purchase of such Common Stock Equivalents, plus the additional consideration, if any, payable to the Issuer upon the exercise of the right of conversion or exchange in such Common Stock Equivalents. In the event of any consolidation or merger of the Issuer in which the Issuer is not the surviving Person or in which the previously outstanding shares of Common Stock of the Issuer shall be changed into or exchanged for the stock or other securities of another Person, or in the event of any sale of all or substantially all of the assets of the Issuer for stock or other securities of any Person, the Issuer shall be deemed to have issued a number of shares of its Common Stock for stock or securities or other property of the other Person computed on the basis of the actual exchange ratio on which the transaction was predicated, and for a consideration equal to the fair market value on the date of such transaction of all such stock or securities or other property of the other Person. In the event

<center>10</center>

&lt;PAGE&gt;

any consideration received by the Issuer for any securities consists of property other than cash, the fair market value thereof at the time of issuance or as otherwise applicable shall be as determined in good faith by the Board. In the event Common Stock is issued with other shares or securities or other assets of the Issuer for consideration which covers both, the consideration computed as provided in this SECTION 4(G)(I) shall be allocated among such securities and assets as determined in good faith by the Board.

      (ii)  WHEN ADJUSTMENTS TO BE MADE. The adjustments required by this SECTION 4 shall be made whenever and as often as any specified event requiring an adjustment shall occur, except that any adjustment of the number of shares of Common Stock for which this Warrant is exercisable that would otherwise be required may be postponed (except in the case of a subdivision or combination of shares of the Common Stock, as provided for in SECTION 4(B)) up to, but not beyond the date of exercise if such adjustment either by itself or with other adjustments not previously made adds or subtracts less than one percent (1%) of the shares of Common Stock

for which this Warrant is exercisable immediately prior to the making of such adjustment. Any adjustment representing a change of less than such minimum amount (except as aforesaid) which is postponed shall be carried forward and made (x) as soon as such adjustment, together with other adjustments required by this SECTION 4 and not previously made, would result in a minimum adjustment, or (y) on the date of exercise. For the purpose of any adjustment, any specified event shall be deemed to have occurred at the close of business on the date of its occurrence.

(iii) FRACTIONAL INTERESTS. In computing adjustments under this SECTION 4, fractional interests in Common Stock shall be taken into account to the nearest one one-hundredth (1/100th) of a share.

(iv)  WHEN ADJUSTMENT NOT REQUIRED. If the Issuer shall take a record of the holders of its Common Stock for the purpose of entitling them to receive a dividend or distribution or subscription or purchase rights and shall, thereafter and before the distribution to stockholders thereof, legally abandon its plan to pay or deliver such dividend, distribution, subscription or purchase rights, then thereafter no adjustment shall be required by reason of the taking of such record and any such adjustment previously made in respect thereof shall be rescinded and annulled.

(h)    FORM OF WARRANT AFTER ADJUSTMENTS. The form of this Warrant need not be changed because of any adjustments in the Warrant Price or the number and kind of Securities purchasable upon the exercise of this Warrant.

(i)    ESCROW OF WARRANT STOCK. If after any property becomes distributable pursuant to this SECTION 4 by reason of the taking of any record of the holders of Common Stock, but prior to the occurrence of the event for which such record is taken, and the Holder exercises this Warrant, any shares of Common Stock issuable upon exercise by reason of such adjustment shall be deemed the last shares of Common Stock for which this Warrant is exercised (notwithstanding any other provision to the contrary herein) and such shares or other property shall be held in escrow for the Holder by the Issuer to be issued to the Holder upon and to the extent that the event actually takes place, upon payment of the current Warrant Price. Notwithstanding any other provision to the contrary herein, if the event for which such record was taken fails to occur or is rescinded, then such escrowed shares shall be cancelled by the Issuer and escrowed property returned.

11

<PAGE>

5.    NOTICE OF ADJUSTMENTS. Whenever the Warrant Price or Warrant Share Number shall be adjusted pursuant to SECTION 4 hereof (for purposes of this SECTION 5, each an "ADJUSTMENT"), the Issuer shall cause its Chief Financial Officer to prepare and execute a certificate setting forth, in reasonable detail, the event requiring the Adjustment, the amount of the Adjustment, the method by which such Adjustment was calculated (including a description of the basis on which the Board made any determination hereunder), and the Warrant Price and Warrant Share Number after giving effect to such Adjustment, and shall cause copies of such certificate to be delivered to the Holder of this Warrant promptly after each Adjustment. Any dispute between the Issuer and the Holder of this Warrant with respect to the matters set forth in such certificate may at the option of the Holder of this Warrant be submitted to an Independent Appraiser selected by the Holder; PROVIDED that the Issuer shall have ten (10) days after receipt of notice from such Holder of its selection of such Independent Appraiser to object thereto, in which case such Holder shall select another such Independent Appraiser and the Issuer shall have no such right of

objection. The Independent Appraiser selected by the Holder of this Warrant as provided in the preceding sentence shall be instructed to deliver a written opinion as to such matters to the Issuer and such Holder within thirty (30) days after submission to it of such dispute. Such opinion shall be final and binding on the parties hereto. The costs and expenses of the initial firm selected as Independent Appraiser shall be paid equally by the Issuer and the Holder and, in the case of an objection by the Issuer, the costs and expenses of the subsequent firm selected as Independent Appraiser shall be paid in full by the Issuer.

6.    FRACTIONAL SHARES. No fractional shares of Warrant Stock will be issued in connection with any exercise hereof, but in lieu of such fractional shares, the Issuer shall round the number of shares to be issued upon exercise up to the nearest whole number of shares.

7.    OWNERSHIP CAP AND EXERCISE RESTRICTION. Notwithstanding anything to the contrary set forth in this Warrant, at no time may a Holder of this Warrant exercise this Warrant if the number of shares of Common Stock to be issued pursuant to such exercise would exceed, when aggregated with all other shares of Common Stock owned by such Holder at such time, the number of shares of Common Stock which would result in such Holder beneficially owning (as determined in accordance with Section 13(d) of the Exchange Act and the rules thereunder) in excess of 9.99% of the then issued and outstanding shares of Common Stock; PROVIDED, HOWEVER, that upon a holder of this Warrant providing the Issuer with sixty-one (61) days notice (pursuant to SECTION 13 hereof) (the "WAIVER NOTICE") that such Holder would like to waive this SECTION 7 with regard to any or all shares of Common Stock issuable upon exercise of this Warrant, this SECTION 7 will be of no force or effect with regard to all or a portion of the Warrant referenced in the Waiver Notice; PROVIDED, FURTHER, that this provision shall be of no further force or effect during the sixty-one (61) days immediately preceding the expiration of the term of this Warrant.

8.    ISSUER'S REDEMPTION OPTION. If (A) the Per Share Market Value of the Common Stock for any ten (10) consecutive Trading Days equals or exceeds $3.00 per share (as may be adjusted for any stock splits or combinations of the Common Stock) and (B) the trading volume of the Common Stock for each Trading Day of such ten (10) Trading Day period equals or exceeds 20,000 shares of Common Stock, the Issuer may, at any time thereafter upon ten (10) Trading Days prior written notice (the "ISSUER REDEMPTION NOTICE") to the Holder, redeem the unexercised portion of this Warrant in cash at a price equal to the number of shares of Warrant Stock with respect to the unexercised portion of this Warrant multiplied by $0.001 (the "ISSUER REDEMPTION PRICE"); PROVIDED, THAT, in connection with any redemption by the Issuer under this SECTION 8, (A) the registration statement (the "REGISTRATION STATEMENT") filed by the Issuer with the Securities and Exchange Commission providing for the resale of the Warrant Stock and the shares of Common Stock issued pursuant to the Purchase Agreement

12

<PAGE>

is then in effect and has been effective, without lapse or suspension of any kind, for a period of sixty (60) consecutive calendar days, (B) trading in the Common Stock shall not have been suspended by the Securities and Exchange Commission or the OTC Bulletin Board (or other exchange or market on which the Common Stock is trading), (C) the Issuer is in material compliance with the terms and conditions of this Warrant and the other Transaction Documents (as defined in the Purchase Agreement) and (D) the Issuer is not in possession of any material non-public information; PROVIDED, FURTHER, that the Registration Statement is in effect from the date of delivery of the Issuer Redemption Notice until the date which is the later of (1) the date the Holder exercises the Warrant pursuant to the Issuer Redemption Notice and (2) the twentieth (20th)

Trading Day after the Holder receives the Issuer Redemption Notice (the "EARLY TERMINATION DATE"). The rights and privileges granted pursuant to this Warrant with respect to the shares of Warrant Stock subject to the Issuer Redemption Notice (the "REDEEMED WARRANT SHARES") shall expire on the Early Termination Date if this Warrant is not exercised with respect to such Redeemed Warrant Shares prior to such Early Termination Date. The Issuer's Redemption Notice shall state the date of redemption which date shall be the twenty-first (21st) Trading Day after the Issuer has delivered the Issuer's Redemption Notice (the "ISSUER'S REDEMPTION DATE"), the Issuer's Redemption Price and the number of shares to be redeemed by the Issuer. The Issuer shall not send a Issuer's Redemption Notice unless it has good and clear funds for a minimum of the amount it intends to redeem in a bank account controlled by the Issuer. The Issuer shall deliver the Issuer's Redemption Price to the Holder on the Issuer's Redemption Date. Not later than five (5) days after receipt of the Issuer Redemption Price, Holder shall return to the Issuer for cancellation the original Warrant to be redeemed. If the Issuer fails to pay the Issuer's Redemption Price by the Issuer's Redemption Date, the redemption will be declared null and void. Notwithstanding anything in the foregoing to the contrary, if the Holder may not exercise this Warrant as a result of the restriction contained in SECTION 7 hereof, the Issuer Redemption Notice shall be deemed null and void and shall not be deemed effective until the date that the Holder may exercise this Warrant in accordance with SECTION 7 hereof.

9.    DEFINITIONS. For the purposes of this Warrant, the following terms have the following meanings:

"ADDITIONAL SHARES OF COMMON STOCK" means all shares of Common Stock issued by the Issuer after the Original Issue Date, and all shares of Other Common, if any, issued by the Issuer after the Original Issue Date, except: (i) securities issued (other than for cash) in connection with a merger, acquisition, or consolidation that do not exceed 5% of the outstanding Common Stock of the Issuer as of the date of the Purchase Agreement (such percentage subject to adjustment in a manner consistent with the adjustments to the Warrant Price contemplated in SECTION 4 hereof), (ii) securities issued pursuant to the conversion or exercise of convertible or exercisable securities issued or outstanding on or prior to the date of the Purchase Agreement or issued pursuant to the Purchase Agreement (so long as the conversion or exercise price in such securities are not amended to lower such price and/or adversely affect the Holders), (iii) the Warrant Stock, (iv) Common Stock issued or the issuance or grants of options to purchase Common Stock pursuant to the Company's stock option plans and employee stock purchase plans that either (x) exist on the date of the Purchase Agreement, or (y) do not exceed ten percent (10%) of the outstanding Common Stock of the Company as of the date of the Purchase Agreement, and (v) any warrants issued to the placement agent and its designees for the transactions contemplated by the Purchase Agreement. For the avoidance of doubt, notwithstanding clause (i) of this paragraph, in the event that the Company shall effect a merger or similar transaction permitted under SECTION 3.22(B)(I) of the Purchase Agreement, the amount of Common Stock issued in connection with such transaction that exceeds 5% of the outstanding Common Stock of the Company as of the Date of the Purchase Agreement shall nonetheless be subject to all of the provisions of SECTION 4 hereof.

13

<PAGE>

"BOARD" shall mean the Board of Directors of the Issuer.

"CAPITAL STOCK" means and includes (i) any and all shares,

interests, participations or other equivalents of or interests in (however designated) corporate stock, including, without limitation, shares of preferred or preference stock, (ii) all partnership interests (whether general or limited) in any Person which is a partnership, (iii) all membership interests or limited liability company interests in any limited liability company, and (iv) all equity or ownership interests in any Person of any other type.

"CERTIFICATE OF INCORPORATION" means the Certificate of Incorporation of the Issuer as in effect on the Original Issue Date, and as hereafter from time to time amended, modified, supplemented or restated in accordance with the terms hereof and thereof and pursuant to applicable law.

"COMMON STOCK" means the Common Stock, $0.001 par value per share, of the Issuer and any other Capital Stock into which such stock may hereafter be changed.

"COMMON STOCK EQUIVALENT" means any Convertible Security or warrant, option or other right to subscribe for or purchase any Additional Shares of Common Stock or any Convertible Security.

"CONVERTIBLE SECURITIES" means evidences of Indebtedness, shares of Capital Stock or other Securities which are or may be at any time convertible into or exchangeable for Additional Shares of Common Stock. The term "CONVERTIBLE SECURITY" means one of the Convertible Securities.

"GOVERNMENTAL AUTHORITY" means any governmental, regulatory or self-regulatory entity, department, body, official, authority, commission, board, agency or instrumentality, whether federal, state or local, and whether domestic or foreign.

"HOLDERS" mean the Persons who shall from time to time own any Warrant. The term "Holder" means one of the Holders.

"INDEPENDENT APPRAISER" means a nationally recognized or major regional investment banking firm or firm of independent certified public accountants of recognized standing (which may be the firm that regularly examines the financial statements of the Issuer) that is regularly engaged in the business of appraising the Capital Stock or assets of corporations or other entities as going concerns, and which is not affiliated with either the Issuer or the Holder of any Warrant.

"ISSUER" means Marketing Worldwide Corporation, a Delaware corporation, and its successors.

"MAJORITY HOLDERS" means at any time the Holders of Warrants exercisable for a majority of the shares of Warrant Stock issuable under the Warrants at the time outstanding.

"ORIGINAL ISSUE DATE" means April 23, 2007.

14

<PAGE>

"OTC BULLETIN BOARD" means the over-the-counter electronic bulletin board.

"OTHER COMMON" means any other Capital Stock of the Issuer of any class which shall be authorized at any time after the date of this Warrant

(other than Common Stock) and which shall have the right to participate in the distribution of earnings and assets of the Issuer without limitation as to amount.

"OUTSTANDING COMMON STOCK" means, at any given time, the aggregate amount of outstanding shares of Common Stock, assuming full exercise, conversion or exchange (as applicable) of all options, warrants and other Securities which are convertible into or exercisable or exchangeable for, and any right to subscribe for, shares of Common Stock that are outstanding at such time.

"PERSON" means an individual, corporation, limited liability company, partnership, joint stock company, trust, unincorporated organization, joint venture, Governmental Authority or other entity of whatever nature.

"PER SHARE MARKET VALUE" means on any particular date (a) the last closing bid price per share of the Common Stock on such date on the OTC Bulletin Board or another registered national stock exchange on which the Common Stock is then listed, or if there is no such price on such date, then the closing bid price on such exchange or quotation system on the date nearest preceding such date, or (b) if the Common Stock is not listed then on the OTC Bulletin Board or any registered national stock exchange, the last closing bid price for a share of Common Stock in the over-the-counter market, as reported by the OTC Bulletin Board or in the National Quotation Bureau Incorporated or similar organization or agency succeeding to its functions of reporting prices) at the close of business on such date, or (c) if the Common Stock is not then reported by the OTC Bulletin Board or the National Quotation Bureau Incorporated (or similar organization or agency succeeding to its functions of reporting prices), then the "Pink Sheet" quotes for the applicable Trading Days preceding such date of determination, or (d) if the Common Stock is not then publicly traded the fair market value of a share of Common Stock as determined by an Independent Appraiser selected in good faith by the Majority Holders; PROVIDED, however, that the Issuer, after receipt of the determination by such Independent Appraiser, shall have the right to select an additional Independent Appraiser, in which case, the fair market value shall be equal to the average of the determinations by each such Independent Appraiser; and PROVIDED, FURTHER that all determinations of the Per Share Market Value shall be appropriately adjusted for any stock dividends, stock splits or other similar transactions during such period. The determination of fair market value by an Independent Appraiser shall be based upon the fair market value of the Issuer determined on a going concern basis as between a willing buyer and a willing seller and taking into account all relevant factors determinative of value, and shall be final and binding on all parties. In determining the fair market value of any shares of Common Stock, no consideration shall be given to any restrictions on transfer of the Common Stock imposed by agreement or by federal or state securities laws, or to the existence or absence of, or any limitations on, voting rights.

"PURCHASE AGREEMENT" means the Series A Convertible Preferred Stock Purchase Agreement dated as of April 23, 2007, among the Issuer and the Purchasers.

15

<PAGE>

"PURCHASERS" means the purchasers of the Series A Convertible Preferred Stock and the Warrants issued by the Issuer pursuant to the

Purchase Agreement.

"SECURITIES" means any debt or equity securities of the Issuer, whether now or hereafter authorized, any instrument convertible into or exchangeable for Securities or a Security, and any option, warrant or other right to purchase or acquire any Security. "Security" means one of the Securities.

"SECURITIES ACT" means the Securities Act of 1933, as amended, or any similar federal statute then in effect.

"SUBSIDIARY" means any corporation at least 50% of whose outstanding Voting Stock shall at the time be owned directly or indirectly by the Issuer or by one or more of its Subsidiaries, or by the Issuer and one or more of its Subsidiaries.

"TERM" has the meaning specified in SECTION 1 hereof.

"TRADING DAY" means (a) a day on which the Common Stock is traded on the OTC Bulletin Board, or (b) if the Common Stock is not traded on the OTC Bulletin Board, a day on which the Common Stock is quoted in the over-the-counter market as reported by the National Quotation Bureau Incorporated (or any similar organization or agency succeeding its functions of reporting prices); PROVIDED, HOWEVER, that in the event that the Common Stock is not listed or quoted as set forth in (a) or (b) hereof, then Trading Day shall mean any day except Saturday, Sunday and any day which shall be a legal holiday or a day on which banking institutions in the State of New York are authorized or required by law or other government action to close.

"VOTING STOCK" means, as applied to the Capital Stock of any corporation, Capital Stock of any class or classes (however designated) having ordinary voting power for the election of a majority of the members of the Board of Directors (or other governing body) of such corporation, other than Capital Stock having such power only by reason of the happening of a contingency.

"WARRANTS" means the Warrants issued and sold pursuant to the Purchase Agreement, including, without limitation, this Warrant, and any other warrants of like tenor issued in substitution or exchange for any thereof pursuant to the provisions of SECTION 2(C), 2(D) OR 2(E) hereof or of any of such other Warrants.

"WARRANT PRICE" initially means $0.85, as such price may be adjusted from time to time as shall result from the adjustments specified in this Warrant, including SECTION 4 hereto.

"WARRANT SHARE NUMBER" means at any time the aggregate number of shares of Warrant Stock which may at such time be purchased upon exercise of this Warrant, after giving effect to all prior adjustments and increases to such number made or required to be made under the terms hereof.

"WARRANT STOCK" means Common Stock issuable upon exercise of any Warrant or Warrants or otherwise issuable pursuant to any Warrant or Warrants.

16

<PAGE>

10.    OTHER NOTICES. In case at any time:

> (A)    the Issuer shall make any distributions to the holders of Common Stock; or
>
> (B)    the Issuer shall authorize the granting to all holders of its Common Stock of rights to subscribe for or purchase any shares of Capital Stock of any class or other rights; or
>
> (C)    there shall be any reclassification of the Capital Stock of the Issuer; or
>
> (D)    there shall be any capital reorganization by the Issuer; or
>
> (E)    there shall be any (i) consolidation or merger involving the Issuer or (ii) sale, transfer or other disposition of all or substantially all of the Issuer's property, assets or business (except a merger or other reorganization in which the Issuer shall be the surviving corporation and its shares of Capital Stock shall continue to be outstanding and unchanged and except a consolidation, merger, sale, transfer or other disposition involving a wholly-owned Subsidiary); or
>
> (F)    there shall be a voluntary or involuntary dissolution, liquidation or winding-up of the Issuer or any partial liquidation of the Issuer or distribution to holders of Common Stock;

then, in each of such cases, the Issuer shall give written notice to the Holder of the date on which (i) the books of the Issuer shall close or a record shall be taken for such dividend, distribution or subscription rights or (ii) such reorganization, reclassification, consolidation, merger, disposition, dissolution, liquidation or winding-up, as the case may be, shall take place. Such notice also shall specify the date as of which the holders of Common Stock of record shall participate in such dividend, distribution or subscription rights, or shall be entitled to exchange their certificates for Common Stock for securities or other property deliverable upon such reorganization, reclassification, consolidation, merger, disposition, dissolution, liquidation or winding-up, as the case may be. Such notice shall be given at least twenty (20) days prior to the action in question and not less than ten (10) days prior to the record date or the date on which the Issuer's transfer books are closed in respect thereto. This Warrant entitles the Holder to receive copies of all financial and other information distributed or required to be distributed to the holders of the Common Stock.

11.    AMENDMENT AND WAIVER. Any term, covenant, agreement or condition in this Warrant may be amended, or compliance therewith may be waived (either generally or in a particular instance and either retroactively or prospectively), by a written instrument or written instruments executed by the Issuer and the Majority Holders; PROVIDED, HOWEVER, that no such amendment or waiver shall reduce the Warrant Share Number, increase the Warrant Price, shorten the period during which this Warrant may be exercised or modify any provision of this SECTION 11 without the consent of the Holder of this Warrant. No consideration shall be offered or paid to any person to amend or consent to a waiver or modification of any provision of this Warrant unless the same

consideration is also offered to all holders of the Warrants.

                                    17

<PAGE>

     12.   GOVERNING LAW; JURISDICTION. This Warrant shall be governed by and
construed in accordance with the internal laws of the State of Delaware, without
giving effect to any of the conflicts of law principles which would result in
the application of the substantive law of another jurisdiction. This Warrant
shall not be interpreted or construed with any presumption against the party
causing this Warrant to be drafted. The Issuer and the Holder agree that venue
for any dispute arising under this Warrant will lie exclusively in the state or
federal courts located in New York County, New York, and the parties irrevocably
waive any right to raise FORUM NON CONVENIENS or any other argument that New
York is not the proper venue. The Issuer and the Holder irrevocably consent to
personal jurisdiction in the state and federal courts of the state of New York.
The Issuer and the Holder consent to process being served in any such suit,
action or proceeding by mailing a copy thereof to such party at the address in
effect for notices to it under this Warrant and agrees that such service shall
constitute good and sufficient service of process and notice thereof. Nothing in
this SECTION 12 shall affect or limit any right to serve process in any other
manner permitted by law. The Issuer and the Holder hereby agree that the
prevailing party in any suit, action or proceeding arising out of or relating to
this Warrant or the Purchase Agreement, shall be entitled to reimbursement for
reasonable legal fees from the non-prevailing party. The parties hereby waive
all rights to a trial by jury.

     13.   NOTICES. Any notice, demand, request, waiver or other communication
required or permitted to be given hereunder shall be in writing and shall be
effective (a) upon hand delivery by telecopy or facsimile at the address or
number designated below (if delivered on a business day during normal business
hours where such notice is to be received), or the first business day following
such delivery (if delivered other than on a business day during normal business
hours where such notice is to be received) or (b) on the second business day
following the date of mailing by express courier service, fully prepaid,
addressed to such address, or upon actual receipt of such mailing, whichever
shall first occur. The addresses for such communications shall be:

If to the Issuer:              Marketing Worldwide Corporation
                               2212 Grand Commerce Drive
                               Howell, Michigan 48855
                               Attention: James Marvin
                               Tel. No.: (517) 540-0045
                               Fax No.: (517) 540-0923

with copies (which copies
shall not constitute notice)
to:                            Weed & Co. LLP
                               4695 Mac Arthur Court, Suite 1430
                               Newport Beach, CA 92660
                               Attention: Richard O. Weed
                               Tel. No.: (949) 475-9086
                               Fax No.: (949) 475-9087

If to any Holder:              At the address of such Holder set forth on
                               EXHIBIT A to the Purchase Agreement,
                               with copies to:

                               Sadis & Goldberg LLP
                               551 Fifth Avenue, 21st Floor
                               New York, New York 10176

Attention: Steven Huttler, Esq.
Tel. No.: (212) 947-3793
Fax No.: (212) 947-3796

18

&lt;PAGE&gt;

Any party hereto may from time to time change its address for notices by giving written notice of such changed address to the other party hereto.

14.    WARRANT AGENT. The Issuer may, by written notice to each Holder of this Warrant, appoint an agent having an office in New York, New York for the purpose of issuing shares of Warrant Stock on the exercise of this Warrant pursuant to SECTION 2(E) hereof, exchanging this Warrant pursuant to SECTION 2(E) hereof or replacing this Warrant pursuant to SECTION 3(D) hereof, or any of the foregoing, and thereafter any such issuance, exchange or replacement, as the case may be, shall be made at such office by such agent.

15.    REMEDIES. The Issuer stipulates that the remedies at law of the Holder of this Warrant in the event of any default or threatened default by the Issuer in the performance of or compliance with any of the terms of this Warrant are not and will not be adequate and that, to the fullest extent permitted by law, such terms may be specifically enforced by a decree for the specific performance of any agreement contained herein or by an injunction against a violation of any of the terms hereof or otherwise.

16.    SUCCESSORS AND ASSIGNS. This Warrant and the rights evidenced hereby shall inure to the benefit of and be binding upon the successors and assigns of the Issuer, the Holder hereof and (to the extent provided herein) the Holders of Warrant Stock issued pursuant hereto, and shall be enforceable by any such Holder or Holder of Warrant Stock.

17.    CONSTRUCTION. This Warrant shall be deemed to be jointly drafted by the Company and all the Holders and shall not be construed against any person as the drafter hereof.

18.    HEADINGS. The headings of the Sections of this Warrant are for convenience of reference only and shall not, for any purpose, be deemed a part of this Warrant.

19.    REGISTRATION RIGHTS. The Holder of this Warrant is entitled to the benefit of certain registration rights with respect to the shares of Warrant Stock issuable upon the exercise of this Warrant pursuant to the Registration Rights Agreement and the registration rights with respect to the shares of Warrant Stock issuable upon the exercise of this Warrant by any subsequent Holder may only be assigned in accordance with the terms and provisions of the Registrations Rights Agreement and SECTION 2(F) hereof.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

19

&lt;PAGE&gt;

IN WITNESS WHEREOF, the Issuer has executed this Series B Warrant as of the day and year first above written.

MARKETING WORLDWIDE CORPORATION

```
                              By: /s/ Michael Winzkowski
                                  ----------------------
                              Name: Michael Winzkowski
                              Title: Chief Executive Officer
```

<div align="center">20</div>

<PAGE>

<div align="center">

EXERCISE FORM
SERIES B WARRANT

MARKETING WORLDWIDE CORPORATION

</div>

The undersigned _____, pursuant to the provisions of the within Warrant, hereby elects to purchase _____ shares of Common Stock of Marketing Worldwide Corporation covered by the within Warrant.

Dated: _____        Signature    _____

                               Address      _____
                                            _____

Number of shares of Common Stock beneficially owned or deemed beneficially owned by the Holder on the date of Exercise: _____

The undersigned is an "accredited investor" as defined in Regulation D under the Securities Act of 1933, as amended.

The undersigned intends that payment of the Warrant Price shall be made as (check one):

        Cash Exercise_____

        Cashless Exercise_____

If the Holder has elected a Cash Exercise, the Holder shall pay the sum of $_____ by certified or official bank check (or via wire transfer) to the Issuer in accordance with the terms of the Warrant.

If the Holder has elected a Cashless Exercise, a certificate shall be issued to the Holder for the number of shares equal to the whole number portion of the product of the calculation set forth below, which is _____. The Company shall pay a cash adjustment in respect of the fractional portion of the product of the calculation set forth below in an amount equal to the product of the fractional portion of such product and the Per Share Market Value on the date of exercise, which product is _____.

$$X = Y - \frac{(A)(Y)}{B}$$

Where:

The number of Ordinary Shares to be issued to the Holder _____("X").

The number of Ordinary Shares purchasable upon exercise of all of the Warrant

or, if only a portion of the Warrant is being exercised, the portion of the
Warrant being exercised _____ ("Y").

The Warrant Price _____ ("A").

The Per Share Market Value of one Ordinary Share _____ ("B").

<div align="center">21</div>

<PAGE>

<div align="center">ASSIGNMENT</div>

FOR VALUE RECEIVED, _____ hereby sells, assigns and transfers unto
_____ the within Warrant and all rights evidenced thereby and does
irrevocably constitute and appoint _____, attorney, to transfer the said
Warrant on the books of the within named corporation.

Dated: _____               Signature     _____

                                       Address       _____
                                                     _____

<div align="center">PARTIAL ASSIGNMENT</div>

FOR VALUE RECEIVED, _____ hereby sells, assigns and transfers unto
_____ the right to purchase _____ shares of Warrant Stock
evidenced by the within Warrant together with all rights therein, and does
irrevocably constitute and appoint _____, attorney, to transfer
that part of the said Warrant on the books of the within named corporation.

Dated: _____               Signature     _____

                                       Address       _____
                                                     _____

<div align="center">FOR USE BY THE ISSUER ONLY:</div>

This Warrant No. W-____ canceled (or transferred or exchanged) this _____ day of
_____, _____, shares of Common Stock issued therefor in the name of
_____, Warrant No. W-_____ issued for _____ shares of Common Stock in
the name of _____.

<div align="center">22</div>

</TEXT>
</DOCUMENT>

```
<DOCUMENT>
<TYPE>EX-4.7
<SEQUENCE>5
<FILENAME>mww_8k-ex0407.txt
<DESCRIPTION>SERIES C COMMON STOCK PURCHASE WARRANT
<TEXT>
<PAGE>
```

Exhibit 4.7

THIS WARRANT AND THE SHARES OF COMMON STOCK ISSUABLE UPON EXERCISE HEREOF HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT") OR ANY STATE SECURITIES LAWS AND MAY NOT BE SOLD, TRANSFERRED OR OTHERWISE DISPOSED OF UNLESS REGISTERED UNDER THE SECURITIES ACT AND UNDER APPLICABLE STATE SECURITIES LAWS OR THE ISSUER SHALL HAVE RECEIVED AN OPINION OF COUNSEL REASONABLY SATISFACTORY TO THE ISSUER THAT REGISTRATION OF SUCH SECURITIES UNDER THE SECURITIES ACT AND UNDER THE PROVISIONS OF APPLICABLE STATE SECURITIES LAWS IS NOT REQUIRED.

SERIES C WARRANT TO PURCHASE

SHARES OF COMMON STOCK

OF

MARKETING WORLDWIDE CORPORATION

Expires April 23, 2012

No.: W-C-07-01                                    Number of Shares: 3,500,000
Date of Issuance: April 23, 2007

     FOR VALUE RECEIVED, the undersigned, Marketing Worldwide Corporation, a Delaware corporation (together with its successors and assigns, the "ISSUER"), hereby certifies that Vision Opportunity Master Fund, Ltd. or its registered assigns is entitled to subscribe for and purchase, during the Term (as hereinafter defined), up to 3,500,000 shares (subject to adjustment as hereinafter provided) of the duly authorized, validly issued, fully paid and non-assessable Common Stock of the Issuer, at an exercise price per share equal to the Warrant Price then in effect, subject, however, to the provisions and upon the terms and conditions hereinafter set forth. Capitalized terms used in this Warrant and not otherwise defined herein shall have the respective meanings specified in SECTION 9 hereof.

     1.    TERM. The term of this Warrant shall commence on April 23, 2007 and shall expire at 6:00 p.m., Eastern Time, on April 23, 2012 (such period being the "TERM").

     2.    METHOD OF EXERCISE; PAYMENT; ISSUANCE OF NEW WARRANT; TRANSFER AND EXCHANGE.

          (a)    TIME OF EXERCISE. The purchase rights represented by this Warrant may be exercised in whole or in part during the Term.

          (b)    METHOD OF EXERCISE. The Holder hereof may exercise this Warrant, in whole or in part, by the surrender of this Warrant (with the exercise form attached hereto duly executed) at the principal office of the Issuer, and by the payment to the Issuer of an amount of consideration therefor

equal to the Warrant Price in effect on the date of such exercise multiplied by
the number of shares of Warrant Stock with respect to which this Warrant is then
being exercised, payable at such Holder's election (i) by certified or official
bank check or by wire transfer to an account designated by the Issuer, (ii) by

<center>1</center>

<PAGE>

"cashless exercise" in accordance with the provisions of SUBSECTION (C) of this
SECTION 2, but only when a registration statement under the Securities Act
providing for the resale of the Warrant Stock is not then in effect, or (iii) by
a combination of the foregoing methods of payment selected by the Holder of this
Warrant.

     (c)    CASHLESS EXERCISE. Notwithstanding any provisions herein to
the contrary and commencing one (1) year following the Original Issue Date if
(i) the Per Share Market Value of one share of Common Stock is greater than the
Warrant Price (at the date of calculation as set forth below) and (ii) a
registration statement under the Securities Act providing for the resale of the
Warrant Stock is not then in effect by the date such registration statement is
required to be effective pursuant to the Registration Rights Agreement (as
defined in the Purchase Agreement) or not effective at any time during the
Effectiveness Period (as defined in the Registration Rights Agreement) in
accordance with the terms of the Registration Rights Agreement, unless the
registration statement is not effective as a result of the Issuer exercising its
rights under SECTION 3(N) of the Registration Rights Agreement, in lieu of
exercising this Warrant by payment of cash, the Holder may exercise this Warrant
by a cashless exercise and shall receive the number of shares of Common Stock
equal to an amount (as determined below) by surrender of this Warrant at the
principal office of the Issuer together with the properly endorsed Notice of
Exercise in which event the Issuer shall issue to the Holder a number of shares
of Common Stock computed using the following formula:

$$X = Y - \frac{(A)(Y)}{B}$$

Where    X =    the number of shares of Common Stock to be issued to the
                 Holder.

           Y =    the number of shares of Common Stock purchasable upon exercise
                 of all of the Warrant or, if only a portion of the  Warrant is
                 being exercised, the portion of the Warrant being exercised.

           A =    the Warrant Price.

           B =    the Per Share Market Value of one share of Common Stock.

     (d)    ISSUANCE OF STOCK CERTIFICATES. In the event of any exercise
of this Warrant in accordance with and subject to the terms and conditions
hereof, certificates for the shares of Warrant Stock so purchased shall be dated
the date of such exercise and delivered to the Holder hereof within a reasonable
time, not exceeding three (3) Trading Days after such exercise (the "DELIVERY
DATE") or, at the request of the Holder (provided that a registration statement
under the Securities Act providing for the resale of the Warrant Stock is then
in effect), issued and delivered to the Depository Trust Company ("DTC") account
on the Holder's behalf via the Deposit Withdrawal Agent Commission System
("DWAC") within a reasonable time, not exceeding three (3) Trading Days after
such exercise, and the Holder hereof shall be deemed for all purposes to be the
holder of the shares of Warrant Stock so purchased as of the date of such

exercise. Notwithstanding the foregoing to the contrary, the Issuer or its
transfer agent shall only be obligated to issue and deliver the shares to the
DTC on a holder's behalf via DWAC if such exercise is in connection with a sale
and the Issuer and its transfer agent are participating in DTC through the DWAC
system. The Holder shall deliver this original Warrant, or an indemnification
undertaking with respect to such Warrant in the case of its loss, theft or
destruction, at such time that this Warrant is fully exercised. With respect to
partial exercises of this Warrant, the Issuer shall keep written records for the
Holder of the number of shares of Warrant Stock exercised as of each date of
exercise.

2

<PAGE>

        (e)    COMPENSATION FOR BUY-IN ON FAILURE TO TIMELY DELIVER
CERTIFICATES UPON EXERCISE. In addition to any other rights available to the
Holder, if the Issuer fails to cause its transfer agent to transmit to the
Holder a certificate or certificates representing the Warrant Stock pursuant to
an exercise on or before the Delivery Date, and if after such date the Holder is
required by its broker to purchase (in an open market transaction or otherwise)
shares of Common Stock to deliver in satisfaction of a sale by the Holder of the
Warrant Stock which the Holder anticipated receiving upon such exercise (a
"BUY-IN"), then the Issuer shall (1) pay in cash to the Holder the amount by
which (x) the Holder's total purchase price (including brokerage commissions, if
any) for the shares of Common Stock so purchased exceeds (y) the amount obtained
by multiplying (A) the number of shares of Warrant Stock that the Issuer was
required to deliver to the Holder in connection with the exercise at issue TIMES
(B) the price at which the sell order giving rise to such purchase obligation
was executed, and (2) at the option of the Holder, either reinstate the portion
of the Warrant and equivalent number of shares of Warrant Stock for which such
exercise was not honored or deliver to the Holder the number of shares of Common
Stock that would have been issued had the Issuer timely complied with its
exercise and delivery obligations hereunder. For example, if the Holder
purchases Common Stock having a total purchase price of $11,000 to cover a
Buy-In with respect to an attempted exercise of shares of Common Stock with an
aggregate sale price giving rise to such purchase obligation of $10,000, under
clause (1) of the immediately preceding sentence the Issuer shall be required to
pay the Holder $1,000. The Holder shall provide the Issuer written notice
indicating the amounts payable to the Holder in respect of the Buy-In, together
with applicable confirmations and other evidence reasonably requested by the
Issuer. Nothing herein shall limit a Holder's right to pursue any other remedies
available to it hereunder, at law or in equity including, without limitation, a
decree of specific performance and/or injunctive relief with respect to the
Issuer's failure to timely deliver certificates representing shares of Common
Stock upon exercise of this Warrant as required pursuant to the terms hereof.

        (f)    TRANSFERABILITY OF WARRANT. Subject to SECTION 2(H) hereof,
this Warrant may be transferred by a Holder, in whole or in part, without the
consent of the Issuer. If transferred pursuant to this paragraph, this Warrant
may be transferred on the books of the Issuer by the Holder hereof in person or
by duly authorized attorney, upon surrender of this Warrant at the principal
office of the Issuer, properly endorsed (by the Holder executing an assignment
in the form attached hereto) and upon payment of any necessary transfer tax or
other governmental charge imposed upon such transfer. This Warrant is
exchangeable at the principal office of the Issuer for Warrants to purchase the
same aggregate number of shares of Warrant Stock, each new Warrant to represent
the right to purchase such number of shares of Warrant Stock as the Holder
hereof shall designate at the time of such exchange. All Warrants issued on
transfers or exchanges shall be dated the Original Issue Date and shall be
identical with this Warrant except as to the number of shares of Warrant Stock

issuable pursuant thereto.

(g)    CONTINUING RIGHTS OF HOLDER. The Issuer will, at the time of
or at any time after each exercise of this Warrant, upon the request of the
Holder hereof, acknowledge in writing the extent, if any, of its continuing
obligation to afford to such Holder all rights to which such Holder shall
continue to be entitled after such exercise in accordance with the terms of this
Warrant; PROVIDED that if any such Holder shall fail to make any such request,
the failure shall not affect the continuing obligation of the Issuer to afford
such rights to such Holder.

3

<PAGE>

(h)    COMPLIANCE WITH SECURITIES LAWS.

(i)    The Holder of this Warrant, by acceptance hereof,
acknowledges that this Warrant and the shares of Warrant Stock to be
issued upon exercise hereof are being acquired solely for the Holder's own
account and not as a nominee for any other party, and for investment, and
that the Holder will not offer, sell or otherwise dispose of this Warrant
or any shares of Warrant Stock to be issued upon exercise hereof except
pursuant to an effective registration statement, or an exemption from
registration, under the Securities Act and any applicable state securities
laws.

(ii)    Except as provided in paragraph (iii) below, this
Warrant and all certificates representing shares of Warrant Stock issued
upon exercise hereof shall be stamped or imprinted with a legend in
substantially the following form:

THIS WARRANT AND THE SHARES OF COMMON STOCK ISSUABLE UPON
EXERCISE HEREOF HAVE NOT BEEN REGISTERED UNDER THE SECURITIES
ACT OF 1933, AS AMENDED (THE "SECURITIES ACT") OR ANY STATE
SECURITIES LAWS AND MAY NOT BE SOLD, TRANSFERRED OR OTHERWISE
DISPOSED OF UNLESS REGISTERED UNDER THE SECURITIES ACT AND
UNDER APPLICABLE STATE SECURITIES LAWS OR THE ISSUER SHALL
HAVE RECEIVED AN OPINION OF COUNSEL REASONABLY SATISFACTORY TO
THE ISSUER THAT REGISTRATION OF SUCH SECURITIES UNDER THE
SECURITIES ACT AND UNDER THE PROVISIONS OF APPLICABLE STATE
SECURITIES LAWS IS NOT REQUIRED.

(iii) The Issuer agrees to reissue this Warrant or
certificates representing any of the Warrant Stock, without the legend set
forth above if at such time, prior to making any transfer of any such
securities, the Holder shall give written notice to the Issuer describing
the manner and terms of such transfer. Such proposed transfer will not be
effected until: (a) either (i) the Issuer has received an opinion of
counsel reasonably satisfactory to the Issuer, to the effect that the
registration of such securities under the Securities Act is not required
in connection with such proposed transfer, (ii) a registration statement
under the Securities Act covering such proposed disposition has been filed
by the Issuer with the Securities and Exchange Commission and has become
effective under the Securities Act, (iii) the Issuer has received other
evidence reasonably satisfactory to the Issuer that such registration and
qualification under the Securities Act and state securities laws are not
required, or (iv) the Holder provides the Issuer with reasonable
assurances that such security can be sold pursuant to Rule 144 under the
Securities Act; and (b) either (i) the Issuer has received an opinion of
counsel reasonably satisfactory to the Issuer, to the effect that

registration or qualification under the securities or "blue sky" laws of
any state is not required in connection with such proposed disposition, or
(ii) compliance with applicable state securities or "blue sky" laws has
been effected or a valid exemption exists with respect thereto. The Issuer
will respond to any such notice from a holder within three (3) Trading
Days. In the case of any proposed transfer under this SECTION 2(H), the
Issuer will use reasonable efforts to comply with any such applicable
state securities or "blue sky" laws, but shall in no event be required,
(x) to qualify to do business in any state where it is not then qualified,

4

<PAGE>

(y) to take any action that would subject it to tax or to the general
service of process in any state where it is not then subject, or (z) to
comply with state securities or "blue sky" laws of any state for which
registration by coordination is unavailable to the Issuer. The
restrictions on transfer contained in this SECTION 2(H) shall be in
addition to, and not by way of limitation of, any other restrictions on
transfer contained in any other section of this Warrant. Whenever a
certificate representing the Warrant Stock is required to be issued to a
the Holder without a legend, in lieu of delivering physical certificates
representing the Warrant Stock, the Issuer shall cause its transfer agent
to electronically transmit the Warrant Stock to the Holder by crediting
the account of the Holder's Prime Broker with DTC through its DWAC system
(to the extent not inconsistent with any provisions of this Warrant or the
Purchase Agreement).

        (i)    ACCREDITED INVESTOR STATUS. In no event may the Holder
exercise this Warrant in whole or in part unless the Holder is an "accredited
investor" as defined in Regulation D under the Securities Act.

    3.    STOCK FULLY PAID; RESERVATION AND LISTING OF SHARES; COVENANTS.

        (a)    STOCK FULLY PAID. The Issuer represents, warrants, covenants
and agrees that all shares of Warrant Stock which may be issued upon the
exercise of this Warrant or otherwise hereunder will, when issued in accordance
with the terms of this Warrant, be duly authorized, validly issued, fully paid
and non-assessable and free from all taxes, liens and charges. The Issuer
further covenants and agrees that during the period within which this Warrant
may be exercised, the Issuer will at all times have authorized and reserved for
the purpose of the issuance upon exercise of this Warrant a number of authorized
but unissued shares of Common Stock equal to at least one hundred percent (100%)
of the number of shares of Common Stock issuable upon one exercise of this Warrant
without regard to any limitations on exercise.

        (b)    RESERVATION. If any shares of Common Stock required to be
reserved for issuance upon exercise of this Warrant or as otherwise provided
hereunder require registration or qualification with any Governmental Authority
under any federal or state law before such shares may be so issued, the Issuer
will in good faith use its best efforts as expeditiously as possible at its
expense to cause such shares to be duly registered or qualified. If the Issuer
shall list any shares of Common Stock on any securities exchange or market it
will, at its expense, list thereon, and maintain and increase when necessary
such listing, of, all shares of Warrant Stock from time to time issued upon
exercise of this Warrant or as otherwise provided hereunder (PROVIDED that such
Warrant Stock has been registered pursuant to a registration statement under the
Securities Act then in effect), and, to the extent permissible under the
applicable securities exchange rules, all unissued shares of Warrant Stock which
are at any time issuable hereunder, so long as any shares of Common Stock shall

be so listed. The Issuer will also so list on each securities exchange or market, and will maintain such listing of, any other securities which the Holder of this Warrant shall be entitled to receive upon the exercise of this Warrant if at the time any securities of the same class shall be listed on such securities exchange or market by the Issuer.

(c)   COVENANTS. The Issuer shall not by any action including, without limitation, amending the Certificate of Incorporation or the by-laws of the Issuer, or through any reorganization, transfer of assets, consolidation, merger, dissolution, issue or sale of securities or any other action, avoid or seek to avoid the observance or performance of any of the terms of this Warrant, but will at all times in good faith assist in the carrying out of all such terms and in the taking of all such actions as may be necessary or appropriate to

5

<PAGE>

protect the rights of the Holder hereof against dilution (to the extent specifically provided herein) or impairment. Without limiting the generality of the foregoing, the Issuer will (i) not permit the par value, if any, of its Common Stock to exceed the then effective Warrant Price, (ii) not amend or modify any provision of the Certificate of Incorporation or by-laws of the Issuer in any manner that would adversely affect the rights of the Holders of the Warrants, (iii) take all such action as may be reasonably necessary in order that the Issuer may validly and legally issue fully paid and nonassessable shares of Common Stock, free and clear of any liens, claims, encumbrances and restrictions (other than as provided herein) upon the exercise of this Warrant, and (iv) use its best efforts to obtain all such authorizations, exemptions or consents from any public regulatory body having jurisdiction thereof as may be reasonably necessary to enable the Issuer to perform its obligations under this Warrant.

(d)   LOSS, THEFT, DESTRUCTION, MUTILATION OF WARRANTS. Upon receipt of evidence satisfactory to the Issuer of the ownership of and the loss, theft, destruction or mutilation of any Warrant and, in the case of any such loss, theft or destruction, upon receipt of indemnity or security satisfactory to the Issuer or, in the case of any such mutilation, upon surrender and cancellation of such Warrant, the Issuer will make and deliver, in lieu of such lost, stolen, destroyed or mutilated Warrant, a new Warrant of like tenor and representing the right to purchase the same number of shares of Common Stock.

(e)   PAYMENT OF TAXES. The Issuer will pay any documentary stamp taxes attributable to the initial issuance of the Warrant Stock issuable upon exercise of this Warrant; PROVIDED, HOWEVER, that the Issuer shall not be required to pay any tax or taxes which may be payable in respect of any transfer involved in the issuance or delivery of any certificates representing Warrant Stock in a name other than that of the Holder in respect to which such shares are issued.

4.   ADJUSTMENT OF WARRANT PRICE AND NUMBER OF SHARES ISSUABLE UPON EXERCISE. The Warrant Price and the number of shares of Warrant Stock that may be purchased upon exercise of this Warrant shall be subject to adjustment from time to time as set forth in this SECTION 4. The Issuer shall give the Holder notice of any event described below which requires an adjustment pursuant to this SECTION 4 in accordance with the notice provisions set forth in SECTION 5.

(a)   RECAPITALIZATION, REORGANIZATION, RECLASSIFICATION, CONSOLIDATION, MERGER OR SALE.

(i)   In case the Issuer after the Original Issue Date shall

do any of the following (each, a "TRIGGERING EVENT"): (a) consolidate or
merge with or into any other Person and the Issuer shall not be the
continuing or surviving Person of such consolidation or merger, or (b)
permit any other Person to consolidate with or merge into the Issuer and
the Issuer shall be the continuing or surviving Person but, in connection
with such consolidation or merger, any Capital Stock of the Issuer shall
be changed into or exchanged for Securities of any other Person or cash or
any other property, or (c) transfer all or substantially all of its
properties or assets to any other Person, or (d) effect a capital
reorganization or reclassification of its Capital Stock, then, and in the
case of each such Triggering Event, proper provision shall be made to the
Warrant Price and the number of shares of Warrant Stock that may be
purchased upon exercise of this Warrant so that, upon the basis and the
terms and in the manner provided in this Warrant, the Holder of this
Warrant shall be entitled upon the exercise hereof at any time after the
consummation of such Triggering Event, to the extent this Warrant is not

<div align="center">6</div>

&lt;PAGE&gt;

exercised prior to such Triggering Event, to receive at the Warrant Price
as adjusted to take into account the consummation of such Triggering
Event, in lieu of the Common Stock issuable upon such exercise of this
Warrant prior to such Triggering Event, the Securities, cash and property
to which such Holder would have been entitled upon the consummation of
such Triggering Event if such Holder had exercised the rights represented
by this Warrant immediately prior thereto (including the right of a
shareholder to elect the type of consideration it will receive upon a
Triggering Event), subject to adjustments (subsequent to such corporate
action) as nearly equivalent as possible to the adjustments provided for
elsewhere in this SECTION 4, and the Warrant Price shall be adjusted to
equal the product of (A) the closing price of the common stock of the
continuing or surviving Person as a result of such Triggering Event as of
the date immediately preceding the date of the consummation of such
Triggering Event multiplied by (B) the quotient of (i) the Warrant Price
divided by (ii) the Per Share Market Value of the Common Stock as of the
date immediately preceding the Original Issue Date; PROVIDED, HOWEVER, the
Holder at its option may elect to receive an amount in cash equal to the
value of this Warrant calculated in accordance with the Black-Scholes
formula. Immediately upon the occurrence of a Triggering Event, the Issuer
shall notify the Holder in writing of such Triggering Event and provide
the calculations in determining the number of shares of Warrant Stock
issuable upon exercise of the new warrant and the adjusted Warrant Price.
Upon the Holder's request, the continuing or surviving Person as a result
of such Triggering Event shall issue to the Holder a new warrant of like
tenor evidencing the right to purchase the adjusted number of shares of
Warrant Stock and the adjusted Warrant Price pursuant to the terms and
provisions of this SECTION 4(A)(I). Notwithstanding the foregoing to the
contrary, this SECTION 4(A)(I) shall only apply if the surviving entity
pursuant to any such Triggering Event has a class of equity securities
registered pursuant to the Securities Exchange Act of 1934, as amended,
and its common stock is listed or quoted on a national securities
exchange, national automated quotation system or the OTC Bulletin Board.
In the event that the surviving entity pursuant to any such Triggering
Event is not a public company (or similar Person) that is registered
pursuant to the Securities Exchange Act of 1934, as amended, or its common
stock is not listed or quoted on a national securities exchange, national
automated quotation system or the OTC Bulletin Board, then the Holder
shall have the right to demand that the Issuer pay to the Holder an amount
in cash equal to the value of this Warrant calculated in accordance with

the Black-Scholes formula.

(ii)  In the event that the Holder has elected not to exercise this Warrant prior to the consummation of a Triggering Event and has also elected not to receive an amount in cash equal to the value of this Warrant calculated in accordance with the Black-Scholes formula pursuant to the provisions of SECTION 4(A)(I) above, so long as the surviving entity pursuant to any Triggering Event is a company that has a class of equity securities registered pursuant to the Securities Exchange Act of 1934, as amended, and its common stock is listed or quoted on a national securities exchange, national automated quotation system or the OTC Bulletin Board, the surviving entity and/or each Person (other than the Issuer) which may be required to deliver any Securities, cash or property upon the exercise of this Warrant as provided herein shall assume, by written instrument delivered to, and reasonably satisfactory to, the Holder of this Warrant, (A) the obligations of the Issuer under this Warrant (and if the Issuer shall survive the consummation of such Triggering Event, such assumption shall be in addition to, and shall not release the Issuer from, any continuing obligations of the Issuer under this Warrant) and (B) the obligation to deliver to such Holder such Securities, cash or property as, in accordance with the foregoing

7

<PAGE>

provisions of this SUBSECTION (A), such Holder shall be entitled to receive, and the surviving entity and/or each such Person shall have similarly delivered to such Holder an opinion of counsel for the surviving entity and/or each such Person, which counsel shall be reasonably satisfactory to such Holder, or in the alternative, a written acknowledgement executed by the President or Chief Financial Officer of the Issuer, stating that this Warrant shall thereafter continue in full force and effect and the terms hereof (including, without limitation, all of the provisions of this SUBSECTION (A)) shall be applicable to the Securities, cash or property which the surviving entity and/or each such Person may be required to deliver upon any exercise of this Warrant or the exercise of any rights pursuant hereto.

(b)    STOCK DIVIDENDS, SUBDIVISIONS AND COMBINATIONS. If at any time the Issuer shall:

(i)    make or issue or set a record date for the holders of the Common Stock for the purpose of entitling them to receive a dividend payable in, or other distribution of, shares of Common Stock,

(ii)   subdivide its outstanding shares of Common Stock into a larger number of shares of Common Stock, or

(iii)  combine its outstanding shares of Common Stock into a smaller number of shares of Common Stock,

then (1) the number of shares of Common Stock for which this Warrant is exercisable immediately after the occurrence of any such event shall be adjusted to equal the number of shares of Common Stock which a record holder of the same number of shares of Common Stock for which this Warrant is exercisable immediately prior to the occurrence of such event would own or be entitled to receive after the happening of such event, and (2) the Warrant Price then in effect shall be adjusted to equal (A) the Warrant Price then in effect multiplied by the number of shares of Common Stock for which this Warrant is exercisable immediately prior to the adjustment divided by (B) the number of

shares of Common Stock for which this Warrant is exercisable immediately after such adjustment.

      (c)    CERTAIN OTHER DISTRIBUTIONS. If at any time the Issuer shall make or issue or set a record date for the holders of the Common Stock for the purpose of entitling them to receive any dividend or other distribution of:

      (i)    cash (other than a cash dividend payable out of earnings or earned surplus legally available for the payment of dividends under the laws of the jurisdiction of incorporation of the Issuer),

      (ii)   any evidences of its indebtedness, any shares of stock of any class or any other securities or property of any nature whatsoever (other than cash, Common Stock Equivalents or Additional Shares of Common Stock), or

      (iii) any warrants or other rights to subscribe for or purchase any evidences of its indebtedness, any shares of stock of any class or any other securities or property of any nature whatsoever (other than cash, Common Stock Equivalents or Additional Shares of Common Stock), then (1) the number of shares of Common Stock for which this Warrant is exercisable shall be adjusted to equal the product of the number of shares

8

<PAGE>

of Common Stock for which this Warrant is exercisable immediately prior to such adjustment multiplied by a fraction (A) the numerator of which shall be the Per Share Market Value of Common Stock at the date of taking such record and (B) the denominator of which shall be such Per Share Market Value minus the amount allocable to one share of Common Stock of any such cash so distributable and of the fair value (as determined in good faith by the Board of Directors of the Issuer and supported by an opinion from an investment banking firm mutually agreed upon by the Issuer and the Holder) of any and all such evidences of indebtedness, shares of stock, other securities or property or warrants or other subscription or purchase rights so distributable, and (2) the Warrant Price then in effect shall be adjusted to equal (A) the Warrant Price then in effect multiplied by the number of shares of Common Stock for which this Warrant is exercisable immediately prior to the adjustment divided by (B) the number of shares of Common Stock for which this Warrant is exercisable immediately after such adjustment. A reclassification of the Common Stock (other than a change in par value, or from par value to no par value or from no par value to par value) into shares of Common Stock and shares of any other class of stock shall be deemed a distribution by the Issuer to the holders of its Common Stock of such shares of such other class of stock within the meaning of this SECTION 4(C) and, if the outstanding shares of Common Stock shall be changed into a larger or smaller number of shares of Common Stock as a part of such reclassification, such change shall be deemed a subdivision or combination, as the case may be, of the outstanding shares of Common Stock within the meaning of SECTION 4(B).

      (d)    ISSUANCE OF ADDITIONAL SHARES OF COMMON STOCK. In the event the Issuer shall at any time within two (2) years following the Original Issuance Date (the "FULL RATCHET PERIOD") issue any Additional Shares of Common Stock (otherwise than as provided in the foregoing SUBSECTIONS (B) through (c) of this SECTION 4), at a price per share less than the Warrant Price then in effect or without consideration, then the Warrant Price upon each such issuance shall be adjusted to the price equal to the consideration per share paid for such Additional Shares of Common Stock.

(e)    ISSUANCE OF COMMON STOCK EQUIVALENTS. In the event the Issuer shall at any time within the Full Ratchet Period take a record of the holders of its Common Stock for the purpose of entitling them to receive a distribution of, or shall in any manner (whether directly or by assumption in a merger in which the Issuer is the surviving Person) issue or sell, any Common Stock Equivalents, whether or not the rights to exchange or convert thereunder are immediately exercisable, and the price per share for which Common Stock is issuable upon such conversion or exchange shall be less than the Warrant Price in effect immediately prior to the time of such issue or sale, or if, after any such issuance of Common Stock Equivalents, the price per share for which Additional Shares of Common Stock may be issuable thereafter is amended or adjusted, and such price as so amended shall be less than the Warrant Price in effect at the time of such amendment or adjustment, then the Warrant Price then in effect shall be adjusted as provided in SECTION 4(D). No further adjustments of the number of shares of Common Stock for which this Warrant is exercisable and the Warrant Price then in effect shall be made upon the actual issue of such Common Stock upon conversion or exchange of such Common Stock Equivalents.

(f)    SUBSEQUENT COMMON STOCK AND COMMON STOCK EQUIVALENTS ISSUES. In the event the Company, shall, at any time after the Full Ratchet Period, issue or sell any Additional Shares of Common Stock or Common Stock Equivalents (otherwise than as provided in the foregoing SUBSECTIONS (A) THROUGH (E) OF THIS SECTION 4), at a price per share less than the Warrant Price, or without

9

<PAGE>

consideration, the Warrant Price then in effect upon each such issuance shall be adjusted to that price (rounded to the nearest cent) determined by multiplying the Warrant Price by a fraction: (1) the numerator of which shall be equal to the SUM of (A) the number of shares of Common Stock outstanding immediately prior to the issuance of such Additional Shares of Common Stock PLUS (B) the number of shares of Common Stock (rounded to the nearest whole share) which the aggregate consideration for the total number of such Additional Shares of Common Stock so issued would purchase at a price per share equal to the then Warrant Price; and (2) the denominator of which shall be equal to the number of shares of Common Stock outstanding immediately after the issuance of such Additional Shares of Common Stock. No adjustment of the number of shares of Common Stock shall be made upon the issuance of any Additional Shares of Common Stock which are issued pursuant to the exercise of any warrants or other subscription or purchase rights or pursuant to the exercise of any conversion or exchange rights in any Common Stock Equivalents if any such adjustment shall previously have been made upon the issuance of such warrants or other rights or upon the issuance of such Common Stock Equivalents (or upon the issuance of any warrant or other rights therefore).

(g)    OTHER PROVISIONS APPLICABLE TO ADJUSTMENTS UNDER THIS SECTION. The following provisions shall be applicable to the making of adjustments of the number of shares of Common Stock for which this Warrant is exercisable and the Warrant Price then in effect provided for in this SECTION 4:

(i)    COMPUTATION OF CONSIDERATION. To the extent that any Additional Shares of Common Stock or any Common Stock Equivalents (or any warrants or other rights therefor) shall be issued for cash consideration, the consideration received by the Issuer therefor shall be the amount of the cash received by the Issuer therefor, or, if such Additional Shares of Common Stock or Common Stock Equivalents are offered by the Issuer for subscription, the subscription price, or, if such Additional Shares of Common Stock or Common Stock Equivalents are sold to underwriters or

dealers for public offering without a subscription offering, the initial public offering price (in any such case subtracting any amounts paid or receivable for accrued interest or accrued dividends and without taking into account any compensation, discounts or expenses paid or incurred by the Issuer for and in the underwriting of, or otherwise in connection with, the issuance thereof). In connection with any merger or consolidation in which the Issuer is the surviving Person (other than any consolidation or merger in which the previously outstanding shares of Common Stock of the Issuer shall be changed to or exchanged for the stock or other securities of another Person), the amount of consideration therefore shall be, deemed to be the fair value, as determined reasonably and in good faith by the Board, of such portion of the assets and business of the nonsurviving Person as the Board may determine to be attributable to such shares of Common Stock or Common Stock Equivalents, as the case may be. The consideration for any Additional Shares of Common Stock issuable pursuant to any warrants or other rights to subscribe for or purchase the same shall be the consideration received by the Issuer for issuing such warrants or other rights plus the additional consideration payable to the Issuer upon exercise of such warrants or other rights. The consideration for any Additional Shares of Common Stock issuable pursuant to the terms of any Common Stock Equivalents shall be the consideration received by the Issuer for issuing warrants or other rights to subscribe for or purchase such Common Stock Equivalents, plus the consideration paid or payable to the Issuer in respect of the subscription for or purchase of such Common Stock Equivalents, plus the additional consideration, if any, payable to the Issuer upon the exercise of the right of conversion or

10

<PAGE>

exchange in such Common Stock Equivalents. In the event of any consolidation or merger of the Issuer in which the Issuer is not the surviving Person or in which the previously outstanding shares of Common Stock of the Issuer shall be changed into or exchanged for the stock or other securities of another Person, or in the event of any sale of all or substantially all of the assets of the Issuer for stock or other securities of any Person, the Issuer shall be deemed to have issued a number of shares of its Common Stock for stock or securities or other property of the other Person computed on the basis of the actual exchange ratio on which the transaction was predicated, and for a consideration equal to the fair market value on the date of such transaction of all such stock or securities or other property of the other Person. In the event any consideration received by the Issuer for any securities consists of property other than cash, the fair market value thereof at the time of issuance or as otherwise applicable shall be as determined in good faith by the Board. In the event Common Stock is issued with other shares or securities or other assets of the Issuer for consideration which covers both, the consideration computed as provided in this SECTION 4(G)(I) shall be allocated among such securities and assets as determined in good faith by the Board.

(ii)  WHEN ADJUSTMENTS TO BE MADE. The adjustments required by this SECTION 4 shall be made whenever and as often as any specified event requiring an adjustment shall occur, except that any adjustment of the number of shares of Common Stock for which this Warrant is exercisable that would otherwise be required may be postponed (except in the case of a subdivision or combination of shares of the Common Stock, as provided for in SECTION 4(B)) up to, but not beyond the date of exercise if such adjustment either by itself or with other adjustments not previously made adds or subtracts less than one percent (1%) of the shares of Common Stock

for which this Warrant is exercisable immediately prior to the making of
such adjustment. Any adjustment representing a change of less than such
minimum amount (except as aforesaid) which is postponed shall be carried
forward and made (x) as soon as such adjustment, together with other
adjustments required by this SECTION 4 and not previously made, would
result in a minimum adjustment, or (y) on the date of exercise. For the
purpose of any adjustment, any specified event shall be deemed to have
occurred at the close of business on the date of its occurrence.

      (iii) FRACTIONAL INTERESTS. In computing adjustments under
this SECTION 4, fractional interests in Common Stock shall be taken into
account to the nearest one one-hundredth (1/100th) of a share.

      (iv)  WHEN ADJUSTMENT NOT REQUIRED. If the Issuer shall take a
record of the holders of its Common Stock for the purpose of entitling
them to receive a dividend or distribution or subscription or purchase
rights and shall, thereafter and before the distribution to stockholders
thereof, legally abandon its plan to pay or deliver such dividend,
distribution, subscription or purchase rights, then thereafter no
adjustment shall be required by reason of the taking of such record and
any such adjustment previously made in respect thereof shall be rescinded
and annulled.

    (h)  FORM OF WARRANT AFTER ADJUSTMENTS. The form of this Warrant
need not be changed because of any adjustments in the Warrant Price or the
number and kind of Securities purchasable upon the exercise of this Warrant.

                        11

&lt;PAGE&gt;

    (i)  ESCROW OF WARRANT STOCK. If after any property becomes
distributable pursuant to this SECTION 4 by reason of the taking of any record
of the holders of Common Stock, but prior to the occurrence of the event for
which such record is taken, and the Holder exercises this Warrant, any shares of
Common Stock issuable upon exercise by reason of such adjustment shall be deemed
the last shares of Common Stock for which this Warrant is exercised
(notwithstanding any other provision to the contrary herein) and such shares or
other property shall be held in escrow for the Holder by the Issuer to be issued
to the Holder upon and to the extent that the event actually takes place, upon
payment of the current Warrant Price. Notwithstanding any other provision to the
contrary herein, if the event for which such record was taken fails to occur or
is rescinded, then such escrowed shares shall be cancelled by the Issuer and
escrowed property returned.

    5.    NOTICE OF ADJUSTMENTS. Whenever the Warrant Price or Warrant Share
Number shall be adjusted pursuant to SECTION 4 hereof (for purposes of this
SECTION 5, each an "ADJUSTMENT"), the Issuer shall cause its Chief Financial
Officer to prepare and execute a certificate setting forth, in reasonable
detail, the event requiring the Adjustment, the amount of the Adjustment, the
method by which such Adjustment was calculated (including a description of the
basis on which the Board made any determination hereunder), and the Warrant
Price and Warrant Share Number after giving effect to such Adjustment, and shall
cause copies of such certificate to be delivered to the Holder of this Warrant
promptly after each Adjustment. Any dispute between the Issuer and the Holder of
this Warrant with respect to the matters set forth in such certificate may at
the option of the Holder of this Warrant be submitted to an Independent
Appraiser selected by the Holder; PROVIDED that the Issuer shall have ten (10)
days after receipt of notice from such Holder of its selection of such
Independent Appraiser to object thereto, in which case such Holder shall select
another such Independent Appraiser and the Issuer shall have no such right of

objection. The Independent Appraiser selected by the Holder of this WAIVER WARRANT as provided in the preceding sentence shall be instructed to deliver a written opinion as to such matters to the Issuer and such Holder within thirty (30) days after submission to it of such dispute. Such opinion shall be final and binding on the parties hereto. The costs and expenses of the initial firm selected as Independent Appraiser shall be paid equally by the Issuer and the Holder and, in the case of an objection by the Issuer, the costs and expenses of the subsequent firm selected as Independent Appraiser shall be paid in full by the Issuer.

6.    FRACTIONAL SHARES. No fractional shares of Warrant Stock will be issued in connection with any exercise hereof, but in lieu of such fractional shares, the Issuer shall round the number of shares to be issued upon exercise up to the nearest whole number of shares.

7.    OWNERSHIP CAP AND EXERCISE RESTRICTION. Notwithstanding anything to the contrary set forth in this Warrant, at no time may a Holder of this Warrant exercise this Warrant if the number of shares of Common Stock to be issued pursuant to such exercise would exceed, when aggregated with all other shares of Common Stock owned by such Holder at such time, the number of shares of Common Stock which would result in such Holder beneficially owning (as determined in accordance with Section 13(d) of the Exchange Act and the rules thereunder) in excess of 9.99% of the then issued and outstanding shares of Common Stock; PROVIDED, HOWEVER, that upon a holder of this Warrant providing the Issuer with sixty-one (61) days notice (pursuant to SECTION 13 hereof) (the "WAIVER NOTICE") that such Holder would like to waive this SECTION 7 with regard to any or all shares of Common Stock issuable upon exercise of this Warrant, this SECTION 7 will be of no force or effect with regard to all or a portion of the Warrant referenced in the Waiver Notice; PROVIDED, FURTHER, that this provision shall be of no further force or effect during the sixty-one (61) days immediately preceding the expiration of the term of this Warrant.

12

<PAGE>

8.    ISSUER'S REDEMPTION OPTION. If (A) the Per Share Market Value of the Common Stock for any ten (10) consecutive Trading Days equals or exceeds $4.75 per share (as may be adjusted for any stock splits or combinations of the Common Stock) and (B) the trading volume of the Common Stock for each Trading Day of such ten (10) Trading Day period equals or exceeds 20,000 shares of Common Stock, the Issuer may, at any time thereafter upon ten (10) Trading Days prior written notice (the "ISSUER REDEMPTION NOTICE") to the Holder, redeem the unexercised portion of this Warrant in cash at a price equal to the number of shares of Warrant Stock with respect to the unexercised portion of this Warrant multiplied by $0.001 (the "ISSUER REDEMPTION PRICE"); PROVIDED, THAT, in connection with any redemption by the Issuer under this SECTION 8, (A) the registration statement (the "REGISTRATION STATEMENT") filed by the Issuer with the Securities and Exchange Commission providing for the resale of the Warrant Stock and the shares of Common Stock issued pursuant to the Purchase Agreement is then in effect and has been effective, without lapse or suspension of any kind, for a period of sixty (60) consecutive calendar days, (B) trading in the Common Stock shall not have been suspended by the Securities and Exchange Commission or the OTC Bulletin Board (or other exchange or market on which the Common Stock is trading), (C) the Issuer is in material compliance with the terms and conditions of this Warrant and the other Transaction Documents (as defined in the Purchase Agreement) and (D) the Issuer is not in possession of any material non-public information; PROVIDED, FURTHER, that the Registration Statement is in effect from the date of delivery of the Issuer Redemption Notice until the date which is the later of (1) the date the Holder exercises the Warrant pursuant to the Issuer Redemption Notice and (2) the twentieth (20th) Trading Day after the Holder receives the Issuer Redemption Notice (the "EARLY

TERMINATION DATE"). The rights and privileges granted pursuant to this Warrant with respect to the shares of Warrant Stock subject to the Issuer Redemption Notice (the "REDEEMED WARRANT SHARES") shall expire on the Early Termination Date if this Warrant is not exercised with respect to such Redeemed Warrant Shares prior to such Early Termination Date. The Issuer's Redemption Notice shall state the date of redemption which date shall be the twenty-first (21st) Trading Day after the Issuer has delivered the Issuer's Redemption Notice (the "ISSUER'S REDEMPTION DATE"), the Issuer's Redemption Price and the number of shares to be redeemed by the Issuer. The Issuer shall not send a Issuer's Redemption Notice unless it has good and clear funds for a minimum of the amount it intends to redeem in a bank account controlled by the Issuer. The Issuer shall deliver the Issuer's Redemption Price to the Holder on the Issuer's Redemption Date. Not later than five (5) days after receipt of the Issuer Redemption Price, Holder shall return to the Issuer for cancellation the original Warrant to be redeemed. If the Issuer fails to pay the Issuer's Redemption Price by the Issuer's Redemption Date, the redemption will be declared null and void. Notwithstanding anything in the foregoing to the contrary, if the Holder may not exercise this Warrant as a result of the restriction contained in SECTION 7 hereof, the Issuer Redemption Notice shall be deemed null and void and shall not be deemed effective until the date that the Holder may exercise this Warrant in accordance with SECTION 7 hereof.

    9.    DEFINITIONS. For the purposes of this Warrant, the following terms have the following meanings:

        "ADDITIONAL SHARES OF COMMON STOCK" means all shares of Common Stock issued by the Issuer after the Original Issue Date, and all shares of Other Common, if any, issued by the Issuer after the Original Issue Date, except: (i) securities issued (other than for cash) in connection with a merger, acquisition, or consolidation that do not exceed 5% of the outstanding Common Stock of the Issuer as of the date of the Purchase Agreement (such percentage subject to adjustment in a manner consistent with the adjustments to the Warrant Price contemplated in SECTION 4

                                13

<PAGE>

        hereof), (ii) securities issued pursuant to the conversion or exercise of convertible or exercisable securities issued or outstanding on or prior to the date of the Purchase Agreement or issued pursuant to the Purchase Agreement (so long as the conversion or exercise price in such securities are not amended to lower such price and/or adversely affect the Holders), (iii) the Warrant Stock, (iv) Common Stock issued or the issuance or grants of options to purchase Common Stock pursuant to the Company's stock option plans and employee stock purchase plans that either (x) exist on the date of the Purchase Agreement, or (y) do not exceed ten percent (10%) of the outstanding Common Stock of the Company as of the date of the Purchase Agreement, and (v) any warrants issued to the placement agent and its designees for the transactions contemplated by the Purchase Agreement. For the avoidance of doubt, notwithstanding clause (i) of this paragraph, in the event that the Company shall effect a merger or similar transaction permitted under SECTION 3.22(B)(I) of the Purchase Agreement, the amount of Common Stock issued in connection with such transaction that exceeds 5% of the outstanding Common Stock of the Company as of the Date of the Purchase Agreement shall nonetheless be subject to all of the provisions of SECTION 4 hereof.

        "BOARD" shall mean the Board of Directors of the Issuer.

        "CAPITAL STOCK" means and includes (i) any and all shares,

interests, participations or other equivalents of or interests in (however designated) corporate stock, including, without limitation, shares of preferred or preference stock, (ii) all partnership interests (whether general or limited) in any Person which is a partnership, (iii) all membership interests or limited liability company interests in any limited liability company, and (iv) all equity or ownership interests in any Person of any other type.

"CERTIFICATE OF INCORPORATION" means the Certificate of Incorporation of the Issuer as in effect on the Original Issue Date, and as hereafter from time to time amended, modified, supplemented or restated in accordance with the terms hereof and thereof and pursuant to applicable law.

"COMMON STOCK" means the Common Stock, $0.001 par value per share, of the Issuer and any other Capital Stock into which such stock may hereafter be changed.

"COMMON STOCK EQUIVALENT" means any Convertible Security or warrant, option or other right to subscribe for or purchase any Additional Shares of Common Stock or any Convertible Security.

"CONVERTIBLE SECURITIES" means evidences of Indebtedness, shares of Capital Stock or other Securities which are or may be at any time convertible into or exchangeable for Additional Shares of Common Stock. The term "CONVERTIBLE SECURITY" means one of the Convertible Securities.

"GOVERNMENTAL AUTHORITY" means any governmental, regulatory or self-regulatory entity, department, body, official, authority, commission, board, agency or instrumentality, whether federal, state or local, and whether domestic or foreign.

"HOLDERS" mean the Persons who shall from time to time own any Warrant. The term "Holder" means one of the Holders.

"INDEPENDENT APPRAISER" means a nationally recognized or major regional investment banking firm or firm of independent certified public accountants of recognized standing (which may be the firm that regularly examines the financial statements of the Issuer) that is regularly engaged in the business of appraising the Capital Stock or assets of corporations or other entities as going concerns, and which is not affiliated with either the Issuer or the Holder of any Warrant.

14

<PAGE>

"ISSUER" means Marketing Worldwide Corporation, a Delaware corporation, and its successors.

"MAJORITY HOLDERS" means at any time the Holders of Warrants exercisable for a majority of the shares of Warrant Stock issuable under the Warrants at the time outstanding.

"ORIGINAL ISSUE DATE" means April 23, 2007.

"OTC BULLETIN BOARD" means the over-the-counter electronic bulletin board.

"OTHER COMMON" means any other Capital Stock of the Issuer of any class which shall be authorized at any time after the date of this Warrant

(other than Common Stock) and which shall have the right to participate in
the distribution of earnings and assets of the Issuer without limitation
as to amount.

"OUTSTANDING COMMON STOCK" means, at any given time, the aggregate
amount of outstanding shares of Common Stock, assuming full exercise,
conversion or exchange (as applicable) of all options, warrants and other
Securities which are convertible into or exercisable or exchangeable for,
and any right to subscribe for, shares of Common Stock that are
outstanding at such time.

"PERSON" means an individual, corporation, limited liability
company, partnership, joint stock company, trust, unincorporated
organization, joint venture, Governmental Authority or other entity of
whatever nature.

"PER SHARE MARKET VALUE" means on any particular date (a) the last
closing bid price per share of the Common Stock on such date on the OTC
Bulletin Board or another registered national stock exchange on which the
Common Stock is then listed, or if there is no such price on such date,
then the closing bid price on such exchange or quotation system on the
date nearest preceding such date, or (b) if the Common Stock is not listed
then on the OTC Bulletin Board or any registered national stock exchange,
the last closing bid price for a share of Common Stock in the
over-the-counter market, as reported by the OTC Bulletin Board or in the
National Quotation Bureau Incorporated or similar organization or agency
succeeding to its functions of reporting prices) at the close of business
on such date, or (c) if the Common Stock is not then reported by the OTC
Bulletin Board or the National Quotation Bureau Incorporated (or similar
organization or agency succeeding to its functions of reporting prices),
then the "Pink Sheet" quotes for the applicable Trading Days preceding
such date of determination, or (d) if the Common Stock is not then
publicly traded the fair market value of a share of Common Stock as
determined by an Independent Appraiser selected in good faith by the
Majority Holders; PROVIDED, however, that the Issuer, after receipt of the
determination by such Independent Appraiser, shall have the right to
select an additional Independent Appraiser, in which case, the fair market
value shall be equal to the average of the determinations by each such
Independent Appraiser; and PROVIDED, FURTHER that all determinations of

15

<PAGE>

the Per Share Market Value shall be appropriately adjusted for any stock
dividends, stock splits or other similar transactions during such period.
The determination of fair market value by an Independent Appraiser shall
be based upon the fair market value of the Issuer determined on a going
concern basis as between a willing buyer and a willing seller and taking
into account all relevant factors determinative of value, and shall be
final and binding on all parties. In determining the fair market value of
any shares of Common Stock, no consideration shall be given to any
restrictions on transfer of the Common Stock imposed by agreement or by
federal or state securities laws, or to the existence or absence of, or
any limitations on, voting rights.

"PURCHASE AGREEMENT" means the Series A Convertible Preferred Stock
Purchase Agreement dated as of April 23, 2007, among the Issuer and the
Purchasers.

"PURCHASERS" means the purchasers of the Series A Convertible

Preferred Stock and the Warrants issued by the Issuer pursuant to the Purchase Agreement.

"SECURITIES" means any debt or equity securities of the Issuer, whether now or hereafter authorized, any instrument convertible into or exchangeable for Securities or a Security, and any option, warrant or other right to purchase or acquire any Security. "Security" means one of the Securities.

"SECURITIES ACT" means the Securities Act of 1933, as amended, or any similar federal statute then in effect.

"SUBSIDIARY" means any corporation at least 50% of whose outstanding Voting Stock shall at the time be owned directly or indirectly by the Issuer or by one or more of its Subsidiaries, or by the Issuer and one or more of its Subsidiaries.

"TERM" has the meaning specified in SECTION 1 hereof.

"TRADING DAY" means (a) a day on which the Common Stock is traded on the OTC Bulletin Board, or (b) if the Common Stock is not traded on the OTC Bulletin Board, a day on which the Common Stock is quoted in the over-the-counter market as reported by the National Quotation Bureau Incorporated (or any similar organization or agency succeeding its functions of reporting prices); PROVIDED, HOWEVER, that in the event that the Common Stock is not listed or quoted as set forth in (a) or (b) hereof, then Trading Day shall mean any day except Saturday, Sunday and any day which shall be a legal holiday or a day on which banking institutions in the State of New York are authorized or required by law or other government action to close.

"VOTING STOCK" means, as applied to the Capital Stock of any corporation, Capital Stock of any class or classes (however designated) having ordinary voting power for the election of a majority of the members of the Board of Directors (or other governing body) of such corporation, other than Capital Stock having such power only by reason of the happening of a contingency.

"WARRANTS" means the Warrants issued and sold pursuant to the Purchase Agreement, including, without limitation, this Warrant, and any other warrants of like tenor issued in substitution or exchange for any thereof pursuant to the provisions of SECTION 2(C), 2(D) OR 2(E) hereof or of any of such other Warrants.

16

<PAGE>

"WARRANT PRICE" initially means $1.20, as such price may be adjusted from time to time as shall result from the adjustments specified in this Warrant, including SECTION 4 hereto.

"WARRANT SHARE NUMBER" means at any time the aggregate number of shares of Warrant Stock which may at such time be purchased upon exercise of this Warrant, after giving effect to all prior adjustments and increases to such number made or required to be made under the terms hereof.

"WARRANT STOCK" means Common Stock issuable upon exercise of any Warrant or Warrants or otherwise issuable pursuant to any Warrant or Warrants.

10.   OTHER NOTICES. In case at any time:

(A)   the Issuer shall make any distributions to the holders of Common Stock; or

(B)   the Issuer shall authorize the granting to all holders of its Common Stock of rights to subscribe for or purchase any shares of Capital Stock of any class or other rights; or

(C)   there shall be any reclassification of the Capital Stock of the Issuer; or

(D)   there shall be any capital reorganization by the Issuer; or

(E)   there shall be any (i) consolidation or merger involving the Issuer or (ii) sale, transfer or other disposition of all or substantially all of the Issuer's property, assets or business (except a merger or other reorganization in which the Issuer shall be the surviving corporation and its shares of Capital Stock shall continue to be outstanding and unchanged and except a consolidation, merger, sale, transfer or other disposition involving a wholly-owned Subsidiary); or

(F)   there shall be a voluntary or involuntary dissolution, liquidation or winding-up of the Issuer or any partial liquidation of the Issuer or distribution to holders of Common Stock;

then, in each of such cases, the Issuer shall give written notice to the Holder of the date on which (i) the books of the Issuer shall close or a record shall be taken for such dividend, distribution or subscription rights or (ii) such reorganization, reclassification, consolidation, merger, disposition, dissolution, liquidation or winding-up, as the case may be, shall take place. Such notice also shall specify the date as of which the holders of Common Stock of record shall participate in such dividend, distribution or subscription rights, or shall be entitled to exchange their certificates for Common Stock for securities or other property deliverable upon such reorganization, reclassification, consolidation, merger, disposition, dissolution, liquidation or winding-up, as the case may be. Such notice shall be given at least twenty

17

<PAGE>

(20) days prior to the action in question and not less than ten (10) days prior to the record date or the date on which the Issuer's transfer books are closed in respect thereto. This Warrant entitles the Holder to receive copies of all financial and other information distributed or required to be distributed to the holders of the Common Stock.

11.   AMENDMENT AND WAIVER. Any term, covenant, agreement or condition in this Warrant may be amended, or compliance therewith may be waived (either generally or in a particular instance and either retroactively or prospectively), by a written instrument or written instruments executed by the Issuer and the Majority Holders; PROVIDED, HOWEVER, that no such amendment or

waiver shall reduce the Warrant Share Number, increase the Warrant Price, shorten the period during which this Warrant may be exercised or modify any provision of this SECTION 11 without the consent of the Holder of this Warrant. No consideration shall be offered or paid to any person to amend or consent to a waiver or modification of any provision of this Warrant unless the same consideration is also offered to all holders of the Warrants.

12.    GOVERNING LAW; JURISDICTION. This Warrant shall be governed by and construed in accordance with the internal laws of the State of Delaware, without giving effect to any of the conflicts of law principles which would result in the application of the substantive law of another jurisdiction. This Warrant shall not be interpreted or construed with any presumption against the party causing this Warrant to be drafted. The Issuer and the Holder agree that venue for any dispute arising under this Warrant will lie exclusively in the state or federal courts located in New York County, New York, and the parties irrevocably waive any right to raise FORUM NON CONVENIENS or any other argument that New York is not the proper venue. The Issuer and the Holder irrevocably consent to personal jurisdiction in the state and federal courts of the state of New York. The Issuer and the Holder consent to process being served in any such suit, action or proceeding by mailing a copy thereof to such party at the address in effect for notices to it under this Warrant and agrees that such service shall constitute good and sufficient service of process and notice thereof. Nothing in this SECTION 12 shall affect or limit any right to serve process in any other manner permitted by law. The Issuer and the Holder hereby agree that the prevailing party in any suit, action or proceeding arising out of or relating to this Warrant or the Purchase Agreement, shall be entitled to reimbursement for reasonable legal fees from the non-prevailing party. The parties hereby waive all rights to a trial by jury.

13.    NOTICES. Any notice, demand, request, waiver or other communication required or permitted to be given hereunder shall be in writing and shall be effective (a) upon hand delivery by telecopy or facsimile at the address or number designated below (if delivered on a business day during normal business hours where such notice is to be received), or the first business day following such delivery (if delivered other than on a business day during normal business hours where such notice is to be received) or (b) on the second business day following the date of mailing by express courier service, fully prepaid, addressed to such address, or upon actual receipt of such mailing, whichever shall first occur. The addresses for such communications shall be:

If to the Issuer:                    Marketing Worldwide Corporation
                                     2212 Grand Commerce Drive
                                     Howell, Michigan 48855
                                     Attention: James Marvin
                                     Tel. No.: (517) 540-0045
                                     Fax No.: (517) 540-0923

                                     18

<PAGE>

with copies (which copies
shall not constitute notice)
to:                                  Weed & Co. LLP
                                     4695 Mac Arthur Court, Suite 1430
                                     Newport Beach, CA 92660
                                     Attention: Richard O. Weed
                                     Tel. No.: (949) 475-9086
                                     Fax No.: (949) 475-9087

If to any Holder:                    At the address of such Holder set forth on

EXHIBIT A to the Purchase Agreement, with
copies to:

Sadis & Goldberg LLP
551 Fifth Avenue, 21st Floor
New York, New York 10176
Attention: Steven Huttler, Esq.
Tel. No.: (212) 947-3793
Fax No.: (212) 947-3796

Any party hereto may from time to time change its address for notices by
giving written notice of such changed address to the other party hereto.

14.    WARRANT AGENT. The Issuer may, by written notice to each Holder of
this Warrant, appoint an agent having an office in New York, New York for the
purpose of issuing shares of Warrant Stock on the exercise of this Warrant
pursuant to SECTION 2(E) hereof, exchanging this Warrant pursuant to SECTION
2(E) hereof or replacing this Warrant pursuant to SECTION 3(D) hereof, or any of
the foregoing, and thereafter any such issuance, exchange or replacement, as the
case may be, shall be made at such office by such agent.

15.    REMEDIES. The Issuer stipulates that the remedies at law of the
Holder of this Warrant in the event of any default or threatened default by the
Issuer in the performance of or compliance with any of the terms of this Warrant
are not and will not be adequate and that, to the fullest extent permitted by
law, such terms may be specifically enforced by a decree for the specific
performance of any agreement contained herein or by an injunction against a
violation of any of the terms hereof or otherwise.

16.    SUCCESSORS AND ASSIGNS. This Warrant and the rights evidenced hereby
shall inure to the benefit of and be binding upon the successors and assigns of
the Issuer, the Holder hereof and (to the extent provided herein) the Holders of
Warrant Stock issued pursuant hereto, and shall be enforceable by any such
Holder or Holder of Warrant Stock.

17.    CONSTRUCTION. This Warrant shall be deemed to be jointly drafted by
the Company and all the Holders and shall not be construed against any person as
the drafter hereof.

18.    HEADINGS. The headings of the Sections of this Warrant are for
convenience of reference only and shall not, for any purpose, be deemed a part
of this Warrant.

                                       19
<PAGE>

19.    REGISTRATION RIGHTS. The Holder of this Warrant is entitled to the
benefit of certain registration rights with respect to the shares of Warrant
Stock issuable upon the exercise of this Warrant pursuant to the Registration
Rights Agreement and the registration rights with respect to the shares of
Warrant Stock issuable upon the exercise of this Warrant by any subsequent
Holder may only be assigned in accordance with the terms and provisions of the
Registrations Rights Agreement and SECTION 2(F) hereof.


                    [REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

                                       20
<PAGE>

IN WITNESS WHEREOF, the Issuer has executed this Series C Warrant as of the day and year first above written.

MARKETING WORLDWIDE CORPORATION


By: /s/ Michael Winzkowski
    ----------------------
Name: Michael Winzkowski
Title: Chief Executive Officer


21

<PAGE>

EXERCISE FORM
SERIES C WARRANT

MARKETING WORLDWIDE CORPORATION

The undersigned _____, pursuant to the provisions of the within Warrant, hereby elects to purchase _____ shares of Common Stock of Marketing Worldwide Corporation covered by the within Warrant.

Dated: _____          Signature    _____

                                 Address      _____
                                              _____

Number of shares of Common Stock beneficially owned or deemed beneficially owned by the Holder on the date of Exercise: _____

The undersigned is an "accredited investor" as defined in Regulation D under the Securities Act of 1933, as amended.

The undersigned intends that payment of the Warrant Price shall be made as (check one):

    Cash Exercise_____

    Cashless Exercise_____

If the Holder has elected a Cash Exercise, the Holder shall pay the sum of $_____ by certified or official bank check (or via wire transfer) to the Issuer in accordance with the terms of the Warrant.

If the Holder has elected a Cashless Exercise, a certificate shall be issued to the Holder for the number of shares equal to the whole number portion of the product of the calculation set forth below, which is _____. The Company shall pay a cash adjustment in respect of the fractional portion of the product of the calculation set forth below in an amount equal to the product of the fractional portion of such product and the Per Share Market Value on the date of exercise, which product is _____.

$$X = Y - \frac{(A)(Y)}{B}$$

Where:

The number of Ordinary Shares to be issued to the Holder _____("X").

The number of Ordinary Shares purchasable upon exercise of all of the Warrant or, if only a portion of the Warrant is being exercised, the portion of the Warrant being exercised _____ ("Y").

The Warrant Price _____ ("A").

The Per Share Market Value of one Ordinary Share _____ ("B").

<div align="center">22</div>

<PAGE>

<div align="center">ASSIGNMENT</div>

FOR VALUE RECEIVED, _____ hereby sells, assigns and transfers unto _____ the within Warrant and all rights evidenced thereby and does irrevocably constitute and appoint _____, attorney, to transfer the said Warrant on the books of the within named corporation.

Dated: _____          Signature    _____

                                     Address      _____
                                                  _____

<div align="center">PARTIAL ASSIGNMENT</div>

FOR VALUE RECEIVED, _____ hereby sells, assigns and transfers unto _____ the right to purchase _____ shares of Warrant Stock evidenced by the within Warrant together with all rights therein, and does irrevocably constitute and appoint _____, attorney, to transfer that part of the said Warrant on the books of the within named corporation.

Dated: _____          Signature    _____

                                     Address      _____
                                                  _____

<div align="center">FOR USE BY THE ISSUER ONLY:</div>

This Warrant No. W-____ canceled (or transferred or exchanged) this _____ day of _____, _____, shares of Common Stock issued therefor in the name of _____, Warrant No. W-_____ issued for ـــــ shares of Common Stock in the name of _____.

<div align="center">23</div>

</TEXT>
</DOCUMENT>

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
CARTER SECURITIES, LLC,                              :
                                                     :
                              Plaintiff,             :
                                                     :          07 Civ. 10671
          -against-                                  :
                                                     :
MARKETING WORLDWIDE CORPORATION,                     :
                                                     :
                              Defendant.             :
------------------------------------------------------------------x

<u>DECLARATION OF SERVICE</u>

STATE OF NEW YORK    )
                              )ss:
COUNTY OF NEW YORK)

        ROBERT M. KAPLAN, under penalty of perjury, declares as follows:

       1.     I am an attorney at law, admitted to practice before this Court and a member of Ferber Chan Essner & Coller, LLP, attorneys for defendant.

       2.     On February 6, 2008, I electronically filed defendant's reply declaration and reply memorandum of law in further support of its motion to dismiss the complaint with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to Kenneth A. Zitter, Esq. at kzitter@aol.com.

Dated:     New York, New York
           February 6, 2008

                                   /s/Robert M. Kaplan
                                   ROBERT M. KAPLAN

73296